# EXHIBIT A

 **CT Corporation**

**Service of Process Transmittal**
11/02/2017
CT Log Number 532229583

TO: Ronald Odom
WellPoint,Inc
21555 Oxnard St
Woodland Hills, CA 91367-4943

RE: **Process Served in California**

FOR: Anthem Blue Cross Life and Health Insurance Company  (Domestic State: CA)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | NAMDY CONSULTING, INC., Pltf. vs. Anthem Blue Cross Life and Health Insurance Co., et al., Dfts. |
| **DOCUMENT(S) SERVED:** | Summons, Complaint, Attachment(s) |
| **COURT/AGENCY:** | Los Angeles County - Superior Court, CA Case # BC680021 |
| **NATURE OF ACTION:** | Insurance Litigation |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, Los Angeles, CA |
| **DATE AND HOUR OF SERVICE:** | By Process Server on 11/02/2017 at 12:55 |
| **JURISDICTION SERVED :** | California |
| **APPEARANCE OR ANSWER DUE:** | Within 30 days after service |
| **ATTORNEY(S) / SENDER(S):** | ALAN NESBIT 8383 Wilshire Boulevard Ste 800 Beverly Hills, CA 90211 323-456-8605 |
| **ACTION ITEMS:** | CT has retained the current log, Retain Date: 11/03/2017, Expected Purge Date: 11/08/2017 |
| | Image SOP |
| | Email Notification,  Susan D'Agostino  Sue.D'Agostino@anthem.com |
| | Email Notification,  Taysa Cashen  taysa.cashen@wellpoint.com |
| | Email Notification,  Ronald Odom  Ronald.Odom@wellpoint.com |
| **SIGNED:** | C T Corporation System |
| **ADDRESS:** | 818 West Seventh Street Los Angeles, CA 90017 |
| **TELEPHONE:** | 213-337-4615 |

Page 1 of  1 / RP

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.

11/26/ e 12:85

SUM-100

# SUMMONS
## (CITACION JUDICIAL)

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

ANTHEM BLUE CROSS LIFE AND HEALTH INSURANCE CO.
AND BLUE SHIELD OF CALIFORNIA AND DOES 1 - 40

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

NAMDY CONSULTING, INC.

FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)

CONFORMED COPY
ORIGINAL FILED
Superior Court of California
County of Los Angeles

OCT 18 2017

Sherri R. Carter, Executive Officer/Clerk
By: Glorietta Robinson, Deputy

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.

Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.

Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.

| The name and address of the court is: *(El nombre y dirección de la corte es):* Los Angeles Superior Court, Central Dist  111 North Hill Street, Los Angeles, California 90012 | CASE NUMBER: *(Número del Caso):* BC 680021 |
|---|---|

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Alan Nesbit, Esq, 8383 Wilshire Boulevard, Suite 800, Beverly Hills, California 90211

| DATE: OCT 18 2017 *(Fecha)* | SHERRI R. CARTER | Clerk, by *(Secretario)* Glorietta Robinson | , Deputy *(Adjunto)* |
|---|---|---|---|

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

[SEAL]

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☒ on behalf of *(specify):* Anthem Blue Cross Life and Health Insurance O.

   under: ☒ CCP 416.10 (corporation)      ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation)   ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
   ☐ other *(specify):*
4. ☐ by personal delivery on *(date):* 11/02/12

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

SUMMONS

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): | FOR COURT USE ONLY |
|---|---|
| Alan Nesbit, Esq. [SBN 310406]<br>NESBIT LAW GROUP, LLP<br>8383 Wilshire Boulevard, Suite 800<br>Beverly Hills, California 90211<br>TELEPHONE NO.: 323.456.8605   FAX NO.: 323.456.8605<br>ATTORNEY FOR (Name): Namdy Consulting, Inc. | CONFORMED COPY<br>ORIGINAL FILED<br>Superior Court of California<br>County of Los Angeles<br><br>OCT 18 2017<br><br>Sherri R. Carter, Executive Officer/Clerk<br>By: Glorietta Robinson, Deputy |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF **LOS ANGELES**
STREET ADDRESS: 111 North Hills Street
MAILING ADDRESS: Same
CITY AND ZIP CODE: Los Angeles, CA 90012
BRANCH NAME: Stanley Mosk

CASE NAME:
Namdy Consulting, Inc. v. Anthem Blue Cross Life and Health Ins., et al.

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: BC 680021 |
|---|---|---|
| ☑ Unlimited (Amount demanded exceeds $25,000) ☐ Limited (Amount demanded $25,000 or less) | ☐ Counter ☐ Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | JUDGE:<br>DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

**Auto Tort**
☐ Auto (22)
☐ Uninsured motorist (46)
**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
☐ Asbestos (04)
☐ Product liability (24)
☐ Medical malpractice (45)
☐ Other PI/PD/WD (23)
**Non-PI/PD/WD (Other) Tort**
☐ Business tort/unfair business practice (07)
☐ Civil rights (08)
☐ Defamation (13)
☐ Fraud (16)
☐ Intellectual property (19)
☐ Professional negligence (25)
☐ Other non-PI/PD/WD tort (35)
**Employment**
☐ Wrongful termination (36)
☐ Other employment (15)

**Contract**
☑ Breach of contract/warranty (06)
☐ Rule 3.740 collections (09)
☐ Other collections (09)
☐ Insurance coverage (18)
☐ Other contract (37)
**Real Property**
☐ Eminent domain/inverse condemnation (14)
☐ Wrongful eviction (33)
☐ Other real property (26)
**Unlawful Detainer**
☐ Commercial (31)
☐ Residential (32)
☐ Drugs (38)
**Judicial Review**
☐ Asset forfeiture (05)
☐ Petition re: arbitration award (11)
☐ Writ of mandate (02)
☐ Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
☐ Antitrust/Trade regulation (03)
☐ Construction defect (10)
☐ Mass tort (40)
☐ Securities litigation (28)
☐ Environmental/Toxic tort (30)
☐ Insurance coverage claims arising from the above listed provisionally complex case types (41)
**Enforcement of Judgment**
☐ Enforcement of judgment (20)
**Miscellaneous Civil Complaint**
☐ RICO (27)
☐ Other complaint (not specified above) (42)
**Miscellaneous Civil Petition**
☐ Partnership and corporate governance (21)
☐ Other petition (not specified above) (43)

2. This case ☐ is ☑ is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☑ Large number of separately represented parties
   b. ☐ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. ☐ Substantial amount of documentary evidence
   d. ☐ Large number of witnesses
   e. ☐ Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. ☐ Substantial postjudgment judicial supervision

3. Remedies sought (check all that apply): a. ☑ monetary  b. ☐ nonmonetary; declaratory or injunctive relief  c. ☐ punitive
4. Number of causes of action (specify):
5. This case ☐ is ☑ is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. (You may use form CM-015.)

Date: October 17, 2017

Alan Nesbit
(TYPE OR PRINT NAME)                    ▶ (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

By Fax

| SHORT TITLE: NAMDY V. ANTHEM BLUE CROSS HEALTH AND LIFE INS. | CASE NUMBER |
|---|---|

BC 6 8 0 0 2 1
By Fax

# CIVIL CASE COVER SHEET ADDENDUM AND
## STATEMENT OF LOCATION
### (CERTIFICATE OF GROUNDS FOR ASSIGNMENT TO COURTHOUSE LOCATION)

**This form is required pursuant to Local Rule 2.3 in all new civil case filings in the Los Angeles Superior Court.**

**Step 1:** After completing the Civil Case Cover Sheet (Judicial Council form CM-010), find the exact case type in Column A that corresponds to the case type indicated in the Civil Case Cover Sheet.

**Step 2:** In Column B, check the box for the type of action that best describes the nature of the case.

**Step 3:** In Column C, circle the number which explains the reason for the court filing location you have chosen.

| Applicable Reasons for Choosing Court Filing Location (Column C) |
|---|

1. Class actions must be filed in the Stanley Mosk Courthouse, Central District.
2. Permissive filing in central district.
3. Location where cause of action arose.
4. Mandatory personal injury filing in North District.
5. Location where performance required or defendant resides.
6. Location of property or permanently garaged vehicle.

7. Location where petitioner resides.
8. Location wherein defendant/respondent functions wholly.
9. Location where one or more of the parties reside.
10. Location of Labor Commissioner Office.
11. Mandatory filing location (Hub Cases – unlawful detainer, limited non-collection, limited collection, or personal injury).

| | A<br>Civil Case Cover Sheet<br>Category No. | B<br>Type of Action<br>(Check only one) | C<br>Applicable Reasons<br>See Step 3 Above |
|---|---|---|---|
| **Auto Tort** | Auto (22) | ☐ A7100 Motor Vehicle - Personal Injury/Property Damage/Wrongful Death | 1, 4, 11 |
| | Uninsured Motorist (46) | ☐ A7110 Personal Injury/Property Damage/Wrongful Death – Uninsured Motorist | 1, 4, 11 |
| **Other Personal Injury/Property Damage Wrongful Death Tort** | Asbestos (04) | ☐ A6070 Asbestos Property Damage | 1, 11 |
| | | ☐ A7221 Asbestos - Personal Injury/Wrongful Death | 1, 11 |
| | Product Liability (24) | ☐ A7260 Product Liability (not asbestos or toxic/environmental) | 1, 4, 11 |
| | Medical Malpractice (45) | ☐ A7210 Medical Malpractice - Physicians & Surgeons | 1, 4, 11 |
| | | ☐ A7240 Other Professional Health Care Malpractice | 1, 4, 11 |
| | Other Personal Injury Property Damage Wrongful Death (23) | ☐ A7250 Premises Liability (e.g., slip and fall) | 1, 4, 11 |
| | | ☐ A7230 Intentional Bodily Injury/Property Damage/Wrongful Death (e.g., assault, vandalism, etc.) | 1, 4, 11 |
| | | ☐ A7270 Intentional Infliction of Emotional Distress | 1, 4, 11 |
| | | ☐ A7220 Other Personal Injury/Property Damage/Wrongful Death | 1, 4, 11 |

LACIV 109 (Rev 2/16)
LASC Approved 03-04

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

Local Rule 2.3
Page 1 of 4

| SHORT TITLE: | NAMDY V. ANTHEM BLUE CROSS HEALTH AND LIFE INS. | CASE NUMBER | |
|---|---|---|---|

| | **A**<br>Civil Case Cover Sheet<br>Category No. | **B**<br>Type of Action<br>(Check only one) | **C** Applicable<br>Reasons - See Step 3<br>-- Above |
|---|---|---|---|
| **Non-Personal Injury/ Property Damage/ Wrongful Death Tort** | Business Tort (07) | ☐ A6029  Other Commercial/Business Tort (not fraud/breach of contract) | 1, 2, 3 |
| | Civil Rights (08) | ☐ A6005  Civil Rights/Discrimination | 1, 2, 3 |
| | Defamation (13) | ☐ A6010  Defamation (slander/libel) | 1, 2, 3 |
| | Fraud (16) | ☐ A6013  Fraud (no contract) | 1, 2, 3 |
| | Professional Negligence (25) | ☐ A6017  Legal Malpractice | 1, 2, 3 |
| | | ☐ A6050  Other Professional Malpractice (not medical or legal) | 1, 2, 3 |
| | Other (35) | ☐ A6025  Other Non-Personal Injury/Property Damage tort | 1, 2, 3 |
| **Employment** | Wrongful Termination (36) | ☐ A6037  Wrongful Termination | 1, 2, 3 |
| | Other Employment (15) | ☐ A6024  Other Employment Complaint Case | 1, 2, 3 |
| | | ☐ A6109  Labor Commissioner Appeals | 10 |
| **Contract** | Breach of Contract/ Warranty (06)<br>(not insurance) | ☐ A6004  Breach of Rental/Lease Contract (not unlawful detainer or wrongful eviction) | 2, 5 |
| | | ☐ A6008  Contract/Warranty Breach -Seller Plaintiff (no fraud/negligence) | 2, 5 |
| | | ☐ A6019  Negligent Breach of Contract/Warranty (no fraud) | 1, 2, 5 |
| | | ☐ A6028  Other Breach of Contract/Warranty (not fraud or negligence) | 1, 2, 5 |
| | Collections (09) | ☐ A6002  Collections Case-Seller Plaintiff | 5, 6, 11 |
| | | ☐ A6012  Other Promissory Note/Collections Case | 5, 11 |
| | | ☐ A6034  Collections Case-Purchased Debt (Charged Off Consumer Debt Purchased on or after January 1, 2014) | 5, 6, 11 |
| | Insurance Coverage (18) | ☑ A6015  Insurance Coverage (not complex) | 1, 2, 5, 8 |
| | Other Contract (37) | ☐ A6009  Contractual Fraud | 1, 2, 3, 5 |
| | | ☐ A6031  Tortious Interference | 1, 2, 3, 5 |
| | | ☐ A6027  Other Contract Dispute(not breach/insurance/fraud/negligence) | 1, 2, 3, 8, 9 |
| **Real Property** | Eminent Domain/Inverse Condemnation (14) | ☐ A7300  Eminent Domain/Condemnation     Number of parcels_____ | 2, 6 |
| | Wrongful Eviction (33) | ☐ A6023  Wrongful Eviction Case | 2, 6 |
| | Other Real Property (26) | ☐ A6018  Mortgage Foreclosure | 2, 6 |
| | | ☐ A6032  Quiet Title | 2, 6 |
| | | ☐ A6060  Other Real Property (not eminent domain, landlord/tenant, foreclosure) | 2, 6 |
| **Unlawful Detainer** | Unlawful Detainer-Commercial (31) | ☐ A6021  Unlawful Detainer-Commercial (not drugs or wrongful eviction) · | 6, 11 |
| | Unlawful Detainer-Residential (32) | ☐ A6020  Unlawful Detainer-Residential (not drugs or wrongful eviction) | 6, 11 |
| | Unlawful Detainer-Post-Foreclosure (34) | ☐ A6020F Unlawful Detainer-Post-Foreclosure | 2, 6, 11 |
| | Unlawful Detainer-Drugs (38) | ☐ A6022  Unlawful Detainer-Drugs | 2, 6, 11 |

**CIVIL CASE COVER SHEET ADDENDUM<br>AND STATEMENT OF LOCATION**

| SHORT TITLE: NAMDY V. ANTHEM BLUE CROSS HEALTH AND LIFE INS. | CASE NUMBER |
|---|---|

| A<br>Civil Case Cover Sheet<br>Category No. | B<br>Type of Action<br>(Check only one) | C Applicable<br>Reasons - See Step 3<br>Above |
|---|---|---|
| **Judicial Review** | | |
| Asset Forfeiture (05) | ☐ A6108 Asset Forfeiture Case | 2, 3, 6 |
| Petition re Arbitration (11) | ☐ A6115 Petition to Compel/Confirm/Vacate Arbitration | 2, 5 |
| Writ of Mandate (02) | ☐ A6151 Writ - Administrative Mandamus | 2, 8 |
|  | ☐ A6152 Writ - Mandamus on Limited Court Case Matter | 2 |
|  | ☐ A6153 Writ - Other Limited Court Case Review | 2 |
| Other Judicial Review (39) | ☐ A6150 Other Writ /Judicial Review | 2, 8 |
| **Provisionally Complex Litigation** | | |
| Antitrust/Trade Regulation (03) | ☐ A6003 Antitrust/Trade Regulation | 1, 2, 8 |
| Construction Defect (10) | ☐ A6007 Construction Defect | 1, 2, 3 |
| Claims Involving Mass Tort (40) | ☐ A6006 Claims Involving Mass Tort | 1, 2, 8 |
| Securities Litigation (28) | ☐ A6035 Securities Litigation Case | 1, 2, 8 |
| Toxic Tort Environmental (30) | ☐ A6036 Toxic Tort/Environmental | 1, 2, 3, 8 |
| Insurance Coverage Claims from Complex Case (41) | ☐ A6014 Insurance Coverage/Subrogation (complex case only) | 1, 2, 5, 8 |
| **Enforcement of Judgment** | | |
| Enforcement of Judgment (20) | ☐ A6141 Sister State Judgment | 2, 5, 11 |
|  | ☐ A6160 Abstract of Judgment | 2, 6 |
|  | ☐ A6107 Confession of Judgment (non-domestic relations) | 2, 9 |
|  | ☐ A6140 Administrative Agency Award (not unpaid taxes) | 2, 8 |
|  | ☐ A6114 Petition/Certificate for Entry of Judgment on Unpaid Tax | 2, 8 |
|  | ☐ A6112 Other Enforcement of Judgment Case | 2, 8, 9 |
| **Miscellaneous Civil Complaints** | | |
| RICO (27) | ☐ A6033 Racketeering (RICO) Case | 1, 2, 8 |
| Other Complaints (Not Specified Above) (42) | ☐ A6030 Declaratory Relief Only | 1, 2, 8 |
|  | ☐ A6040 Injunctive Relief Only (not domestic/harassment) | 2, 8 |
|  | ☐ A6011 Other Commercial Complaint Case (non-tort/non-complex) | 1, 2, 8 |
|  | ☐ A6000 Other Civil Complaint (non-tort/non-complex) | 1, 2, 8 |
| **Miscellaneous Civil Petitions** | | |
| Partnership Corporation Governance (21) | ☐ A6113 Partnership and Corporate Governance Case | 2, 8 |
| Other Petitions (Not Specified Above) (43) | ☐ A6121 Civil Harassment | 2, 3, 9 |
|  | ☐ A6123 Workplace Harassment | 2, 3, 9 |
|  | ☐ A6124 Elder/Dependent Adult Abuse Case | 2, 3, 9 |
|  | ☐ A6190 Election Contest | 2 |
|  | ☐ A6110 Petition for Change of Name/Change of Gender | 2, 7 |
|  | ☐ A6170 Petition for Relief from Late Claim Law | 2, 3, 8 |
|  | ☐ A6100 Other Civil Petition | 2, 9 |

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

| SHORT TITLE: NAMDY V. ANTHEM BLUE CROSS HEALTH AND LIFE INS. | CASE NUMBER |
|---|---|

**Step 4:** **Statement of Reason and Address:** Check the appropriate boxes for the numbers shown under Column C for the type of action that you have selected. Enter the address which is the basis for the filing location, including zip code. (No address required for class action cases).

| REASON:<br><br>☑ 1. ☑ 2. ☐ 3. ☐ 4. ☑ 5. ☐ 6. ☐ 7.  ☑ 8. ☐ 9. ☐ 10. ☐ 11. | ADDRESS:<br>2080 Century Park East, Suite 1111 |
|---|---|
| CITY: Century City  STATE: CA  ZIP CODE: 90067 | |

**Step 5:** **Certification of Assignment:** I certify that this case is properly filed in the ___Central___ District of the Superior Court of California, County of Los Angeles [Code Civ. Proc., §392 et seq., and Local Rule 2.3(a)(1)(E)].

Dated: October 17, 2017

_A. Nahi_

(SIGNATURE OF ATTORNEY/FILING PARTY)

**PLEASE HAVE THE FOLLOWING ITEMS COMPLETED AND READY TO BE FILED IN ORDER TO PROPERLY COMMENCE YOUR NEW COURT CASE:**

1.  Original Complaint or Petition.

2.  If filing a Complaint, a completed Summons form for issuance by the Clerk.

3.  Civil Case Cover Sheet, Judicial Council form CM-010.

4.  Civil Case Cover Sheet Addendum and Statement of Location form, LACIV 109, LASC Approved 03-04 (Rev. 02/16).

5.  Payment in full of the filing fee, unless there is court order for waiver, partial or scheduled payments.

6.  A signed order appointing the Guardian ad Litem, Judicial Council form CIV-010, if the plaintiff or petitioner is a minor under 18 years of age will be required by Court in order to issue a summons.

7.  Additional copies of documents to be conformed by the Clerk. Copies of the cover sheet and this addendum must be served along with the summons and complaint, or other initiating pleading in the case.

LACIV 109 (Rev 2/16)
LASC Approved 03-04

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

Local Rule 2.3
Page 4 of 4

SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
NOTICE OF CASE ASSIGNMENT - UNLIMITED CIVIL CASE (NON-CLASS ACTION)

Case Number

## BC 6 8 0 0 2 1

### THIS FORM IS TO BE SERVED WITH THE SUMMONS AND COMPLAINT

Your case is assigned for all purposes to the judge indicated below. There is more information on the reverse side of this form.

| ASSIGNED JUDGE | DEPT | ROOM | ASSIGNED JUDGE | DEPT | ROOM |
|---|---|---|---|---|---|
| Hon. Debre K. Weintraub | 1 | 534 | Hon. Elizabeth Allen White | 48 | 506 |
| Hon. Barbara A. Meiers | 12 | 636 | Hon. Deirdre Hill | 49 | 509 |
| Hon. Terry A. Green | 14 | 300 | Hon. Teresa A. Beaudet | 50 | 508 |
| Hon. Richard Fruin | 15 | 307 | Hon. Michael J. Raphael | 51 | 511 |
| Hon. Rita Miller | 16 | 306 | Hon. Susan Bryant-Deason | 52 | 510 |
| Hon. Richard E. Rico | 17 | 309 | Hon. Howard L. Halm | 53 | 513 |
| Hon. Stephanie Bowick | 19 | 311 | Hon. Ernest M. Hiroshige | 54 | 512 |
| Hon. Dalila Corral Lyons | 20 | 310 | Hon. Malcolm H. Mackey | 55 | 515 |
| Hon. Robert L. Hess | 24 | 314 | Hon. Michael Johnson | 56 | 514 |
| Hon. Yvette M. Palazuelos | 28 | 318 | Hon. John P. Doyle | 58 | 516 |
| Hon. Barbara Scheper | 30 | 400 | Hon. Gregory Keosian | 61 | 732 |
| Hon. Samantha Jessner | 31 | 407 | Hon. Michael L. Stern | 62 | 600 |
| Hon. Daniel S. Murphy | 32 | 406 | Hon. Mark Mooney | 68 | 617 |
| Hon. Michael P. Linfield | 34 | 408 | Hon. William F. Fahey | 69 | 621 |
| Hon. Gregory Alarcon | 36 | 410 | Hon. Monica Bachner | 71 | 729 |
| Hon. Marc Marmaro | 37 | 413 | Hon. Ruth Ann Kwan | 72 | 731 |
| Hon. Maureen Duffy-Lewis | 38 | 412 | Hon. Rafael Ongkeko | 73 | 733 |
| Hon. Elizabeth Feffer | 39 | 415 | Hon. Michelle Williams Court | 74 | 735 |
| Hon. David Sotelo | 40 | 414 | Hon. Gail Ruderman Feuer | 78 | 730 |
| Hon. Holly E. Kendig | 42 | 416 | | | |
| Hon. Mel Red Recana | 45 | 529 | Hon. Steven J. Kleifield | 324 | CCW |
| Hon. Frederick C. Shaller | 46 | 500 | *Provisionally Complex Non-class Action Cases Assignment is Pending Complex Determination | 308 | CCW |
| Hon. Randolph Hammock | 47 | 507 | | | |

*Complex

All non-class action cases designated as provisionally complex are forwarded to the Supervising Judge of the Complex Litigation Program located in the Central Civil West Courthouse (600 S. Commonwealth Ave., Los Angeles 90005), for complex/non-complex determination pursuant to Local Rule 3.3(k). This procedure is for the purpose of assessing whether or not the case is complex within the meaning of California Rules of Court, rule 3.400. Depending on the outcome of that assessment, the case may be reassigned to one of the judges of the Complex Litigation Program or reassigned randomly to a court in the Central District.

Given to the Plaintiff/Cross-Complainant/Attorney of Record on _____  SHERRI R. CARTER, Executive Officer/Clerk

By _____, Deputy Clerk

# INSTRUCTIONS FOR HANDLING UNLIMITED CIVIL CASES

The following critical provisions of the Chapter Three Rules, as applicable in the Central District, are summarized for your assistance.

## APPLICATION

The Chapter Three Rules were effective January 1, 1994.  They apply to all general civil cases.

## PRIORITY OVER OTHER RULES

The Chapter Three Rules shall have priority over all other Local Rules to the extent the others are inconsistent.

## CHALLENGE TO ASSIGNED JUDGE

A challenge under Code of Civil Procedure section 170.6 must be made within 15 days after notice of assignment for all purposes to a judge, or if a party has not yet appeared, within 15 days of the first appearance.

## TIME STANDARDS

Cases assigned to the Individual Calendaring Court will be subject to processing under the following time standards:

**COMPLAINTS:** All complaints shall be served within 60 days of filing and proof of service shall be filed within 90 days of filing.

**CROSS-COMPLAINTS:** Without leave of court first being obtained, no cross-complaint may be filed by any party after their answer is filed.  Cross-complaints shall be served within 30 days of the filing date and a proof of service filed within 60 days of the filing date.

A Status Conference will be scheduled by the assigned Independent Calendar Judge no later than 270 days after the filing of the complaint. Counsel must be fully prepared to discuss the following issues: alternative dispute resolution, bifurcation, settlement, trial date, and expert witnesses.

## FINAL STATUS CONFERENCE

The Court will require the parties at a status conference not more than 10 days before the trial to have timely filed and served all motions in limine, bifurcation motions, statements of major evidentiary issues, dispositive motions, requested jury instructions, and special jury instructions and special jury verdicts.  These matters may be heard and resolved at this conference.  At least 5 days before this conference, counsel must also have exchanged lists of exhibits and witnesses and have submitted to the court a brief statement of the case to be read to the jury panel as required by Chapter Eight of the Los Angeles Superior Court Rules.

## SANCTIONS

The court will impose appropriate sanctions for the failure or refusal to comply with Chapter Three Rules, orders made by the Court, and time standards or deadlines established by the Court or by the Chapter Three Rules.  Such sanctions may be on a party or if appropriate on counsel for the party.

This is not a complete delineation of the Chapter Three Rules, and adherence only to the above provisions is therefore not a guarantee against the imposition of sanctions under Trial Court Delay Reduction.  Careful reading and compliance with the actual Chapter Rules is absolutely imperative.

1   ALAN NESBIT, ESQ.
    Attorney-at-Law, SBN 310466
2   8383 Wilshire Boulevard Ste 800
    Beverly Hills, California 90211
3   Tel:   (323) 456-8605
    Fax:   (323) 456-8601
4   Email: anesbit@nesbitlawgroup.com

5   Attorney for Plaintiff,
6   NAMDY CONSULTING, INC.

CONFORMED COPY
ORIGINAL FILED
Superior Court of California
County of Los Angeles

OCT 18 2017

Sherri R. Carter, executive officer/Clerk
By: Charlotte Robinson, Deputy

7

8              SUPERIOR COURT OF THE STATE OF CALIFORNIA

9              COUNTY OF LOS ANGELES, CENTRAL DISTRICT

10

11                                          Case No.:    BC 6 8 0 0 2 1

12  NAMDY CONSULTING, INC.,
                                            NAMDY CONSULTING, INC.'S
13            Plaintiff,                    COMPLAINT FOR:

14            v.                            1.  RECOVERY OF PAYMENT
                                                FOR SERVICES RENDERED;
15  ANTHEM BLUE CROSS LIFE AND             2.  RECOVERY ON OPEN BOOK
16  HEALTH INSURANCE CO. AND BLUE              ACCOUNT;
    SHIELD OF CALIFORNIA AND DOES 1-40,    3.  QUANTUM MERUIT
17                                         4.  BREACH OF IMPLIED
            Defendants.                        CONTRACT;
18
                                           5.  DECLARATORY RELIEF;
19                                         6.  NEGLIGENCE PER SE; and
20                                         7.  INTERFERENCE WITH
                                               PROSPECTIVE ECONOMIC
21                                             ADVANTAGE
22
                                           JURY TRIAL REQUESTED
23
                                           Damages: UNLIMITED: Over
24                                         $25,000
25

26

27  ///                                               By Fax
28  ///

                                    1
                                COMPLAINT

1  Plaintiff NAMDY CONSULTING, INC. (hereafter referred to as "NAMDY") complains and
2  alleges:

3  **GENERAL ALLEGATIONS**

4  1. NAMDY is and at all relevant times was a corporation organized and existing under the
5     laws of the State of California, and was and is a resident of the County of Los Angeles.
6  2. NAMDY is and at all relevant times was in the business of purchasing and collecting
7     accounts receivable on behalf of various other companies, including without limitation
8     professional business entities engaged in the business of providing patients with medical
9     services, medications, devices, and any other services related to healthcare. As such
10    NAMDY has been assigned these accounts receivable and related claims by certain
11    medical groups, physicians, or health care providers (hereinafter referred to as
12    "Physicians"), who were fully licensed, certified, and in good standing under the laws of
13    the State of California.
14 3. Physicians provided medical care, services, treatment, and/or procedures and services to
15    members, subscribers and insureds of ANTHEM BLUE CROSS LIFE AND
16    HEALTH INSURANCE CO. ("ANTHEM") AND BLUE SHIELD OF CALIFORNIA ("BLUE
17    SHIELD") AND DOES 1 - 40, California Corporations, (hereafter referred to as
18    "DEFENDANT" or "DEFENDANTS"). Physicians became entitled to reimbursement,
19    payment and/or indemnification from DEFENDANTS for those services and supplies
20    rendered. Physicians have assigned their right to payment and to collect their fees from
21    DEFENDANTS to NAMDY.
22 4. Physicians assigned these accounts receivable and related claims with the intention of
23    terminating their ownership in these receivables and claims and transferring full
24    ownership to NAMDY. Physicians no longer have the ability to pursue their collection of
25    these receivables and claims against DEFENDANTS.
26 5. DEFENDANT is a California corporation licensed to do business in and was doing
27    business in the State of California, as an insurer. NAMDY is informed and believes that
28    DEFENDANT is licensed by the Department of Insurance to transact the business of

1    insurance in the State of California. DEFENDANT is, in fact, transacting the business of

2    insurance in the State of California and is thereby subject to the laws and regulations of

3    the State of California.

6.    The true names and capacities, whether individual, corporate, associate, or otherwise, of

5    DEFENDANTS are unknown to NAMDY, who therefore sues said DEFENDANTS by

6    such fictitious names. NAMDY is informed and believes and thereon alleges that each of

7    the DEFENDANTS designated herein as a DOE is legally responsible in some manner or

8    to some extent for the events and happenings referred to herein and legally caused injury

9    and damages proximately thereby to NAMDY. NAMDY will seek leave of this Court to

10   amend this Complaint to insert their true names and capacities in place and instead of the

11   fictitious names when they become known to it.

7.    At all times herein mentioned, unless otherwise indicated, DEFENDANTS were the

13   agents and/or employees of each of the remaining DEFENDANTS, and were at all times

14   acting within the purpose and scope of said agency and employment, and each

15   DEFENDANT has ratified and approved the acts of his agent. At all times herein

16   mentioned, DEFENDANTS had actual or ostensible authority to act on each other's

17   behalf in certifying or authorizing the provision of medical services; processing and

18   administering the claims and appeals; pricing the claims; approving or denying the

19   claims; directing each other as to whether to pay and/or how to pay claims; issuing

20   remittance advices and explanations of benefits statements; and, making payments to

21   NAMDY and its patients.

## FACTS

8.    This complaint arises out of the failure of DEFENDANTS to make payments due and

24   owing to Physicians for surgical care, treatment, and procedures provided to numerous

25   patients[1] (hereafter referred to as "Patients"), all of whom were insureds, members,

---

[1] For privacy reasons and to comply with the Health Insurance Portability and Accountability Act of 1996 ("HIPPA"), the full names and identifying information pertaining to the patients has been withheld. This information will be disclosed to DEFENDANTS upon request.

1    policyholders, certificate-holders, or were otherwise covered for health, hospitalization,

2    pharmaceutical expenses, and major medical insurance through policies or certificates of

3    insurance issued and underwritten by DEFENDANTS.

4    9. None of the claims and/or causes of action in this Complaint are derivative of the

5    contractual rights of the patients. In no way does NAMDY seek to enforce the contractual

6    rights of the patients through the patients' insurance contracts, policies, certificates of

7    coverage, and/or any other written insurance agreements between DEFENDANTS and

8    any patients. The claims and causes of action are based upon the relationship and

9    interactions between the Physicians and DEFENDANTS and upon the fact that the

10    Patients were covered by DEFENDANTS.

11    10. NAMDY is informed and believes that each of the Patients were insured by

12    DEFENDANT either as a subscriber to coverage or a dependent of a subscriber to

13    coverage under a policy or certificate of insurance issued and underwritten by

14    DEFENDANT. NAMDY is informed and believes that each of the Patients entered into a

15    valid insurance agreement with DEFENDANT for the specific purpose of ensuring that

16    the Patients would have access to medically necessary treatments, care, procedures and

17    surgeries by medical practitioners like the Physicians and ensuring that DEFENDANT

18    would pay for the health care expenses incurred by the Patient.

19    11. NAMDY is informed and believes, and on such information and belief alleges, that

20    DEFENDANT received, and continues to receive, valuable premium payments from the

21    Patients and/or other consideration from the Patients under the subject policies applicable

22    to the Patients.

23    12. At all relevant times, the Physicians provided medically necessary and appropriate

24    services, care, treatment, and/or procedures to Patients holding valid insurance policies or

25    certificates issued by DEFENDANT.

26    13. The Physicians have a reputation for providing high quality care, treatment, and

27    procedures. Their charges for services are on par with the charges of other physicians in

28

1    the same general area for the same procedures and/or services. The Physicians' billed
2    charges are reasonable, usual, and customary.

14. The Physicians who provided medical services to Patients were "out-of-network
    providers" who had no preferred provider contracts or other contracts with
    DEFENDANT at the time that the surgeries or procedures were performed.

15. It is standard practice in the healthcare industry that when a medical provider enters into
    a written preferred provider contract with a health plan such as DEFENDANT, that
    ·medical provider agrees to accept reimbursement that is discounted from the medical
    provider's total billed charges in exchange for the benefits of being a preferred or
    contracted provider. Those benefits include an increased volume of business, because the
    health plan provides financial and other incentives to its members to receive their medical
    care and treatments from the contracted provider, such as advertising that the provider is
    "in network," and allowing the members to pay lower co-payments and deductibles to
    obtain care and treatment from a contracted provider. When health plans such as
    DEFENDANT receive claims from in-network providers, they adjusts the total charges
    submitted by the in-network provider and pays an agreed upon contract rate to the in-
    network provider.

16. Conversely, when a medical provider, such as Physicians, does not have a written
    contract with a health plan such that it is an out-of-network provider, the medical
    provider receives no referrals from the health plan, as the health plan discourages its
    members and subscribers from obtaining their care from the non-contracted providers.
    The non-contracted provider has no obligation to reduce its charges, and is entitled to
    receive payment based on its billed or total charges for the services rendered (less any
    copayments, coinsurance amounts, or deductibles owed by the Patients). The health plan
    is not entitled to a discount from the medical provider's total billed charges for the
    services rendered, because it is not providing the medical provider with the benefits of
    increased patient volume that results from being an in-plan or in-network provider. In
    such cases, when a health plan such as DEFENDANT receives claims from the out-of-

5
COMPLAINT

1    network provider for the total charges billed by the out-of-network provider and then

2    adjusts those claims, paying only those billed charges which are in an amount equivalent

3    to the usual and customary amount charged by similar providers rendering similar

4    treatment in the same or similar geographical location (less copayments, coinsurance, and

5    deductible amounts).

6    17. The Physicians were legally required to offer and render medical services, care,

7    treatment, and/or procedures to the Patients, who were members, insureds, or subscribers

8    of DEFENDANT, because the services were emergent. For each of the Patient claims at

9    issue here, the Physician did in fact provide such emergency medical services, care,

10    treatment, and/or procedures to the Patients, as required by law.

11    18. Because the medical services, care, treatment, and/or procedures rendered by the

12    Physicians to the Patients were emergent in nature, DEFENDANT was required by law to

13    compensate the Physicians at usual, customary, and reasonable rates.

14    19. The claims at issue in this case are comprised of claims for medical services, care,

15    treatment, and/or procedures provided to members, insureds or subscribers of

16    DEFENDANT by the Physicians, for which payments were made to the Physicians based

17    upon a sum unilaterally determined by DEFENDANT to be usual, customary, and

18    reasonable, which sums were not usual, reasonable, or customary and were far less than

19    the Physicians' billed charges.

20    20. Following performance of medical services, care, treatment, and/or procedures by the

21    Physicians upon the Patients, invoices, bills and claims were submitted to DEFENDANT

22    for adjustment and payment.

23    21. Medical records pertaining to the Patients medical services, care, treatment, and/or

24    procedures were provided to DEFENDANT by the Physicians. All information requested

25    by DEFENDANT relating to the medical services, care, treatment, and/or procedure

26    provided by the Physicians to the Patients was supplied to DEFENDANT by the

27    Physicians.

28

22. At all relevant times, the Physicians submitted their claims to DEFENDANT accompanied with lengthy operative reports, chart notes, and other medical records. No matter whether large or small, all of the Physicians' claims are submitted using CPT codes, Healthcare Common Procedure Coding System ("HCPCS"), and modifiers, as necessary.

23. At all relevant times, the Physicians expected to be reimbursed by DEFENDANT at the lesser of its billed charges or the then-current usual, customary, and reasonable rate, which is defined by California law as follows:

> A "usual" charge is the amount that is most consistently charged by an individual physician for a given service. A "customary" charge is the amount that falls within a specified range of usual charges for a given service billed by most physicians with similar training and experience within a given geographical area. A "reasonable" charge is a charge that meets the Usual and Customary criteria, or is otherwise reasonable in light of the complexity of treatment of the particular case. Under a UCR Program, the payment is the lowest of the actual billed charge, the physician's usual charge or the area customary charges for any given covered service.

24. Rather than simply pay the Physicians the lesser of their billed charges or usual, customary, and reasonable rates, DEFENDANTS instead routinely and deliberately reimbursed the Physicians' claims at below usual, customary, and reasonable levels, forcing Physicians to exhaust time and energy first identifying and then appealing improperly reimbursed claims.

25. DEFENDANTS have failed and refused to pay any monies, benefits, insurance proceeds, or make any payment to the Physicians in connection with the medically necessary services, care, treatment, and/or procedures rendered to the Patients by the Physicians, or have substantially underpaid benefits for such services at inappropriately low rates, using illegal and/or flawed databases and systems to calculate reimbursement for non-contracted providers and have failed and refused to pay the claims at usual, customary, and reasonable rates.

7

COMPLAINT

26. At all relevant times, DEFENDANT has improperly paid the Physicians for medically necessary and appropriate services rendered to DEFENDANT's insured at rates far below the billed rates, even though there was no contractual relationship or preferred provider relationship between the Physicians and DEFENDANTS. For each of the Patient claims at issue in this action, the Physicians provided medical services to members and insureds of DEFENDANT.

27. The rates paid by DEFENDANT were not reasonable, customary or usual, and were arbitrary, capricious and inexplicable. Further, DEFENDANT has never explained how they calculated, justified, rationalized or comprised their pricing and rate schedule for non-contracted, out-of-network providers, such as the Physicians.

28. Often, the rates paid to the Physicians by DEFENDANTS for the exact same procedure, treatment, surgery, or services were paid at different rates during the same year. At other times, the Physicians were paid rates which were below what they would have received had they been a preferred or in-network provider, even though such volume-discounted rates would have been significantly lower than usual, reasonable, and customary rates as defined by California law.

29. The California Department of Managed Health Care has adopted regulations that define the amount that health care service plans such as DEFENDANTS are obligated to pay non-contracted providers such as the Physicians. These regulations provide a methodology for determining the rate to be paid to out-of-network emergency room providers:

> For contracted providers without a written contract and non-contracted providers . . . the payment of the **reasonable and customary value** for the health care services rendered based upon statistically credible information that is updated at least annually and takes into consideration: (i) the provider's training, qualifications and length of time in practice; (ii) the nature of the services provided; (iii) **the fees usually charged by the provider; (iv) prevailing provider rates charged in the general geographic area in which the services were rendered;** (v) other aspects of the economics of the medical provider's practice that are relevant; and (vi) and unusual circumstances in the case.

8

1    28 Cal. Code Regs. Section 1300.71(a)(3)(B) (Emphasis added). These definitions are the

2    same criteria used by California Courts to determine the *quantum meruit* amounts that

3    should be paid for services rendered by non-contracted providers by insurers in

4    California.

5    30. Based upon these criteria, the Physicians' charges are reasonable and customary. The

6    Physicians charged DEFENDANT the same fees that they charges all other payers.

7    31. NAMDY is informed and believes that DEFENDANT relied upon and utilized a flawed

8    database to make pricing determinations for the claims submitted by the Physicians on

9    behalf of the Patient. DEFENDANT utilized that flawed database as a primary source of

10   data upon which it based its pricing determinations, even though DEFENDANT knew

11   that the data cannot and should not be used for that purpose. DEFENDANT was fully

12   aware that its database was not properly designed to determine usual, customary and

13   reasonable reimbursement amounts.

14   32. NAMDY is informed and believes and thereon alleges that DEFENDANT's system for

15   paying out-of-network claims is flawed, that DEFENDANT improperly manipulates the

16   data in its systems to underpay out-of-network medical provider claims, and that

17   DEFENDANT'S systems and methods for calculating such rates violate California law.

18   DEFENDANT has used flawed databases and systems to unilaterally determine what

19   amounts it pays to medical providers and has colluded with other insurers to artificially

20   underpay, decrease, limit, and minimize the reimbursement rates paid for services

21   rendered by non-contracted providers. The issue of flawed database has been investigated

22   by the U.S. Congress and New York Attorney General and has been the source of

23   numerous lawsuits and class action suits filed in connection with the databases utilized

24   (known as Ingenix).

25   33. NAMDY is informed and believes that there are a number of inherent flaws in

26   DEFENDANT's database, which make that database invalid and inappropriate for setting

27   usual, customary and reasonable rates. Among other flaws, DEFENDANT's database:

28       a.  Does not determine the numbers or types of providers in any geographic area;

9

b. Does not determine the actual types of procedures performed within a geographic area;

c. Collects charge data which is not representative of the actual number of procedures performed within a geographic area;

d. Does not collect sufficient data to enable its users to determine whether the data reflects the charges of providers with any particular degree of expertise or specialization;

e. Does not collect sufficient provider-specific data to enable its users to determine whether the charges are from one provider, from several providers, or from only a minority subset of the providers in a geographic area;

f. Fails to compare providers of the same or similar training and experience level and, instead, combines and averages all provider charges by procedure code without separating the charges of physicians and non-physicians;

g. Does not collect patient specific information such as age or medical history or condition;

h. Does not ascertain the most common charge for the same service or comparable service or supply;

i. Does not determine the place of service or type of facility;

j. Does not collect sufficient data to enable it or its users to determine an appropriate medical market for comparing like charges;

k. Combines zip codes inappropriately, and uses zip codes instead of appropriate medical markets;

l. Fails to compare procedures that use the same or similar resources (and other costs) to the provider but, rather, indiscriminately combines all provider charges by procedure code without regard to such factors;

m. Fails to compare procedures of the same or similar complexity by, among other things, failing to record or account for CPT code modifiers;

n. Does not use appropriate statistical methodology;

o. Does not properly consider charging protocols and billing practices generally accepted by the medical community or specialty groups;

p. Does not properly consider medical costs in setting geographic areas;

q. Lacks quality control, such as basic auditing, to ensure the validity, completeness, representativeness, and authenticity of the data submitted;

r. Is subject to pre-editing by data contributors;

s. Reports charges that are systematically skewed downward;

t. Uses relative values and conversion factors to derive inappropriate usual, customary and reasonable amounts;

u. Uses a methodology that does not comply with DEFENDANT'S contractual definition of usual, customary and reasonable; and

v. Purports to be confidential and/or proprietary, which prevents access to, and scrutiny of, the data by members of their employers.

34. These and other flaws render DEFENDANT'S use of its data system invalid and unlawful for determining usual, customary and reasonable rates. By systematically and typically making usual, customary, and reasonable rate determinations without compliant and valid data to substantiate its determinations, DEFENDANTS have breached their obligations to reimburse Physicians for out-of-network services. Accordingly, all past usual, customary, and reasonable rate determinations based on DEFENDANT'S data system should be overturned and disregarded.

35. DEFENDANT used other improper pricing methods to reduce reimbursement to out-of-network providers. Accordingly, DEFENDANT violated, and continues to violate, its legal obligations to Physicians to pay usual, customary and reasonable rates of reimbursement for services rendered to the Patients, insureds, subscribers, and members.

36. DEFENDANT has received claims from the Physicians for a number of years. As such, DEFENDANT knew the rates that the Physicians charged for various services. Moreover, DEFENDANT knew or should have known the amounts charged by other medical providers for medical services, care, and treatment, since it had received, reviewed and

11

1    processed, numerous claims prior to processing the claims at issue in this litigation. It is

2    standard practice in the healthcare industry for medical providers (whether in-network or

3    not) to submit claims and bills showing the total charges to health plans such as

4    DEFENDANT and for DEFENDANT to price those claims, based either upon the total

5    charges or the contractual rates offered to network providers.

6    37. The Physicians have also been disparaged by the pervasive under-reimbursement scheme.

7    When a patient refers to his/her evidence of coverage documents promulgated by

8    DEFENDANTS, he/she is led to believe that when he/she seeks out-of-network care their

9    charges will be paid by DEFENDANTS at the "usual and customary rate" of similar

10   physicians for a similar service in a similar area. When a patient obtains out-of-network

11   treatment from providers such as the Physicians and the provider submits the bill to the

12   insurer, a patient learns for the first time that he/she will not be fully reimbursed because

13   the doctor's charges are alleged by DEFENDANT to exceed the usual and customary

14   rate. The physician-patient relationship is undermined, as the physicians have been

15   branded as charlatans whose bills are inflated and unreasonable.

16   38. At all relevant times, DEFENDANT harmed the physicians by making improper usual,

17   customary, and reasonable rate and pricing determinations that reduced the lawful

18   reimbursement amounts for out-of-network providers without valid or compliant data to

19   support such determinations. DEFENDANT further harmed the Physicians by

20   misapplying in-network policies to out-of-network provider claims, and by delaying

21   payments to out-of-network providers under the pretext of negotiation. As a result of

22   these actions, the Physicians were financially harmed and forced to exhaust significant

23   time and resources appealing DEFENDANT's unlawful determination through a process

24   deliberately designed to deny, delay, and impede out-of-network physician providers

25   from obtaining their rightful reimbursement.

26   39. Upon information and belief, DEFENDANT used and continues to use flawed database

27   data, among other sources, to understate the true market rates of medical care performed

28   by out-of-network providers. The improper use of this data has caused both patients and

12

COMPLAINT

1    out-of-network providers to experience significant losses. Patients are harmed because
2    payers like DEFENDANT are not reimbursing out-of-network services at appropriate
3    levels, which results in out-of-network providers increasingly billing their patients for
4    amounts charged, which exceed the amounts DEFENDANT covers. Out-of-network
5    providers like Physicians are harmed because they are not always able to collect these
6    balances from patients and are forced to take a loss for their services. Moreover, because
7    out-of-network providers are often unaware of the scheme that results in payers like
8    DEFENDANT failing to pay appropriate usual, customary and reasonable rates, they are
9    either powerless to appeal any such improper determinations or their efforts to appeal
10   these determinations are futile. DEFENDANT, by contrast, benefits from paying out-of-
11   network providers at below market rates. If, for example, out-of-network providers fail to
12   realize that the scheme is the cause of their underpayment, DEFENDANT has unlawfully
13   retained money which otherwise belongs to the Physicians for the services provided.
14   DEFENDANT's ambiguity regarding its method for calculating usual, customary and
15   reasonable rates reflects its participation in this deceptive practice.

16 40. DEFENDANT's explanation of benefit statements are initially uninformative, false, and
17     misleading regarding the use of usual, customary, and reasonable rates. This ambiguity
18     has resulted in the inconsistent application of usual, customary and reasonable rates to
19     deny Physicians their lawful reimbursement. Usual, customary, and reasonable rates
20     should be applied consistently by DEFENDANTS, but instead are selectively used to
21     deny or diminish lawful reimbursement to Physicians and other out-of-network providers.

22 41. The Physicians' explanation of benefits and remittance advices received from
23     DEFENDANTS often state that their billed charges purportedly exceed the usual,
24     customary, and reasonable rate for the geographic area where the services were
25     performed. However, nowhere on the explanation of benefit statements, remittance
26     advices, or elsewhere in any other correspondence sent to the Physicians do
27     DEFENDANTS discuss or identify how they actually calculate usual, customary, and
28     reasonable rates. The Explanation of Benefit statements do not even specify whether

1     database data or some other methodology was used in these calculations. Instead, the

2     explanation of benefit statements plainly state that the rates have been determine by

3     DEFENDANTS. With its methods for calculating usual, customary, and reasonable rates

4     shrouded in a veil of secrecy, DEFENDANTS have been able to derive improper rates

5     using faulty data, and apply them to out-of-network providers such as the Physicians.

6     **FIRST CAUSE OF ACTION:**

7     **FOR RECOVERY OF PAYMENT FOR SERVICES RENDERED**

8     **(AS AGAINST ALL DEFENDANTS)**

9     42. Plaintiff incorporates all allegations set forth in the above paragraphs as though fully set

10     forth herein.

11     43. At all times herein mentioned, Physicians provided medical services, care, treatment,

12     and/or procedures to Patients as required by law (because the medical services provided

13     were emergency services), thereby benefiting DEFENDANTS and the Patients.

14     44. At all times herein mentioned, DEFENDANTS were required by law to pay usual,

15     reasonable, and customary rates for the emergency care provided by the Physicians to the

16     Patients, who were members or subscribers of DEFENDANT. California Health and

17     Safety Code § 1371.4; *Bell v. Blue Cross*, 131 Cal.App.4th 211.

18     45. At all relevant times, the Physicians rendered care, treatment, and services to the Patients

19     in good faith and in reliance upon the legal requirement that insurers pay for the

20     emergency medical care of those they insure. DEFENDANTS had a duty to pay,

21     reimburse, indemnify, and cover the Physicians for the care, treatment and services

22     rendered by the Physicians to the Patients pursuant to California Health & Safety Code

23     §§ 1371, 1371.35, and 1371.4 following the rendition of services and treatment by the

24     Physicians to the Patients. Further, DEFENDANTS had a duty to pay usual, customary,

25     and reasonable rates for the services rendered by the Physicians in compliance with 28

26     California Code of Regulations § 1300.71 et seq. For the Patients, DEFENDANTS have

27     failed and refused to comply with 28 California Code of Regulations § 1300.71 et seq.

28

14
COMPLAINT

46. At all relevant times, the Physicians rendered care and treatment to the Patient. DEFENDANT had a duty to pay, reimburse and cover the cost of such treatment and services by payment to the Physicians for the medical services, care, treatment, and/or procedures rendered by the Physicians to the Patients, pursuant to California Health & Safety Code §§ 1371, 1371.35, and 1371.4, and was prohibited from denying or refusing coverage, payment, indemnity, or reimbursement for the cost for treatment and services rendered by the Physicians to the Patients. Further, DEFENDANTS had a duty to pay usual, customary, and reasonable rates for the services rendered by NAMDY's assignor in compliance with 28 California Code of Regulations § 1300.71 et seq. and have failed and refused to pay usual, customary, and reasonable amounts.

47. At all relevant times, 28 California Administrative Code § 1300.71 et seq. required that DEFENDANTS reimburse the Physicians for the claims submitted on behalf of the Patient within 45 days after DEFENDANTS received the Patient's claims from the Physicians. 28 Cal. Admin. Code Tit. 28 Section 1300.71(a)(3) defines the manner and method by which reasonable and customary rates are to be defined by DEFENDANTS, providing:

> (B) For contracted providers without a written contract and non-contracted providers, except those providing services described in paragraph (C) below: the payment of the reasonable and customary value for the health care services rendered based upon statistically credible information that is updated at least annually and takes into consideration: (i) the provider's training, qualifications, and length of time in practice; (ii) the nature of the services provided; (iii) the fees usually charged by the provider; (iv) prevailing provider rates charged in the general geographic area in which the services were rendered; (v) any unusual circumstances in the case; and
> (C) For non-emergency services provided by non-contracted providers to PPO and POS enrollees: the amount set forth in the enrollee's Evidence of Coverage.

48. As a proximate result of the violation of California Health & Safety Code §§ 1371.8 and 1371, California Insurance Code § 796.04, California Insurance Code § 796.04 and/or 28 C.C.R. § 13700.1 by DEFENDANT, which acts were intentional, willful and knowing, the Physicians have never been paid for any of the medical services, care, treatment, and/or procedures provided to the Patient or have been underpaid for such medical

15

COMPLAINT

services, care, treatment, and/or procedures. By their acts and omissions, DEFENDANTS
have failed and refused to pay the usual, customary, and reasonable value for the services
rendered by the Physicians to the Patients.

49. The Physicians are owed reimbursement, compensation, and payment of the cost of the
medical services, care, treatment, and/or procedures which they rendered and provided to
the Patient at the Physicians' billed rates or at rates equivalent to the usual, customary,
and reasonable value for their services, in conformance with the legal requirements that
they provide emergency care to any patient and that the insurance of any patient who
received emergency care pay the provider of the care at usual, customary, and reasonable
rates.

50. The Physicians have demanded that DEFENDANT pay for the medical treatment
provided to the Patient, and has submitted statements to DEFENDANT for the medical
services rendered to the Patient.

51. DEFENDANTS have failed and refused to pay, and continue to refuse to pay the
Physicians for such services rendered at appropriate rates and have underpaid the
Physicians by failing and refusing to pay usual, customary and reasonable rates.
Accordingly, there is now due and owing an unpaid sum, plus statutory interest thereon.

## SECOND CAUSE OF ACTION:
## FOR RECOVERY OF PAYMENT ON OPEN BOOK ACCOUNT
## (AS AGAINST ALL DEFENDANTS)

52. Plaintiff incorporates all allegations set forth in the above paragraphs as though fully set
forth herein.

53. DEFENDANT has become indebted to the Physicians on open book accounts for the
Patients, for money due in the sum to be determined at the time of trial for medical
services rendered by the Physicians to the Patients.

54. The Physicians have provided medical treatment to the Patient, and have maintained
contemporaneous, itemized and detailed records and statements of each medical service
provided to the Patients. The Physicians have provided DEFENDANT with statements

1    itemizing the medical treatment provided to the Patients, along with an accounting of the

2    amounts owed by DEFENDANT.

3    55. DEFENDANT has refused to pay, and continue to refuse to pay, the Physicians the billed

4    charges submitted by the Physicians and/or the usual and customary charges owed to the

5    Physicians for the treatment, surgeries, procedures and medical services provided to the

6    Patients. Accordingly, there is now due and owing an unpaid sum in an amount to be

7    determined at the time of trial, plus statutory interest.

8    **THIRD CAUSE OF ACTION:**

9    **FOR QUANTUM MERUIT**

10   **(AGAINST ALL DEFENDANTS)**

11   56. Plaintiff incorporates all allegations set forth in the above paragraphs as though fully set

12   forth herein.

13   57. As required by law (because the medical services provided were emergency services), the

14   Physicians provided surgeries, procedures, medical treatments, and other medical

15   services to the Patients, thereby benefitting DEFENDANT and the Patients.

16   58. DEFENDANTS have failed and refused to pay the Physicians the appropriate amounts

17   incurred by the Physicians in rendering medical services, care, treatment, and/or

18   procedures to the Patients, have underpaid those costs and have failed and refused to pay

19   the usual, reasonable, and customary costs of those services.

20   59. At all times herein mentioned, DEFENDANTS were required by law to pay usual,

21   reasonable, and customary rates for the emergency care provided by the Physicians to the

22   Patients, who were members or subscribers of DEFENDANT. California Health and

23   Safety Code § 1371.4; *Bell v. Blue Cross*, 131 Cal.App.4th 211.

24   60. DEFENDANT is required to reimburse the Physicians at a *quantum meruit* rate for all

25   services rendered to the enrollees, the Patients. The *quantum meruit* amount owed by

26   DEFENDANT to the Physicians is determined according to the customary charges that

27   would be billed by the Physicians and/or other physicians in the absence of preferred

28   provider or participating provider contractual rates. Based upon DEFENDANTs request

17

1   that the Physicians render treatment, surgeries, procedures and medical services to the
2   Patient, and the fact that DEFENDANT was benefitted by the provision of such services
3   by the Physicians, an obligation on the part of DEFENDANT to make restitution to the
4   Physicians arose.
5   61. The *quantum meruit* rate for the medical treatment the Physicians provided to the Patients
6   is an amount to be determined at trial. This amount represents the usual, customary and
7   reasonable cost or charge for the services rendered by the Physicians. The Physicians
8   have submitted statements to DEFENDANT for these amounts, and have made repeated
9   demands that they be paid for the medical treatment provided to the Patient at usual,
10   customary, and reasonable rates.
11   62. DEFENDANT has refused to pay, and continues to refuse to pay, the Physicians for the
12   whole or any part of the sums owed to the Physicians for the treatment, surgeries,
13   procedures and medical services provided to the Patient, at usual, customary and
14   reasonable rates. Accordingly, there is now due and owing an unpaid sum, plus statutory
15   interest.

16   ## FOURTH CAUSE OF ACTION:
17   ## FOR BREACH OF IMPLIED CONTRACT
18   ## (AS AGAINST ALL DEFENDANTS)

19   63. Plaintiff incorporates all allegations set forth in the above paragraphs as though fully set
20   forth herein.
21   64. NAMDY is informed and believes and thereon alleges that, at all relevant times herein,
22   the Patients had valid policies with DEFENDANT or were members, subscribers,
23   insureds, or were otherwise entitled to coverage, indemnification and payment as
24   policyholders or certificate-holders of insurance policies and certificates issued and
25   underwritten by DEFENDANT.
26   65. NAMDY is informed and believes that the Patients obtained such policies from
27   DEFENDANT for the specific purposes of (1) ensuring that the patients would have
28

18

COMPLAINT

1    access to medically necessary treatments at healthcare facilities, and (2) ensuring that

2    DEFENDANT would pay for the healthcare expenses incurred by the patients.

3    66. DEFENDANTS knew or reasonably should have known that its insureds would seek

4    medical treatment from the Physicians.

5    67. NAMDY is informed and believes that DEFENDANT received and continues to receive

6    valuable premium payments from the Patients under the relevant insurance policies.

7    68. Since Physicians were required by law to treat the Patients in emergency situations, they

8    agreed by implication to treat the Patients.  DEFENDANTS, by law, were required to pay

9    Physicians at the usual, customary, and reasonable rate for emergency services and

10   therefore agreed by implication to pay usual, customary, and reasonable rates to

11   Physicians.  California Health and Safety Code § 1371.4; *Bell v. Blue Cross*, 131

12   Cal.App.4th 211.

13   69. In consideration for the Physicians' implied agreement to treat the Patients,

14   DEFENDANT implicitly agreed to reimburse the Physicians for the expenses incurred by

15   the Patients in the course of being treated and undergoing surgeries or procedures

16   rendered by the Physicians and agreed to pay the Physicians a usual and customary rate

17   for those services.

18   70. The Physicians provided medical treatment to the Patient. DEFENDANT has refused to

19   pay, and continues to refuse to pay, the Physicians for the whole or a part of the sums

20   owed to the Physicians at appropriate rates for the treatment services provided to the

21   Patients.

22   71. As a result of the foregoing breach, the Physicians have been damaged by DEFENDANT

23   in an amount to be determined at trial. Accordingly, there is now due and owing an

24   unpaid sum, plus statutory interest thereon.

25   **FIFTH CAUSE OF ACTION:**

26   **FOR DECLARATORY RELIEF**

27   **(AS AGAINST ALL DEFENDANTS)**

28

19

COMPLAINT

72. Plaintiffs incorporate all allegations set forth in the above paragraphs as though fully set forth herein.

73. A dispute has arisen between the Physicians and DEFENDANT as to the amount that DEFENDANT is required to pay the Physicians for the medically necessary services provided by the Physicians to the Patients. DEFENDANT contends that it owes the Physicians nothing in connection with the services, surgeries, and procedures provided to the Patients. The Physicians contend that they are entitled to receive payment in an amount to be determined at trial, plus statutory interest, for the medical services provided to the Patients during the course of their treatment.

74. NAMDY seeks and desires a judicial determination by the Court that DEFENDANT is required to pay the Physicians for the services, surgeries, procedures, and other medical treatments provided to the Patients during the course of their treatment by the Physicians at the billed or total rates charged by the Physicians.

75. Such a declaration is necessary and appropriate at this time so that the Physicians and DEFENDANT may ascertain their rights, duties, and obligations concerning the medical services the Physicians provided to the Patients.

### SIXTH CAUSE OF ACTION:
### FOR NEGLIGENCE PER SE
### (AS AGAINST ALL DEFENDANTS)

74. Plaintiffs incorporate by reference all previous paragraphs as though fully set forth herein.

75. At all times herein mentioned, DEFENDANTS were required by law to pay usual, reasonable, and customary rates for the emergency care provided by the Physicians to the Patients, who were members or subscribers of DEFENDANT. California Health and Safety Code § 1371.4; *Bell v. Blue Cross*, 131 Cal.App.4th 211.

76. DEFENDANTS have a duty to pay, reimburse, indemnify, and cover the Physicians for the medical services, care, treatment, and/or procedures rendered by the Physicians to the Patients pursuant to California Health & Safety Code §§ 1371.1, 1371.8, and/or

20

California Insurance Code § 796.04 following the rendition of services and treatment by the Physicians to the Patients. Further, DEFENDANTS had a duty to pay usual, customary, and reasonable rates for the services rendered by the Physicians in compliance with 28 California Code of Regulations § 1300.71 et seq. For the Patients, DEFENDANTS have failed and refused to comply with 28 California Code of Regulations § 1300.71 et seq.

77. DEFENDANTS have a duty to pay, reimburse, compensate, cover and indemnify the Physicians at their billed rates or at usual, customary, and reasonable rates for the services, treatment, care and pharmaceuticals rendered by the Physicians to the Patients in compliance with the legal requirement that insurers cover emergency medical care provided to those they insure. Such duties arose by virtue of California Health & Safety Code §§ 1371.8, 1371.1, and 1371.4, by virtue of California Insurance Code § 796.04 and by virtue of 28 California Code of Regulations § 1300.71 et seq.

78. Each of the statutes herein mentioned was intended to prevent, prohibit, and preclude the type of damage suffered and sustained by the Physicians. Each of the statutes herein mentioned was intended to prevent, prohibit, and preclude DEFENDANTS from failing and refusing to pay, compensate, reimburse, cover, and indemnify the Physicians for the medical services, care, treatment, and/or procedures they provided to the Patients and from being underpaid by DEFENDANT for such medical services, care, treatment, and/or procedures.

79. The Physicians are members of the class of persons and/or entities to be protected by these statutes, since they were "providers" of medical care, which rendered health care services in good faith to DEFENDANTS' members, subscribers, and insured the Patients. DEFENDANTS were regulated by California law and are subject to California Health & Safety Code §§ 1371.1, 1371.4 and 1371.8, California Insurance Code § 796.04 and 28 California Code of Regulations § 1300.71 et seq.

80. As a proximate result of the violation of California Health & Safety Code §§ 1371.1, 1371.4, and 1371.8, California Insurance Code § 796.04 and 28 California Code of

21

Regulations § 1300.71, et seq., by DEFENDANT and of the breaches of DEFENDANT's duties to the Physicians, which acts were intentional, willful, and knowing, the Physicians have never been paid, compensated, reimbursed, indemnified, or covered for the costs of the treatment, care and services it rendered to the Patient and/or have been underpaid for such services. The refusal of DEFENDANT to reimburse the Physicians for the services provided to Patients insured by DEFENDANT is negligence *per se*.

81. The Physicians are owed reimbursement, compensation, and payment of the cost of the medical services, care, treatment, and/or procedures which they rendered and provided to the Patients at the Physicians' billed rates, in conformance with the legal requirements that they provide emergency care to any patient and that the insurance of any patient who receives emergency care pay the provider of the care at usual, customary, and reasonable rates.

## SEVENTH CAUSE OF ACTION:
## FOR INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE
## (AS AGAINST ALL DEFENDANTS)

82. Plaintiff incorporates by reference all previous paragraphs as though fully set forth herein.

83. For each service provided by the Physicians to each Patient, the Patient was required to pay some portion of that bill as part of their deductible, as their coinsurance amount, and/or as their co-pay.

84. The explanation of benefit forms provided by DEFENDANT to both the Patients and the Physicians lists an "allowed amount" for each medical service to each Patient. It is the monetary amount that DEFENDANT unilaterally determined the services would be reimbursed at.

85. The allowed amount was significantly lower than the billed amount for each service for each Patient.

86. The Patients, rather than paying their portions (deductible, coinsurance, and/or co-pay) of the billed amounts, only paid their portions of the allowable amount.

22

87. As a result, the Physicians received less money from the Patients than they would have if the patients had not been, in effect, told by DEFENDANT to pay at amounts lower than the billed amount.

88. DEFENDANT acted wrongfully by unilaterally determining the rates to be paid for each service, by determining rates that were below usual, customary, and reasonable rates, and by convincing the Patients to pay at the lower "allowed" amounts via their explanation of benefits forms.

89. DEFENDANT was aware of the economic relationship between the Physicians and the Patients because DEFENDANT knew that the Physicians treated the patients and knew that the Patients would have to pay some portion of the bills for the medical services provided by the Physicians.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff NAMDY CONSULTING, INC. prays for judgment against DEFENDANT as follows:

1. For compensatory damages in an amount to be determined, plus statutory interest;

2. For restitution in an amount to be determined, plus statutory interest;

3. For a declaration that ANTHEM and BLUE SHIELD are obligated to pay plaintiff all monies owed for medical services rendered to the Patient; and

4. For such other further relief the Court deems just and appropriate.

DATED: October 17, 2017                    Respectfully submitted,

By: _A. Nabil_____

**ALAN NESBIT, Esq.**
Attorney for Plaintiff
NAMDY CONSULTING, INC.

23
COMPLAINT

1            **DEMAND FOR JURY TRIAL**

2  Plaintiff, NAMDY CONSULTNG, INC. hereby demands a jury trial as provided by law.

3

4  DATED:  October  17, 2017            Respectfully submitted,

5

6

7                By: _A. Nesbit_____

8                ALAN NESBIT, Esq.

               Attorney for Plaintiff

9                NAMDY CONSULTING, INC.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

24

COMPLAINT



**REZAC–MEYER**
**ATTORNEY SERVICE**
A Division of Nowell Enterprises, Inc.

1610 Beverly Blvd., Ste. 1
Los Angeles, CA 90026
Phone: (213) 481-1770 ~ Fax: (213) 481-9957



Date Received: November 02, 2017
Client No: 3146

# STANDARD

** DOUGLAS FORREST **

Due Date:
Status By: 11/3/2017
Last Day to Sub:
Reference #: US00019
Contact: LINDA LAVALLEE
Contact Phone: (323) 456-8605
Order #: LA219797

Client: NESBIT LAW GROUP
8383 WILSHIRE BLVD., SUITE 800
BEVERLY HILLS, CA 90211
(323) 456-8605 (323) 456-8601
Case No: BC680021
Court: LOS ANGELES COUNTY SUPERIOR COURT
Plaintiff: NAMDY CONSULTING, INC.
vs Defendant: ANTHEM BLUE CROSS LIFE AND HEALTH INSURANCE CO.
Servee: BLUE SHIELD OF CALIFORINA

Special Instructions:

Business Address: CT CORP
818 W 7TH STREET, #930
LOS ANGELES, CA 90017

2 & 7

Documents: Summons; Complaint; Civil Case Cover Sheet; Civil Case Cover Sheet Addendum and Statement of Location; Notice of Case Assignment- Unlimited Civil Case;

| DATE | TIME | NOTES FROM DOUGLAS FORREST |
|------|------|----------------------------|
|      |      |                            |
|      |      |                            |
|      |      |                            |
|      |      |                            |
|      |      |                            |
|      |      |                            |
|      |      |                            |
|      |      |                            |
|      |      |                            |
|      |      |                            |

**Physical Description:**
Age:              Height:              Skin:              Hair:
Sex:              Weight:              Eyes:
Marks:

☐ Personal Service
☐ Substituted Service
☐ Not Served

Served To: _____      Title/Rel: _____
Served At: _____      Date: _____
          _____      Time: _____
          _____      Server: _____

order #: LA219797/WORKP

**SUM-100**

# SUMMONS
## (CITACION JUDICIAL)

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

ANTHEM BLUE CROSS LIFE AND HEALTH INSURANCE CO.
AND BLUE SHIELD OF CALIFORNIA AND DOES 1 - 40

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

NAMDY CONSULTING, INC.

*FOR COURT USE ONLY*
*(SOLO PARA USO DE LA CORTE)*
CONFORMED COPY
ORIGINAL FILED
Superior Court of California
County of Los Angeles

OCT 18 2017

Sherri R. Carter, Executive Officer/Clerk
By: Glorietta Robinson, Deputy

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| The name and address of the court is: <br> (El nombre y dirección de la corte es:) Los Angeles Superior Court, Central Dist <br> 111 North Hill Street, Los Angeles, California 90012 | CASE NUMBER: <br> (Número del Caso:) <br> BC 680021 |
|---|---|

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es:)*
Alan Nesbit, Esq, 8383 Wilshire Boulevard, Suite 800, Beverly Hills, California 90211

SHERRI R. CARTER

| DATE: OCT 18 2017 <br> (Fecha) | Clerk, by <br> (Secretario) Glorietta Robinson | , Deputy <br> (Adjunto) |
|---|---|---|

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

[SEAL]

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of (specify):

3. ☒ on behalf of (specify): Blue Shield of California

under: ☒ CCP 416.10 (corporation)    ☐ CCP 416.60 (minor)
☐ CCP 416.20 (defunct corporation)    ☐ CCP 416.70 (conservatee)
☐ CCP 416.40 (association or partnership)    ☐ CCP 416.90 (authorized person)
☐ other (specify):

4. ☐ by personal delivery on (date):

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Alan Nesbit, Esq. [SBN 310466]<br>NESBIT LAW GROUP, LLP<br>8383 Wilshire Boulevard, Suite 800<br>Beverly Hills, California 90211<br>TELEPHONE NO.: 323.456.8605     FAX NO.: 323.456.8605<br>ATTORNEY FOR *(Name):* Namdy Consulting, Inc. | CONFORMED COPY<br>ORIGINAL FILED<br>Superior Court of California<br>County of Los Angeles<br><br>OCT 18 2017<br><br>Sherri R. Carter, Executive Officer/Clerk<br>By: Glorietta Robinson, Deputy |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF **LOS ANGELES**
STREET ADDRESS: **111 North Hills Street**
MAILING ADDRESS: **Same**
CITY AND ZIP CODE: **Los Angeles, CA 90012**
BRANCH NAME: **Stanley Mosk**

CASE NAME:
**Namdy Consulting, Inc. v. Anthem Blue Cross Life and Health Ins., et al.**

| CIVIL CASE COVER SHEET | | Complex Case Designation | | CASE NUMBER:<br>BC 680021 |
|---|---|---|---|---|
| ☑ Unlimited<br>(Amount<br>demanded<br>exceeds $25,000) | ☐ Limited<br>(Amount<br>demanded is<br>$25,000 or less) | ☐ Counter  ☐ Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | | JUDGE:<br><br>DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

| Auto Tort | Contract | Provisionally Complex Civil Litigation<br>(Cal. Rules of Court, rules 3.400–3.403) |
|---|---|---|
| ☐ Auto (22) | ☑ Breach of contract/warranty (06) | ☐ Antitrust/Trade regulation (03) |
| ☐ Uninsured motorist (46) | ☐ Rule 3.740 collections (09) | ☐ Construction defect (10) |
| **Other PI/PD/WD (Personal Injury/Property** | ☐ Other collections (09) | ☐ Mass tort (40) |
| **Damage/Wrongful Death) Tort** | ☐ Insurance coverage (18) | ☐ Securities litigation (28) |
| ☐ Asbestos (04) | ☐ Other contract (37) | ☐ Environmental/Toxic tort (30) |
| ☐ Product liability (24) | **Real Property** | ☐ Insurance coverage claims arising from the |
| ☐ Medical malpractice (45) | ☐ Eminent domain/Inverse<br>condemnation (14) | above listed provisionally complex case<br>types (41) |
| ☐ Other PI/PD/WD (23) | ☐ Wrongful eviction (33) | **Enforcement of Judgment** |
| **Non-PI/PD/WD (Other) Tort** | ☐ Other real property (26) | ☐ Enforcement of judgment (20) |
| ☐ Business tort/unfair business practice (07) | **Unlawful Detainer** | **Miscellaneous Civil Complaint** |
| ☐ Civil rights (08) | ☐ Commercial (31) | ☐ RICO (27) |
| ☐ Defamation (13) | ☐ Residential (32) | ☐ Other complaint *(not specified above)* (42) |
| ☐ Fraud (16) | ☐ Drugs (38) | **Miscellaneous Civil Petition** |
| ☐ Intellectual property (19) | **Judicial Review** | ☐ Partnership and corporate governance (21) |
| ☐ Professional negligence (25) | ☐ Asset forfeiture (05) | ☐ Other petition *(not specified above)* (43) |
| ☐ Other non-PI/PD/WD tort (35) | ☐ Petition re: arbitration award (11) | |
| **Employment** | ☐ Writ of mandate (02) | |
| ☐ Wrongful termination (36) | ☐ Other judicial review (39) | |
| ☐ Other employment (15) | | |

2. This case ☐ is ☑ is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☑ Large number of separately represented parties
   b. ☐ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. ☐ Substantial amount of documentary evidence
   d. ☐ Large number of witnesses
   e. ☐ Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. ☐ Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. ☑ monetary  b. ☐ nonmonetary; declaratory or injunctive relief  c. ☐ punitive
4. Number of causes of action *(specify):*
5. This case ☐ is ☑ is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: October 17, 2017

Alan Nesbit
_(TYPE OR PRINT NAME)_     ▶     _(SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)_

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. July 1, 2007] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;<br>Cal. Standards of Judicial Administration, std. 3.10<br>www.courtinfo.ca.gov |

*By Fax*

| SHORT TITLE: NAMDY V. ANTHEM BLUE CROSS HEALTH AND LIFE INS. | CASE NUMBER |
|---|---|

**By Fax**

BC 6 8 0 0 3 1

## CIVIL CASE COVER SHEET ADDENDUM AND
## STATEMENT OF LOCATION
## (CERTIFICATE OF GROUNDS FOR ASSIGNMENT TO COURTHOUSE LOCATION)

This form is required pursuant to Local Rule 2.3 in all new civil case filings in the Los Angeles Superior Court.

**Step 1:** After completing the Civil Case Cover Sheet (Judicial Council form CM-010), find the exact case type in Column A that corresponds to the case type indicated in the Civil Case Cover Sheet.

**Step 2:** In Column B, check the box for the type of action that best describes the nature of the case.

**Step 3:** In Column C, circle the number which explains the reason for the court filing location you have chosen.

### Applicable Reasons for Choosing Court Filing Location (Column C)

1. Class actions must be filed in the Stanley Mosk Courthouse, Central District.
2. Permissive filing in central district.
3. Location where cause of action arose.
4. Mandatory personal injury filing in North District.
5. Location where performance required or defendant resides.
6. Location of property or permanently garaged vehicle.
7. Location where petitioner resides.
8. Location wherein defendant/respondent functions wholly.
9. Location where one or more of the parties reside.
10. Location of Labor Commissioner Office.
11. Mandatory filing location (Hub Cases – unlawful detainer, limited non-collection, limited collection, or personal injury).

| | A Civil Case Cover Sheet Category No. | B Type of Action (Check only one) | C Applicable Reasons - See Step 3 Above |
|---|---|---|---|
| **Auto Tort** | Auto (22) | ☐ A7100  Motor Vehicle - Personal Injury/Property Damage/Wrongful Death | 1, 4, 11 |
| | Uninsured Motorist (46) | ☐ A7110  Personal Injury/Property Damage/Wrongful Death – Uninsured Motorist | 1, 4, 11 |
| **Other Personal Injury/ Property Damage/ Wrongful Death Tort** | Asbestos (04) | ☐ A6070  Asbestos Property Damage<br>☐ A7221  Asbestos - Personal Injury/Wrongful Death | 1, 11<br>1, 11 |
| | Product Liability (24) | ☐ A7260  Product Liability (not asbestos or toxic/environmental) | 1, 4, 11 |
| | Medical Malpractice (45) | ☐ A7210  Medical Malpractice - Physicians & Surgeons<br>☐ A7240  Other Professional Health Care Malpractice | 1, 4, 11<br>1, 4, 11 |
| | Other Personal Injury Property Damage Wrongful Death (23) | ☐ A7250  Premises Liability (e.g., slip and fall)<br>☐ A7230  Intentional Bodily Injury/Property Damage/Wrongful Death (e.g., assault, vandalism, etc.)<br>☐ A7270  Intentional Infliction of Emotional Distress<br>☐ A7220  Other Personal Injury/Property Damage/Wrongful Death | 1, 4, 11<br>1, 4, 11<br><br>1, 4, 11<br>1, 4, 11 |

LACIV 109 (Rev 2/16)
LASC Approved 03-04

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

Local Rule 2.3
Page 1 of 4

| SHORT TITLE: NAMDY V. ANTHEM BLUE CROSS HEALTH AND LIFE INS. | CASE NUMBER |
|---|---|

| | A<br>Civil Case Cover Sheet<br>Category No. | B<br>Type of Action<br>(Check only one) | C Applicable<br>Reasons - See Step 3<br>Above |
|---|---|---|---|
| **Non-Personal Injury/ Property Damage/ Wrongful Death Tort** | Business Tort (07) | ☐ A6029 Other Commercial/Business Tort (not fraud/breach of contract) | 1, 2, 3 |
| | Civil Rights (08) | ☐ A6005 Civil Rights/Discrimination | 1, 2, 3 |
| | Defamation (13) | ☐ A6010 Defamation (slander/libel) | 1, 2, 3 |
| | Fraud (16) | ☐ A6013 Fraud (no contract) | 1, 2, 3 |
| | Professional Negligence (25) | ☐ A6017 Legal Malpractice<br>☐ A6050 Other Professional Malpractice (not medical or legal) | 1, 2, 3<br>1, 2, 3 |
| | Other (35) | ☐ A6025 Other Non-Personal Injury/Property Damage tort | 1, 2, 3 |
| **Employment** | Wrongful Termination (36) | ☐ A6037 Wrongful Termination | 1, 2, 3 |
| | Other Employment (15) | ☐ A6024 Other Employment Complaint Case<br>☐ A6109 Labor Commissioner Appeals | 1, 2, 3<br>10 |
| **Contract** | Breach of Contract/ Warranty (06)<br>(not insurance) | ☐ A6004 Breach of Rental/Lease Contract (not unlawful detainer or wrongful eviction)<br>☐ A6008 Contract/Warranty Breach -Seller Plaintiff (no fraud/negligence)<br>☐ A6019 Negligent Breach of Contract/Warranty (no fraud)<br>☐ A6028 Other Breach of Contract/Warranty (not fraud or negligence) | 2, 5<br>2, 5<br>1, 2, 5<br>1, 2, 5 |
| | Collections (09) | ☐ A6002 Collections Case-Seller Plaintiff<br>☐ A6012 Other Promissory Note/Collections Case<br>☐ A6034 Collections Case-Purchased Debt (Charged Off Consumer Debt Purchased on or after January 1, 2014) | 5, 6, 11<br>5, 11<br>5, 6, 11 |
| | Insurance Coverage (18) | ☑ A6015 Insurance Coverage (not complex) | 1, 2, 5, 8 |
| | Other Contract (37) | ☐ A6009 Contractual Fraud<br>☐ A6031 Tortious Interference<br>☐ A6027 Other Contract Dispute(not breach/insurance/fraud/negligence) | 1, 2, 3, 5<br>1, 2, 3, 5<br>1, 2, 3, 8, 9 |
| **Real Property** | Eminent Domain/Inverse Condemnation (14) | ☐ A7300 Eminent Domain/Condemnation     Number of parcels_____ | 2, 6 |
| | Wrongful Eviction (33) | ☐ A6023 Wrongful Eviction Case | 2, 6 |
| | Other Real Property (26) | ☐ A6018 Mortgage Foreclosure<br>☐ A6032 Quiet Title<br>☐ A6060 Other Real Property (not eminent domain, landlord/tenant, foreclosure) | 2, 6<br>2, 6<br>2, 6 |
| **Unlawful Detainer** | Unlawful Detainer-Commercial (31) | ☐ A6021 Unlawful Detainer-Commercial (not drugs or wrongful eviction) - | 6, 11 |
| | Unlawful Detainer-Residential (32) | ☐ A6020 Unlawful Detainer-Residential (not drugs or wrongful eviction) | 6, 11 |
| | Unlawful Detainer-Post-Foreclosure (34) | ☐ A6020F Unlawful Detainer-Post-Foreclosure | 2, 6, 11 |
| | Unlawful Detainer-Drugs (38) | ☐ A6022 Unlawful Detainer-Drugs | 2, 6, 11 |

| SHORT TITLE: NAMDY V. ANTHEM BLUE CROSS HEALTH AND LIFE INS. | CASE NUMBER |
|---|---|

| **A**<br>Civil Case Cover Sheet<br>Category No. | **B**<br>Type of Action<br>(Check only one) | **C** Applicable<br>Reasons - See Step 3<br>Above |
|---|---|---|
| **Judicial Review** Asset Forfeiture (05) | ☐ A6108 Asset Forfeiture Case | 2, 3, 6 |
| Petition re Arbitration (11) | ☐ A6115 Petition to Compel/Confirm/Vacate Arbitration | 2, 5 |
| Writ of Mandate (02) | ☐ A6151 Writ - Administrative Mandamus<br>☐ A6152 Writ - Mandamus on Limited Court Case Matter<br>☐ A6153 Writ - Other Limited Court Case Review | 2, 8<br>2<br>2 |
| Other Judicial Review (39) | ☐ A6150 Other Writ /Judicial Review | 2, 8 |
| **Provisionally Complex Litigation** Antitrust/Trade Regulation (03) | ☐ A6003 Antitrust/Trade Regulation | 1, 2, 8 |
| Construction Defect (10) | ☐ A6007 Construction Defect | 1, 2, 3 |
| Claims Involving Mass Tort (40) | ☐ A6006 Claims Involving Mass Tort | 1, 2, 8 |
| Securities Litigation (28) | ☐ A6035 Securities Litigation Case | 1, 2, 8 |
| Toxic Tort<br>Environmental (30) | ☐ A6036 Toxic Tort/Environmental | 1, 2, 3, 8 |
| Insurance Coverage Claims<br>from Complex Case (41) | ☐ A6014 Insurance Coverage/Subrogation (complex case only) | 1, 2, 5, 8 |
| **Enforcement of Judgment** Enforcement<br>of Judgment (20) | ☐ A6141 Sister State Judgment<br>☐ A6160 Abstract of Judgment<br>☐ A6107 Confession of Judgment (non-domestic relations)<br>☐ A6140 Administrative Agency Award (not unpaid taxes)<br>☐ A6114 Petition/Certificate for Entry of Judgment on Unpaid Tax<br>☐ A6112 Other Enforcement of Judgment Case | 2, 5, 11<br>2, 6<br>2, 9<br>2, 8<br>2, 8<br>2, 8, 9 |
| **Miscellaneous Civil Complaints** RICO (27) | ☐ A6033 Racketeering (RICO) Case | 1, 2, 8 |
| Other Complaints<br>(Not Specified Above) (42) | ☐ A6030 Declaratory Relief Only<br>☐ A6040 Injunctive Relief Only (not domestic/harassment)<br>☐ A6011 Other Commercial Complaint Case (non-tort/non-complex)<br>☐ A6000 Other Civil Complaint (non-tort/non-complex) | 1, 2, 8<br>2, 8<br>1, 2, 8<br>1, 2, 8 |
| **Miscellaneous Civil Petitions** Partnership Corporation<br>Governance (21) | ☐ A6113 Partnership and Corporate Governance Case | 2, 8 |
| Other Petitions (Not<br>Specified Above) (43) | ☐ A6121 Civil Harassment<br>☐ A6123 Workplace Harassment<br>☐ A6124 Elder/Dependent Adult Abuse Case<br>☐ A6190 Election Contest<br>☐ A6110 Petition for Change of Name/Change of Gender<br>☐ A6170 Petition for Relief from Late Claim Law<br>☐ A6100 Other Civil Petition | 2, 3, 9<br>2, 3, 9<br>2, 3, 9<br>2<br>2, 7<br>2, 3, 8<br>2, 9 |

**CIVIL CASE COVER SHEET ADDENDUM<br>AND STATEMENT OF LOCATION**

| SHORT TITLE: NAMDY V. ANTHEM BLUE CROSS HEALTH AND LIFE INS. | CASE NUMBER |
|---|---|

**Step 4: Statement of Reason and Address:** Check the appropriate boxes for the numbers shown under Column C for the type of action that you have selected. Enter the address which is the basis for the filing location, including zip code. (No address required for class action cases).

| REASON:<br>☒ 1. ☒ 2. ☐ 3. ☐ 4. ☒ 5. ☐ 6. ☐ 7. ☒ 8. ☐ 9. ☐ 10. ☐ 11. | ADDRESS:<br>2080 Century Park East, Suite 1111 |
|---|---|
| CITY:<br>Century City | STATE:<br>CA | ZIP CODE:<br>90067 | |

**Step 5: Certification of Assignment:** I certify that this case is properly filed in the **Central** District of the Superior Court of California, County of Los Angeles [Code Civ. Proc., §392 et seq., and Local Rule 2.3(a)(1)(E)].

Dated: October 17, 2017

_____
(SIGNATURE OF ATTORNEY/FILING PARTY)

**PLEASE HAVE THE FOLLOWING ITEMS COMPLETED AND READY TO BE FILED IN ORDER TO PROPERLY COMMENCE YOUR NEW COURT CASE:**

1. Original Complaint or Petition.

2. If filing a Complaint, a completed Summons form for issuance by the Clerk.

3. Civil Case Cover Sheet, Judicial Council form CM-010.

4. Civil Case Cover Sheet Addendum and Statement of Location form, LACIV 109, LASC Approved 03-04 (Rev. 02/16).

5. Payment in full of the filing fee, unless there is court order for waiver, partial or scheduled payments.

6. A signed order appointing the Guardian ad Litem, Judicial Council form CIV-010, if the plaintiff or petitioner is a minor under 18 years of age will be required by Court in order to issue a summons.

7. Additional copies of documents to be conformed by the Clerk. Copies of the cover sheet and this addendum must be served along with the summons and complaint, or other initiating pleading in the case.

**CIVIL CASE COVER SHEET ADDENDUM AND STATEMENT OF LOCATION**

SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
NOTICE OF CASE ASSIGNMENT - UNLIMITED CIVIL CASE (NON-CLASS ACTION)

Case Number

**BC 6 8 0 0 2 1**

**THIS FORM IS TO BE SERVED WITH THE SUMMONS AND COMPLAINT**

Your case is assigned for all purposes to the Judge indicated below. There is more information on the reverse side of this form.

| | ASSIGNED JUDGE | DEPT | ROOM | | ASSIGNED JUDGE | DEPT | ROOM | |
|---|---|---|---|---|---|---|---|---|
| | Hon. Debre K. Weintraub | 1 | 534 | | Hon. Elizabeth Allen White | 48 | 506 | |
| | Hon. Barbara A. Meiers | 12 | 636 | | Hon. Deirdre Hill | 49 | 509 | |
| | Hon. Terry A. Green | 14 | 300 | | Hon. Teresa A. Beaudet | 50 | 508 | |
| | Hon. Richard Fruin | 15 | 307 | | Hon. Michael J. Raphael | 51 | 511 | |
| | Hon. Rita Miller | 16 | 306 | | Hon. Susan Bryant-Deason | 52 | 510 | |
| | Hon. Richard E. Rico | 17 | 309 | | Hon. Howard L. Halm | 53 | 513 | |
| | Hon. Stephanie Bowick | 19 | 311 | | Hon. Ernest M. Hiroshige | 54 | 512 | |
| | Hon. Dalila Corral Lyons | 20 | 310 | | Hon. Malcolm H. Mackey | 55 | 515 | |
| | Hon. Robert L. Hess | 24 | 314 | | Hon. Michael Johnson | 56 | 514 | |
| | Hon. Yvette M. Palazuelos | 28 | 318 | | Hon. John P. Doyle | 58 | 516 | |
| | Hon. Barbara Scheper | 30 | 400 | | Hon. Gregory Keosian | 61 | 732 | |
| | Hon. Samantha Jessner | 31 | 407 | | Hon. Michael L. Stern | 62 | 600 | |
| | Hon. Daniel S. Murphy | 32 | 406 | | Hon. Mark Mooney | 68 | 617 | |
| | Hon. Michael P. Linfield | 34 | 408 | | Hon. William F. Fahey | 69 | 621 | |
| | Hon. Gregory Alarcon | 36 | 410 | | Hon. Monica Bachner | 71 | 729 | |
| | Hon. Marc Marmaro | 37 | 413 | | Hon. Ruth Ann Kwan | 72 | 731 | |
| | Hon. Maureen Duffy-Lewis | 38 | 412 | | Hon. Rafael Ongkeko | 73 | 733 | |
| | Hon. Elizabeth Feffer | 39 | 415 | | Hon. Michelle Williams Court | 74 | 735 | |
| | Hon. David Sotelo | 40 | 414 | | Hon. Gail Ruderman Feuer | 78 | 730 | |
| | Hon. Holly E. Kendig | 42 | 416 | | | | | |
| | Hon. Mel Red Recana | 45 | 529 | | Hon. Steven J. Kleifield | 324 | CCW | |
| | Hon. Frederick C. Shaller | 46 | 500 | | *Provisionally Complex Non-class Action Cases Assignment Is Pending Complex Determination | 308 | CCW | |
| | Hon. Randolph Hammock | 47 | 507 | | | | | |

**\*Complex**

All non-class action cases designated as provisionally complex are forwarded to the Supervising Judge of the Complex Litigation Program located in the Central Civil West Courthouse (600 S. Commonwealth Ave., Los Angeles 90005), for complex/non-complex determination pursuant to Local Rule 3.3(k). This procedure is for the purpose of assessing whether or not the case is complex within the meaning of California Rules of Court, rule 3.400. Depending on the outcome of that assessment, the case may be reassigned to one of the judges of the Complex Litigation Program or reassigned randomly to a court in the Central District.

Given to the Plaintiff/Cross-Complainant/Attorney of Record on _____   SHERRI R. CARTER, Executive Officer/Clerk

By _____, Deputy Clerk

LACIV CCH 190 (Rev.12/16)
LASC Approved 05-06

**– NOTICE OF CASE ASSIGNMENT –
UNLIMITED CIVIL CASE**

Page 1 of 2

# INSTRUCTIONS FOR HANDLING UNLIMITED CIVIL CASES

The following critical provisions of the Chapter Three Rules, as applicable in the Central District, are summarized for your assistance.

## APPLICATION

The Chapter Three Rules were effective January 1, 1994. They apply to all general civil cases.

## PRIORITY OVER OTHER RULES

The Chapter Three Rules shall have priority over all other Local Rules to the extent the others are inconsistent.

## CHALLENGE TO ASSIGNED JUDGE

A challenge under Code of Civil Procedure section 170.6 must be made within 15 days after notice of assignment for all purposes to a judge, or if a party has not yet appeared, within 15 days of the first appearance.

## TIME STANDARDS

Cases assigned to the Individual Calendaring Court will be subject to processing under the following time standards:

**COMPLAINTS:** All complaints shall be served within 60 days of filing and proof of service shall be filed within 90 days of filing.

**CROSS-COMPLAINTS:** Without leave of court first being obtained, no cross-complaint may be filed by any party after their answer is filed. Cross-complaints shall be served within 30 days of the filing date and a proof of service filed within 60 days of the filing date.

A Status Conference will be scheduled by the assigned Independent Calendar Judge no later than 270 days after the filing of the complaint. Counsel must be fully prepared to discuss the following issues: alternative dispute resolution, bifurcation, settlement, trial date, and expert witnesses.

## FINAL STATUS CONFERENCE

The Court will require the parties at a status conference not more than 10 days before the trial to have timely filed and served all motions in limine, bifurcation motions, statements of major evidentiary issues, dispositive motions, requested jury instructions, and special jury instructions and special jury verdicts. These matters may be heard and resolved at this conference. At least 5 days before this conference, counsel must also have exchanged lists of exhibits and witnesses and have submitted to the court a brief statement of the case to be read to the jury panel as required by Chapter Eight of the Los Angeles Superior Court Rules.

## SANCTIONS

The court will impose appropriate sanctions for the failure or refusal to comply with Chapter Three Rules, orders made by the Court, and time standards or deadlines established by the Court or by the Chapter Three Rules. Such sanctions may be on a party or if appropriate on counsel for the party.

**This is not a complete delineation of the Chapter Three Rules, and adherence only to the above provisions is therefore not a guarantee against the imposition of sanctions under Trial Court Delay Reduction. Careful reading and compliance with the actual Chapter Rules is absolutely imperative.**

1   ALAN NESBIT, ESQ.
    Attorney-at-Law, SBN 310466
2   8383 Wilshire Boulevard Ste 800
    Beverly Hills, California 90211
3   Tel:  (323) 456-8605
    Fax:  (323) 456-8601
4   Email: anesbit@nesbitlawgroup.com

5   Attorney for Plaintiff,
6   NAMDY CONSULTING, INC.

7

CONFORMED COPY
ORIGINAL FILED
Superior Court of California
County of Los Angeles

OCT 18 2017

Sherri R. Carter, Executive Officer/Clerk
By: Glorietta Robinson, Deputy

8          SUPERIOR COURT OF THE STATE OF CALIFORNIA

9          COUNTY OF LOS ANGELES, CENTRAL DISTRICT

10

11                                      Case No.:      BC 6 8 0 0 2 1

12   NAMDY CONSULTING, INC.,            NAMDY CONSULTING, INC.'S
                                        COMPLAINT FOR:
13            Plaintiff,

14       v.                             1.  RECOVERY OF PAYMENT
                                            FOR SERVICES RENDERED;
15   ANTHEM BLUE CROSS LIFE AND         2.  RECOVERY ON OPEN BOOK
16   HEALTH INSURANCE CO. AND BLUE          ACCOUNT;
     SHIELD OF CALIFORNIA AND DOES 1 -40, 3. QUANTUM MERUIT
17                                      4.  BREACH OF IMPLIED
              Defendants.                   CONTRACT;
18                                      5.  DECLARATORY RELIEF;
19                                      6.  NEGLIGENCE PER SE; and
20                                      7.  INTERFERENCE WITH
                                            PROSPECTIVE ECONOMIC
21                                          ADVANTAGE
22
                                        JURY TRIAL REQUESTED
23
                                        Damages: UNLIMITED: Over
24                                      $25,000
25

26

27   ///                               By Fax
28   ///

                            1
                        COMPLAINT

Plaintiff NAMDY CONSULTING, INC. (hereafter referred to as "NAMDY") complains and alleges:

## GENERAL ALLEGATIONS

1. NAMDY is and at all relevant times was a corporation organized and existing under the laws of the State of California, and was and is a resident of the County of Los Angeles.

2. NAMDY is and at all relevant times was in the business of purchasing and collecting accounts receivable on behalf of various other companies, including without limitation professional business entities engaged in the business of providing patients with medical services, medications, devices, and any other services related to healthcare. As such NAMDY has been assigned these accounts receivable and related claims by certain medical groups, physicians, or health care providers (hereinafter referred to as "Physicians"), who were fully licensed, certified, and in good standing under the laws of the State of California.

3. Physicians provided medical care, services, treatment, and/or procedures and services to members, subscribers and insureds of ANTHEM BLUE CROSS LIFE AND HEALTH INSURANCE CO. ("ANTHEM") AND BLUE SHIELD OF CALIFORNIA ("BLUE SHIELD") AND DOES 1 - 40, California Corporations, (hereafter referred to as "DEFENDANT" or "DEFENDANTS").  Physicians became entitled to reimbursement, payment and/or indemnification from DEFENDANTS for those services and supplies rendered. Physicians have assigned their right to payment and to collect their fees from DEFENDANTS to NAMDY.

4. Physicians assigned these accounts receivable and related claims with the intention of terminating their ownership in these receivables and claims and transferring full ownership to NAMDY. Physicians no longer have the ability to pursue their collection of these receivables and claims against DEFENDANTS.

5. DEFENDANT is a California corporation licensed to do business in and was doing business in the State of California, as an insurer. NAMDY is informed and believes that DEFENDANT is licensed by the Department of Insurance to transact the business of

1    insurance in the State of California. DEFENDANT is, in fact, transacting the business of

2    insurance in the State of California and is thereby subject to the laws and regulations of

3    the State of California.

4    6. The true names and capacities, whether individual, corporate, associate, or otherwise, of

5    DEFENDANTS are unknown to NAMDY, who therefore sues said DEFENDANTS by

6    such fictitious names. NAMDY is informed and believes and thereon alleges that each of

7    the DEFENDANTS designated herein as a DOE is legally responsible in some manner or

8    to some extent for the events and happenings referred to herein and legally caused injury

9    and damages proximately thereby to NAMDY. NAMDY will seek leave of this Court to

10    amend this Complaint to insert their true names and capacities in place and instead of the

11    fictitious names when they become known to it.

12    7. At all times herein mentioned, unless otherwise indicated, DEFENDANTS were the

13    agents and/or employees of each of the remaining DEFENDANTS, and were at all times

14    acting within the purpose and scope of said agency and employment, and each

15    DEFENDANT has ratified and approved the acts of his agent. At all times herein

16    mentioned, DEFENDANTS had actual or ostensible authority to act on each other's

17    behalf in certifying or authorizing the provision of medical services; processing and

18    administering the claims and appeals; pricing the claims; approving or denying the

19    claims; directing each other as to whether to pay and/or how to pay claims; issuing

20    remittance advices and explanations of benefits statements; and, making payments to

21    NAMDY and its patients.

## FACTS

22

23    8. This complaint arises out of the failure of DEFENDANTS to make payments due and

24    owing to Physicians for surgical care, treatment, and procedures provided to numerous

25    patients[1] (hereafter referred to as "Patients"), all of whom were insureds, members,

26

27    _____

     [1] For privacy reasons and to comply with the Health Insurance Portability and Accountability Act of 1996 ("HIPPA"), the

28    full names and identifying information pertaining to the patients has been withheld. This information will be disclosed to
     DEFENDANTS upon request.

1    policyholders, certificate-holders, or were otherwise covered for health, hospitalization,

2    pharmaceutical expenses, and major medical insurance through policies or certificates of

3    insurance issued and underwritten by DEFENDANTS.

4  9. None of the claims and/or causes of action in this Complaint are derivative of the

5    contractual rights of the patients. In no way does NAMDY seek to enforce the contractual

6    rights of the patients through the patients' insurance contracts, policies, certificates of

7    coverage, and/or any other written insurance agreements between DEFENDANTS and

8    any patients. The claims and causes of action are based upon the relationship and

9    interactions between the Physicians and DEFENDANTS and upon the fact that the

10   Patients were covered by DEFENDANTS.

11 10. NAMDY is informed and believes that each of the Patients were insured by

12   DEFENDANT either as a subscriber to coverage or a dependent of a subscriber to

13   coverage under a policy or certificate of insurance issued and underwritten by

14   DEFENDANT. NAMDY is informed and believes that each of the Patients entered into a

15   valid insurance agreement with DEFENDANT for the specific purpose of ensuring that

16   the Patients would have access to medically necessary treatments, care, procedures and

17   surgeries by medical practitioners like the Physicians and ensuring that DEFENDANT

18   would pay for the health care expenses incurred by the Patient.

19 11. NAMDY is informed and believes, and on such information and belief alleges, that

20   DEFENDANT received, and continues to receive, valuable premium payments from the

21   Patients and/or other consideration from the Patients under the subject policies applicable

22   to the Patients.

23 12. At all relevant times, the Physicians provided medically necessary and appropriate

24   services, care, treatment, and/or procedures to Patients holding valid insurance policies or

25   certificates issued by DEFENDANT.

26 13. The Physicians have a reputation for providing high quality care, treatment, and

27   procedures. Their charges for services are on par with the charges of other physicians in

28

4

COMPLAINT

1  the same general area for the same procedures and/or services. The Physicians' billed
2  charges are reasonable, usual, and customary.

3  14. The Physicians who provided medical services to Patients were "out-of-network
4  providers" who had no preferred provider contracts or other contracts with
5  DEFENDANT at the time that the surgeries or procedures were performed.

6  15. It is standard practice in the healthcare industry that when a medical provider enters into
7  a written preferred provider contract with a health plan such as DEFENDANT, that
8  medical provider agrees to accept reimbursement that is discounted from the medical
9  provider's total billed charges in exchange for the benefits of being a preferred or
10  contracted provider. Those benefits include an increased volume of business, because the
11  health plan provides financial and other incentives to its members to receive their medical
12  care and treatments from the contracted provider, such as advertising that the provider is
13  "in network," and allowing the members to pay lower co-payments and deductibles to
14  obtain care and treatment from a contracted provider. When health plans such as
15  DEFENDANT receive claims from in-network providers, they adjusts the total charges
16  submitted by the in-network provider and pays an agreed upon contract rate to the in-
17  network provider.

18  16. Conversely, when a medical provider, such as Physicians, does not have a written
19  contract with a health plan such that it is an out-of-network provider, the medical
20  provider receives no referrals from the health plan, as the health plan discourages its
21  members and subscribers from obtaining their care from the non-contracted providers.
22  The non-contracted provider has no obligation to reduce its charges, and is entitled to
23  receive payment based on its billed or total charges for the services rendered (less any
24  copayments, coinsurance amounts, or deductibles owed by the Patients). The health plan
25  is not entitled to a discount from the medical provider's total billed charges for the
26  services rendered, because it is not providing the medical provider with the benefits of
27  increased patient volume that results from being an in-plan or in-network provider. In
28  such cases, when a health plan such as DEFENDANT receives claims from the out-of-

5

COMPLAINT

network provider for the total charges billed by the out-of-network provider and then adjusts those claims, paying only those billed charges which are in an amount equivalent to the usual and customary amount charged by similar providers rendering similar treatment in the same or similar geographical location (less copayments, coinsurance, and deductible amounts).

17. The Physicians were legally required to offer and render medical services, care, treatment, and/or procedures to the Patients, who were members, insureds, or subscribers of DEFENDANT, because the services were emergent. For each of the Patient claims at issue here, the Physician did in fact provide such emergency medical services, care, treatment, and/or procedures to the Patients, as required by law.

18. Because the medical services, care, treatment, and/or procedures rendered by the Physicians to the Patients were emergent in nature, DEFENDANT was required by law to compensate the Physicians at usual, customary, and reasonable rates.

19. The claims at issue in this case are comprised of claims for medical services, care, treatment, and/or procedures provided to members, insureds or subscribers of DEFENDANT by the Physicians, for which payments were made to the Physicians based upon a sum unilaterally determined by DEFENDANT to be usual, customary, and reasonable, which sums were not usual, reasonable, or customary and were far less than the Physicians' billed charges.

20. Following performance of medical services, care, treatment, and/or procedures by the Physicians upon the Patients, invoices, bills and claims were submitted to DEFENDANT for adjustment and payment.

21. Medical records pertaining to the Patients medical services, care, treatment, and/or procedures were provided to DEFENDANT by the Physicians. All information requested by DEFENDANT relating to the medical services, care, treatment, and/or procedure provided by the Physicians to the Patients was supplied to DEFENDANT by the Physicians.

22. At all relevant times, the Physicians submitted their claims to DEFENDANT accompanied with lengthy operative reports, chart notes, and other medical records. No matter whether large or small, all of the Physicians' claims are submitted using CPT codes, Healthcare Common Procedure Coding System ("HCPCS"), and modifiers, as necessary.

23. At all relevant times, the Physicians expected to be reimbursed by DEFENDANT at the lesser of its billed charges or the then-current usual, customary, and reasonable rate, which is defined by California law as follows:

> A "usual" charge is the amount that is most consistently charged by an individual physician for a given service. A "customary" charge is the amount that falls within a specified range of usual charges for a given service billed by most physicians with similar training and experience within a given geographical area. A "reasonable" charge is a charge that meets the Usual and Customary criteria, or is otherwise reasonable in light of the complexity of treatment of the particular case. Under a UCR Program, the payment is the lowest of the actual billed charge, the physician's usual charge or the area customary charges for any given covered service.

24. Rather than simply pay the Physicians the lesser of their billed charges or usual, customary, and reasonable rates, DEFENDANTS instead routinely and deliberately reimbursed the Physicians' claims at below usual, customary, and reasonable levels, forcing Physicians to exhaust time and energy first identifying and then appealing improperly reimbursed claims.

25. DEFENDANTS have failed and refused to pay any monies, benefits, insurance proceeds, or make any payment to the Physicians in connection with the medically necessary services, care, treatment, and/or procedures rendered to the Patients by the Physicians, or have substantially underpaid benefits for such services at inappropriately low rates, using illegal and/or flawed databases and systems to calculate reimbursement for non-contracted providers and have failed and refused to pay the claims at usual, customary, and reasonable rates.

7

26. At all relevant times, DEFENDANT has improperly paid the Physicians for medically necessary and appropriate services rendered to DEFENDANT's insured at rates far below the billed rates, even though there was no contractual relationship or preferred provider relationship between the Physicians and DEFENDANTS. For each of the Patient claims at issue in this action, the Physicians provided medical services to members and insureds of DEFENDANT.

27. The rates paid by DEFENDANT were not reasonable, customary or usual, and were arbitrary, capricious and inexplicable. Further, DEFENDANT has never explained how they calculated, justified, rationalized or comprised their pricing and rate schedule for non-contracted, out-of-network providers, such as the Physicians.

28. Often, the rates paid to the Physicians by DEFENDANTS for the exact same procedure, treatment, surgery, or services were paid at different rates during the same year. At other times, the Physicians were paid rates which were below what they would have received had they been a preferred or in-network provider, even though such volume-discounted rates would have been significantly lower than usual, reasonable, and customary rates as defined by California law.

29. The California Department of Managed Health Care has adopted regulations that define the amount that health care service plans such as DEFENDANTS are obligated to pay non-contracted providers such as the Physicians. These regulations provide a methodology for determining the rate to be paid to out-of-network emergency room providers:

> For contracted providers without a written contract and non-contracted providers . . . the payment of the **reasonable and customary value** for the health care services rendered based upon statistically credible information that is updated at least annually and takes into consideration: (i) the provider's training, qualifications and length of time in practice; (ii) the nature of the services provided; (iii) **the fees usually charged by the provider; (iv) prevailing provider rates charged in the general geographic area in which the services were rendered;** (v) other aspects of the economics of the medical provider's practice that are relevant; and (vi) and unusual circumstances in the case.

28 Cal. Code Regs. Section 1300.71(a)(3)(B) (Emphasis added). These definitions are the same criteria used by California Courts to determine the *quantum meruit* amounts that should be paid for services rendered by non-contracted providers by insurers in California.

30. Based upon these criteria, the Physicians' charges are reasonable and customary. The Physicians charged DEFENDANT the same fees that they charges all other payers.

31. NAMDY is informed and believes that DEFENDANT relied upon and utilized a flawed database to make pricing determinations for the claims submitted by the Physicians on behalf of the Patient. DEFENDANT utilized that flawed database as a primary source of data upon which it based its pricing determinations, even though DEFENDANT knew that the data cannot and should not be used for that purpose. DEFENDANT was fully aware that its database was not properly designed to determine usual, customary and reasonable reimbursement amounts.

32. NAMDY is informed and believes and thereon alleges that DEFENDANT's system for paying out-of-network claims is flawed, that DEFENDANT improperly manipulates the data in its systems to underpay out-of-network medical provider claims, and that DEFENDANT'S systems and methods for calculating such rates violate California law. DEFENDANT has used flawed databases and systems to unilaterally determine what amounts it pays to medical providers and has colluded with other insurers to artificially underpay, decrease, limit, and minimize the reimbursement rates paid for services rendered by non-contracted providers. The issue of flawed database has been investigated by the U.S. Congress and New York Attorney General and has been the source of numerous lawsuits and class action suits filed in connection with the databases utilized (known as Ingenix).

33. NAMDY is informed and believes that there are a number of inherent flaws in DEFENDANT's database, which make that database invalid and inappropriate for setting usual, customary and reasonable rates. Among other flaws, DEFENDANT's database:

    a. Does not determine the numbers or types of providers in any geographic area;

9

COMPLAINT

b. Does not determine the actual types of procedures performed within a geographic area;

c. Collects charge data which is not representative of the actual number of procedures performed within a geographic area;

d. Does not collect sufficient data to enable its users to determine whether the data reflects the charges of providers with any particular degree of expertise or specialization;

e. Does not collect sufficient provider-specific data to enable its users to determine whether the charges are from one provider, from several providers, or from only a minority subset of the providers in a geographic area;

f. Fails to compare providers of the same or similar training and experience level and, instead, combines and averages all provider charges by procedure code without separating the charges of physicians and non-physicians;

g. Does not collect patient specific information such as age or medical history or condition;

h. Does not ascertain the most common charge for the same service or comparable service or supply;

i. Does not determine the place of service or type of facility;

j. Does not collect sufficient data to enable it or its users to determine an appropriate medical market for comparing like charges;

k. Combines zip codes inappropriately, and uses zip codes instead of appropriate medical markets;

l. Fails to compare procedures that use the same or similar resources (and other costs) to the provider but, rather, indiscriminately combines all provider charges by procedure code without regard to such factors;

m. Fails to compare procedures of the same or similar complexity by, among other things, failing to record or account for CPT code modifiers;

n. Does not use appropriate statistical methodology;

10

o.  Does not properly consider charging protocols and billing practices generally accepted by the medical community or specialty groups;

p.  Does not properly consider medical costs in setting geographic areas;

q.  Lacks quality control, such as basic auditing, to ensure the validity, completeness, representativeness, and authenticity of the data submitted;

r.  Is subject to pre-editing by data contributors;

s.  Reports charges that are systematically skewed downward;

t.  Uses relative values and conversion factors to derive inappropriate usual, customary and reasonable amounts;

u.  Uses a methodology that does not comply with DEFENDANT'S contractual definition of usual, customary and reasonable; and

v.  Purports to be confidential and/or proprietary, which prevents access to, and scrutiny of, the data by members of their employers.

34. These and other flaws render DEFENDANT'S use of its data system invalid and unlawful for determining usual, customary and reasonable rates. By systematically and typically making usual, customary, and reasonable rate determinations without compliant and valid data to substantiate its determinations, DEFENDANTS have breached their obligations to reimburse Physicians for out-of-network services. Accordingly, all past usual, customary, and reasonable rate determinations based on DEFENDANT'S data system should be overturned and disregarded.

35. DEFENDANT used other improper pricing methods to reduce reimbursement to out-of-network providers. Accordingly, DEFENDANT violated, and continues to violate, its legal obligations to Physicians to pay usual, customary and reasonable rates of reimbursement for services rendered to the Patients, insureds, subscribers, and members.

36. DEFENDANT has received claims from the Physicians for a number of years. As such, DEFENDANT knew the rates that the Physicians charged for various services. Moreover, DEFENDANT knew or should have known the amounts charged by other medical providers for medical services, care, and treatment, since it had received, reviewed and

11

1   processed, numerous claims prior to processing the claims at issue in this litigation. It is
2   standard practice in the healthcare industry for medical providers (whether in-network or
3   not) to submit claims and bills showing the total charges to health plans such as
4   DEFENDANT and for DEFENDANT to price those claims, based either upon the total
5   charges or the contractual rates offered to network providers.

6   37. The Physicians have also been disparaged by the pervasive under-reimbursement scheme.
7   When a patient refers to his/her evidence of coverage documents promulgated by
8   DEFENDANTS, he/she is led to believe that when he/she seeks out-of-network care their
9   charges will be paid by DEFENDANTS at the "usual and customary rate" of similar
10   physicians for a similar service in a similar area. When a patient obtains out-of-network
11   treatment from providers such as the Physicians and the provider submits the bill to the
12   insurer, a patient learns for the first time that he/she will not be fully reimbursed because
13   the doctor's charges are alleged by DEFENDANT to exceed the usual and customary
14   rate. The physician-patient relationship is undermined, as the physicians have been
15   branded as charlatans whose bills are inflated and unreasonable.

16   38. At all relevant times, DEFENDANT harmed the physicians by making improper usual,
17   customary, and reasonable rate and pricing determinations that reduced the lawful
18   reimbursement amounts for out-of-network providers without valid or compliant data to
19   support such determinations. DEFENDANT further harmed the Physicians by
20   misapplying in-network policies to out-of-network provider claims, and by delaying
21   payments to out-of-network providers under the pretext of negotiation. As a result of
22   these actions, the Physicians were financially harmed and forced to exhaust significant
23   time and resources appealing DEFENDANT's unlawful determination through a process
24   deliberately designed to deny, delay, and impede out-of-network physician providers
25   from obtaining their rightful reimbursement.

26   39. Upon information and belief, DEFENDANT used and continues to use flawed database
27   data, among other sources, to understate the true market rates of medical care performed
28   by out-of-network providers. The improper use of this data has caused both patients and

12

COMPLAINT

out-of-network providers to experience significant losses. Patients are harmed because payers like DEFENDANT are not reimbursing out-of-network services at appropriate levels, which results in out-of-network providers increasingly billing their patients for amounts charged, which exceed the amounts DEFENDANT covers. Out-of-network providers like Physicians are harmed because they are not always able to collect these balances from patients and are forced to take a loss for their services. Moreover, because out-of-network providers are often unaware of the scheme that results in payers like DEFENDANT failing to pay appropriate usual, customary and reasonable rates, they are either powerless to appeal any such improper determinations or their efforts to appeal these determinations are futile. DEFENDANT, by contrast, benefits from paying out-of-network providers at below market rates. If, for example, out-of-network providers fail to realize that the scheme is the cause of their underpayment, DEFENDANT has unlawfully retained money which otherwise belongs to the Physicians for the services provided. DEFENDANT's ambiguity regarding its method for calculating usual, customary and reasonable rates reflects its participation in this deceptive practice.

40. DEFENDANT's explanation of benefit statements are initially uninformative, false, and misleading regarding the use of usual, customary, and reasonable rates. This ambiguity has resulted in the inconsistent application of usual, customary and reasonable rates to deny Physicians their lawful reimbursement. Usual, customary, and reasonable rates should be applied consistently by DEFENDANTS, but instead are selectively used to deny or diminish lawful reimbursement to Physicians and other out-of-network providers.

41. The Physicians' explanation of benefits and remittance advices received from DEFENDANTS often state that their billed charges purportedly exceed the usual, customary, and reasonable rate for the geographic area where the services were performed. However, nowhere on the explanation of benefit statements, remittance advices, or elsewhere in any other correspondence sent to the Physicians do DEFENDANTS discuss or identify how they actually calculate usual, customary, and reasonable rates. The Explanation of Benefit statements do not even specify whether

13

COMPLAINT

1  database data or some other methodology was used in these calculations. Instead, the
2  explanation of benefit statements plainly state that the rates have been determine by
3  DEFENDANTS. With its methods for calculating usual, customary, and reasonable rates
4  shrouded in a veil of secrecy, DEFENDANTS have been able to derive improper rates
5  using faulty data, and apply them to out-of-network providers such as the Physicians.

6  **FIRST CAUSE OF ACTION:**
7  **FOR RECOVERY OF PAYMENT FOR SERVICES RENDERED**
8  **(AS AGAINST ALL DEFENDANTS)**

9  42. Plaintiff incorporates all allegations set forth in the above paragraphs as though fully set
10     forth herein.

11  43. At all times herein mentioned, Physicians provided medical services, care, treatment,
12     and/or procedures to Patients as required by law (because the medical services provided
13     were emergency services), thereby benefiting DEFENDANTS and the Patients.

14  44. At all times herein mentioned, DEFENDANTS were required by law to pay usual,
15     reasonable, and customary rates for the emergency care provided by the Physicians to the
16     Patients, who were members or subscribers of DEFENDANT. California Health and
17     Safety Code § 1371.4; *Bell v. Blue Cross*, 131 Cal.App.4th 211.

18  45. At all relevant times, the Physicians rendered care, treatment, and services to the Patients
19     in good faith and in reliance upon the legal requirement that insurers pay for the
20     emergency medical care of those they insure. DEFENDANTS had a duty to pay,
21     reimburse, indemnify, and cover the Physicians for the care, treatment and services
22     rendered by the Physicians to the Patients pursuant to California Health & Safety Code
23     §§ 1371, 1371.35, and 1371.4 following the rendition of services and treatment by the
24     Physicians to the Patients. Further, DEFENDANTS had a duty to pay usual, customary,
25     and reasonable rates for the services rendered by the Physicians in compliance with 28
26     California Code of Regulations § 1300.71 et seq. For the Patients, DEFENDANTS have
27     failed and refused to comply with 28 California Code of Regulations § 1300.71 et seq.

28

46. At all relevant times, the Physicians rendered care and treatment to the Patient. DEFENDANT had a duty to pay, reimburse and cover the cost of such treatment and services by payment to the Physicians for the medical services, care, treatment, and/or procedures rendered by the Physicians to the Patients, pursuant to California Health & Safety Code §§ 1371, 1371.35, and 1371.4, and was prohibited from denying or refusing coverage, payment, indemnity, or reimbursement for the cost for treatment and services rendered by the Physicians to the Patients. Further, DEFENDANTS had a duty to pay usual, customary, and reasonable rates for the services rendered by NAMDY's assignor in compliance with 28 California Code of Regulations § 1300.71 et seq. and have failed and refused to pay usual, customary, and reasonable amounts.

47. At all relevant times, 28 California Administrative Code § 1300.71 et seq. required that DEFENDANTS reimburse the Physicians for the claims submitted on behalf of the Patient within 45 days after DEFENDANTS received the Patient's claims from the Physicians. 28 Cal. Admin. Code Tit. 28 Section 1300.71(a)(3) defines the manner and method by which reasonable and customary rates are to be defined by DEFENDANTS, providing:

> (B) For contracted providers without a written contract and non-contracted providers, except those providing services described in paragraph (C) below: the payment of the reasonable and customary value for the health care services rendered based upon statistically credible information that is updated at least annually and takes into consideration: (i) the provider's training, qualifications, and length of time in practice; (ii) the nature of the services provided; (iii) the fees usually charged by the provider; (iv) prevailing provider rates charged in the general geographic area in which the services were rendered; (v) any unusual circumstances in the case; and
> (C) For non-emergency services provided by non-contracted providers to PPO and POS enrollees: the amount set forth in the enrollee's Evidence of Coverage.

48. As a proximate result of the violation of California Health & Safety Code §§ 1371.8 and 1371, California Insurance Code § 796.04, California Insurance Code § 796.04 and/or 28 C.C.R. § 13700.1 by DEFENDANT, which acts were intentional, willful and knowing, the Physicians have never been paid for any of the medical services, care, treatment, and/or procedures provided to the Patient or have been underpaid for such medical

15

COMPLAINT

services, care, treatment, and/or procedures. By their acts and omissions, DEFENDANTS have failed and refused to pay the usual, customary, and reasonable value for the services rendered by the Physicians to the Patients.

49. The Physicians are owed reimbursement, compensation, and payment of the cost of the medical services, care, treatment, and/or procedures which they rendered and provided to the Patient at the Physicians' billed rates or at rates equivalent to the usual, customary, and reasonable value for their services, in conformance with the legal requirements that they provide emergency care to any patient and that the insurance of any patient who received emergency care pay the provider of the care at usual, customary, and reasonable rates.

50. The Physicians have demanded that DEFENDANT pay for the medical treatment provided to the Patient, and has submitted statements to DEFENDANT for the medical services rendered to the Patient.

51. DEFENDANTS have failed and refused to pay, and continue to refuse to pay the Physicians for such services rendered at appropriate rates and have underpaid the Physicians by failing and refusing to pay usual, customary and reasonable rates. Accordingly, there is now due and owing an unpaid sum, plus statutory interest thereon.

## SECOND CAUSE OF ACTION:
## FOR RECOVERY OF PAYMENT ON OPEN BOOK ACCOUNT
## (AS AGAINST ALL DEFENDANTS)

52. Plaintiff incorporates all allegations set forth in the above paragraphs as though fully set forth herein.

53. DEFENDANT has become indebted to the Physicians on open book accounts for the Patients, for money due in the sum to be determined at the time of trial for medical services rendered by the Physicians to the Patients.

54. The Physicians have provided medical treatment to the Patient, and have maintained contemporaneous, itemized and detailed records and statements of each medical service provided to the Patients. The Physicians have provided DEFENDANT with statements

16

COMPLAINT

1   itemizing the medical treatment provided to the Patients, along with an accounting of the

2   amounts owed by DEFENDANT.

3   55. DEFENDANT has refused to pay, and continue to refuse to pay, the Physicians the billed

4   charges submitted by the Physicians and/or the usual and customary charges owed to the

5   Physicians for the treatment, surgeries, procedures and medical services provided to the

6   Patients. Accordingly, there is now due and owing an unpaid sum in an amount to be

7   determined at the time of trial, plus statutory interest.

8   **THIRD CAUSE OF ACTION:**

9   **FOR QUANTUM MERUIT**

10  **(AGAINST ALL DEFENDANTS)**

11  56. Plaintiff incorporates all allegations set forth in the above paragraphs as though fully set

12  forth herein.

13  57. As required by law (because the medical services provided were emergency services), the

14  Physicians provided surgeries, procedures, medical treatments, and other medical

15  services to the Patients, thereby benefitting DEFENDANT and the Patients.

16  58. DEFENDANTS have failed and refused to pay the Physicians the appropriate amounts

17  incurred by the Physicians in rendering medical services, care, treatment, and/or

18  procedures to the Patients, have underpaid those costs and have failed and refused to pay

19  the usual, reasonable, and customary costs of those services.

20  59. At all times herein mentioned, DEFENDANTS were required by law to pay usual,

21  reasonable, and customary rates for the emergency care provided by the Physicians to the

22  Patients, who were members or subscribers of DEFENDANT. California Health and

23  Safety Code § 1371.4; *Bell v. Blue Cross*, 131 Cal.App.4th 211.

24  60. DEFENDANT is required to reimburse the Physicians at a *quantum meruit* rate for all

25  services rendered to the enrollees, the Patients. The *quantum meruit* amount owed by

26  DEFENDANT to the Physicians is determined according to the customary charges that

27  would be billed by the Physicians and/or other physicians in the absence of preferred

28  provider or participating provider contractual rates. Based upon DEFENDANTs request

17
COMPLAINT

that the Physicians render treatment, surgeries, procedures and medical services to the Patient, and the fact that DEFENDANT was benefitted by the provision of such services by the Physicians, an obligation on the part of DEFENDANT to make restitution to the Physicians arose.

61. The *quantum meruit* rate for the medical treatment the Physicians provided to the Patients is an amount to be determined at trial. This amount represents the usual, customary and reasonable cost or charge for the services rendered by the Physicians. The Physicians have submitted statements to DEFENDANT for these amounts, and have made repeated demands that they be paid for the medical treatment provided to the Patient at usual, customary, and reasonable rates.

62. DEFENDANT has refused to pay, and continues to refuse to pay, the Physicians for the whole or any part of the sums owed to the Physicians for the treatment, surgeries, procedures and medical services provided to the Patient, at usual, customary and reasonable rates. Accordingly, there is now due and owing an unpaid sum, plus statutory interest.

## FOURTH CAUSE OF ACTION:
## FOR BREACH OF IMPLIED CONTRACT
## (AS AGAINST ALL DEFENDANTS)

63. Plaintiff incorporates all allegations set forth in the above paragraphs as though fully set forth herein.

64. NAMDY is informed and believes and thereon alleges that, at all relevant times herein, the Patients had valid policies with DEFENDANT or were members, subscribers, insureds, or were otherwise entitled to coverage, indemnification and payment as policyholders or certificate-holders of insurance policies and certificates issued and underwritten by DEFENDANT.

65. NAMDY is informed and believes that the Patients obtained such policies from DEFENDANT for the specific purposes of (1) ensuring that the patients would have

18

access to medically necessary treatments at healthcare facilities, and (2) ensuring that DEFENDANT would pay for the healthcare expenses incurred by the patients.

66. DEFENDANTS knew or reasonably should have known that its insureds would seek medical treatment from the Physicians.

67. NAMDY is informed and believes that DEFENDANT received and continues to receive valuable premium payments from the Patients under the relevant insurance policies.

68. Since Physicians were required by law to treat the Patients in emergency situations, they agreed by implication to treat the Patients. DEFENDANTS, by law, were required to pay Physicians at the usual, customary, and reasonable rate for emergency services and therefore agreed by implication to pay usual, customary, and reasonable rates to Physicians. California Health and Safety Code § 1371.4; *Bell v. Blue Cross*, 131 Cal.App.4th 211.

69. In consideration for the Physicians' implied agreement to treat the Patients, DEFENDANT implicitly agreed to reimburse the Physicians for the expenses incurred by the Patients in the course of being treated and undergoing surgeries or procedures rendered by the Physicians and agreed to pay the Physicians a usual and customary rate for those services.

70. The Physicians provided medical treatment to the Patient. DEFENDANT has refused to pay, and continues to refuse to pay, the Physicians for the whole or a part of the sums owed to the Physicians at appropriate rates for the treatment services provided to the Patients.

71. As a result of the foregoing breach, the Physicians have been damaged by DEFENDANT in an amount to be determined at trial. Accordingly, there is now due and owing an unpaid sum, plus statutory interest thereon.

## FIFTH CAUSE OF ACTION:
## FOR DECLARATORY RELIEF
## (AS AGAINST ALL DEFENDANTS)

19

72. Plaintiffs incorporate all allegations set forth in the above paragraphs as though fully set forth herein.

73. A dispute has arisen between the Physicians and DEFENDANT as to the amount that DEFENDANT is required to pay the Physicians for the medically necessary services provided by the Physicians to the Patients. DEFENDANT contends that it owes the Physicians nothing in connection with the services, surgeries, and procedures provided to the Patients. The Physicians contend that they are entitled to receive payment in an amount to be determined at trial, plus statutory interest, for the medical services provided to the Patients during the course of their treatment.

74. NAMDY seeks and desires a judicial determination by the Court that DEFENDANT is required to pay the Physicians for the services, surgeries, procedures, and other medical treatments provided to the Patients during the course of their treatment by the Physicians at the billed or total rates charged by the Physicians.

75. Such a declaration is necessary and appropriate at this time so that the Physicians and DEFENDANT may ascertain their rights, duties, and obligations concerning the medical services the Physicians provided to the Patients.

<u>**SIXTH CAUSE OF ACTION:**</u>

<u>**FOR NEGLIGENCE PER SE**</u>

<u>**(AS AGAINST ALL DEFENDANTS)**</u>

74. Plaintiffs incorporate by reference all previous paragraphs as though fully set forth herein.

75. At all times herein mentioned, DEFENDANTS were required by law to pay usual, reasonable, and customary rates for the emergency care provided by the Physicians to the Patients, who were members or subscribers of DEFENDANT. California Health and Safety Code § 1371.4; *Bell v. Blue Cross*, 131 Cal.App.4th 211.

76. DEFENDANTS have a duty to pay, reimburse, indemnify, and cover the Physicians for the medical services, care, treatment, and/or procedures rendered by the Physicians to the Patients pursuant to California Health & Safety Code §§ 1371.1, 1371.8, and/or

20

California Insurance Code § 796.04 following the rendition of services and treatment by the Physicians to the Patients. Further, DEFENDANTS had a duty to pay usual, customary, and reasonable rates for the services rendered by the Physicians in compliance with 28 California Code of Regulations § 1300.71 et seq. For the Patients, DEFENDANTS have failed and refused to comply with 28 California Code of Regulations § 1300.71 et seq.

77. DEFENDANTS have a duty to pay, reimburse, compensate, cover and indemnify the Physicians at their billed rates or at usual, customary, and reasonable rates for the services, treatment, care and pharmaceuticals rendered by the Physicians to the Patients in compliance with the legal requirement that insurers cover emergency medical care provided to those they insure. Such duties arose by virtue of California Health & Safety Code §§ 1371.8, 1371.1, and 1371.4, by virtue of California Insurance Code § 796.04 and by virtue of 28 California Code of Regulations § 1300.71 et seq.

78. Each of the statutes herein mentioned was intended to prevent, prohibit, and preclude the type of damage suffered and sustained by the Physicians. Each of the statutes herein mentioned was intended to prevent, prohibit, and preclude DEFENDANTS from failing and refusing to pay, compensate, reimburse, cover, and indemnify the Physicians for the medical services, care, treatment, and/or procedures they provided to the Patients and from being underpaid by DEFENDANT for such medical services, care, treatment, and/or procedures.

79. The Physicians are members of the class of persons and/or entities to be protected by these statutes, since they were "providers" of medical care, which rendered health care services in good faith to DEFENDANTS' members, subscribers, and insured the Patients. DEFENDANTS were regulated by California law and are subject to California Health & Safety Code §§ 1371.1, 1371.4 and 1371.8, California Insurance Code § 796.04 and 28 California Code of Regulations § 1300.71 et seq.

80. As a proximate result of the violation of California Health & Safety Code §§ 1371.1, 1371.4, and 1371.8, California Insurance Code § 796.04 and 28 California Code of

21

COMPLAINT

Regulations § 1300.71, et seq., by DEFENDANT and of the breaches of DEFENDANT's duties to the Physicians, which acts were intentional, willful, and knowing, the Physicians have never been paid, compensated, reimbursed, indemnified, or covered for the costs of the treatment, care and services it rendered to the Patient and/or have been underpaid for such services. The refusal of DEFENDANT to reimburse the Physicians for the services provided to Patients insured by DEFENDANT is negligence *per se.*

81. The Physicians are owed reimbursement, compensation, and payment of the cost of the medical services, care, treatment, and/or procedures which they rendered and provided to the Patients at the Physicians' billed rates, in conformance with the legal requirements that they provide emergency care to any patient and that the insurance of any patient who receives emergency care pay the provider of the care at usual, customary, and reasonable rates.

**SEVENTH CAUSE OF ACTION:**

**FOR INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE**

**(AS AGAINST ALL DEFENDANTS)**

82. Plaintiff incorporates by reference all previous paragraphs as though fully set forth herein.

83. For each service provided by the Physicians to each Patient, the Patient was required to pay some portion of that bill as part of their deductible, as their coinsurance amount, and/or as their co-pay.

84. The explanation of benefit forms provided by DEFENDANT to both the Patients and the Physicians lists an "allowed amount" for each medical service to each Patient. It is the monetary amount that DEFENDANT unilaterally determined the services would be reimbursed at.

85. The allowed amount was significantly lower than the billed amount for each service for each Patient.

86. The Patients, rather than paying their portions (deductible, coinsurance, and/or co-pay) of the billed amounts, only paid their portions of the allowable amount.

22

87. As a result, the Physicians received less money from the Patients than they would have if the patients had not been, in effect, told by DEFENDANT to pay at amounts lower than the billed amount.

88. DEFENDANT acted wrongfully by unilaterally determining the rates to be paid for each service, by determining rates that were below usual, customary, and reasonable rates, and by convincing the Patients to pay at the lower "allowed" amounts via their explanation of benefits forms.

89. DEFENDANT was aware of the economic relationship between the Physicians and the Patients because DEFENDANT knew that the Physicians treated the patients and knew that the Patients would have to pay some portion of the bills for the medical services provided by the Physicians.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff NAMDY CONSULTING, INC. prays for judgment against DEFENDANT as follows:

1. For compensatory damages in an amount to be determined, plus statutory interest;

2. For restitution in an amount to be determined, plus statutory interest;

3. For a declaration that ANTHEM and BLUE SHIELD are obligated to pay plaintiff all monies owed for medical services rendered to the Patient; and

4. For such other further relief the Court deems just and appropriate.

DATED:  October  17, 2017                           Respectfully submitted,

By:  A. Nabit

ALAN NESBIT, Esq.
Attorney for Plaintiff
NAMDY CONSULTING, INC.

23

COMPLAINT

## **DEMAND FOR JURY TRIAL**

Plaintiff, NAMDY CONSULTNG, INC. hereby demands a jury trial as provided by law.

DATED: October 17, 2017                    Respectfully submitted,


By:  _A. Nesbit_

ALAN NESBIT, Esq.
Attorney for Plaintiff
NAMDY CONSULTING, INC.

24

COMPLAINT

CM-015

| | |
|---|---|
| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):*<br>William E. von Behren (SBN106642)<br>Carol B. Lewis (SBN 130188)<br>VON BEHREN & HUNTER LLP<br>2041 Rosecrans Avenue, Suite 367<br>El Segundo, CA 90245<br>TELEPHONE NO.: 310.607.9111   FAX NO. *(Optional):*<br>E-MAIL ADDRESS *(Optional):* clewis@vbhlaw.com<br>ATTORNEY FOR *(Name):* Anthem Blue Cross Life and Health Insurance Co. | FOR COURT USE ONLY<br><br>CONFORMED COPY<br>ORIGINAL FILED<br>Superior Court of California<br>County of Los Angeles<br><br>NOV 21 2017<br><br>Sherri R. Carter, Executive Officer/Clerk<br>By Nancy Alvarez, Deputy |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
STREET ADDRESS: 111 North Hill Street
MAILING ADDRESS:
CITY AND ZIP CODE: Los Angeles, CA 90012
BRANCH NAME: Central District

| | |
|---|---|
| PLAINTIFF/PETITIONER: NAMDY CONSULTING, INC. | CASE NUMBER:<br>BC 680021 |
| DEFENDANT/RESPONDENT: ANTHEM BLUE CROSS LIFE AND HEALTH<br>INSURANCE COMPANY, et al. | JUDICIAL OFFICER:<br>Hon. Terry A. Green |
| NOTICE OF RELATED CASE | DEPT.:<br>14 |

*Identify, in chronological order according to date of filing, all cases related to the case referenced above.*

1. a. Title: Namdy Consulting, Inc. v. Anthem Blue Cross Life and Health Insurance Company

   b. Case number: BC 646326

   c. Court: [X] same as above
      [ ] other state or federal court *(name and address):*

   d. Department: 68

   e. Case type: [ ] limited civil   [X] unlimited civil   [ ] probate   [ ] family law   [ ] other *(specify):*

   f. Filing date: April 5, 2016

   g. Has this case been designated or determined as "complex?"   [ ] Yes   [X] No

   h. Relationship of this case to the case referenced above *(check all that apply):*
      [X] involves the same parties and is based on the same or similar claims.
      [ ] arises from the same or substantially identical transactions, incidents, or events requiring the determination of the same or substantially identical questions of law or fact.
      [ ] involves claims against, title to, possession of, or damages to the same property.
      [X] is likely for other reasons to require substantial duplication of judicial resources if heard by different judges.

         [ ] Additional explanation is attached in attachment 1h

   i. Status of case:
      [X] pending
      [ ] dismissed   [ ] with   [ ] without prejudice
      [ ] disposed of by judgment

2. a. Title: Namdy Consulting, Inc. v. Anthem Blue Cross Life and Health Insurance Company

   b. Case number: BC680020

   c. Court: [X] same as above
      [ ] other state or federal court *(name and address):*

   d. Department: 40

Form Approved for Optional Use<br>Judicial Council of California<br>CM-015 (Rev. July 1, 2007)   NOTICE OF RELATED CASE   Legal<br>Solutions<br>Plus   Cal. Rules of Court, rule 3.300

CM-015

| PLAINTIFF/PETITIONER: NAMDY CONSULTING, INC. | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: ANTHEM BLUE CROSS LIFE AND HEALTH INSURANCE COMPANY, et al. | BC 680021 |

2. *(continued)*

   e. Case type: [ ] limited civil [X] unlimited civil [ ] probate [ ] family law [ ] other *(specify):*

   f. Filing date: October 18, 2017

   g. Has this case been designated or determined as "complex?" [ ] Yes [X] No

   h. Relationship of this case to the case referenced above *(check all that apply):*

      [X] involves the same parties and is based on the same or similar claims.

      [ ] arises from the same or substantially identical transactions, incidents, or events requiring the determination of the same or substantially identical questions of law or fact.

      [ ] involves claims against, title to, possession of, or damages to the same property.

      [X] is likely for other reasons to require substantial duplication of judicial resources if heard by different judges.

         [ ] Additional explanation is attached in attachment 2h

   i. Status of case:

      [X] pending

      [ ] dismissed [ ] with [ ] without prejudice

      [ ] disposed of by judgment

3. a. Title: Namdy Consulting, Inc. dba Ecure v. Anthem Blue Cross Life and Health Insurance Co.

   b. Case number: 16K14770

   c. Court: [X] same as above

      [ ] other state or federal court *(name and address):*

   d. Department: 77

   e. Case type: [X] limited civil [ ] unlimited civil [ ] probate [ ] family law [ ] other *(specify):*

   f. Filing date: December 8, 2016

   g. Has this case been designated or determined as "complex?" [ ] Yes [X] No

   h. Relationship of this case to the case referenced above *(check all that apply):*

      [X] involves the same parties and is based on the same or similar claims.

      [ ] arises from the same or substantially identical transactions, incidents, or events requiring the determination of the same or substantially identical questions of law or fact.

      [ ] involves claims against, title to, possession of, or damages to the same property.

      [X] is likely for other reasons to require substantial duplication of judicial resources if heard by different judges.

         [ ] Additional explanation is attached in attachment 3h

   i. Status of case:

      [X] pending

      [ ] dismissed [ ] with [ ] without prejudice

      [ ] disposed of by judgment

4. [ ] Additional related cases are described in Attachment 4. Number of pages attached: _____

Date: November 20, 2017

Carol B. Lewis
(TYPE OR PRINT NAME OF PARTY OR ATTORNEY)

► _____
(SIGNATURE OF PARTY OR ATTORNEY)

CM-015

| PLAINTIFF/PETITIONER: NAMDY CONSULTING, INC.<br><br>DEFENDANT/RESPONDENT: ANTHEM BLUE CROSS LIFE AND HEALTH<br>INSURANCE COMPANY, et al. | CASE NUMBER:<br>BC 680021 |
| --- | --- |

## PROOF OF SERVICE BY FIRST-CLASS MAIL
### NOTICE OF RELATED CASE

*(NOTE: You cannot serve the Notice of Related Case if you are a party in the action. The person who served the notice must complete this proof of service. The notice must be served on all known parties in each related action or proceeding.)*

1. I am at least 18 years old and **not a party to this action.** I am a resident of or employed in the county where the mailing took place, and my residence or business address is *(specify):*
   2041 Rosecrans Avenue, Suite 367, El Segundo, CA  90245

2. I served a copy of the *Notice of Related Case* by enclosing it in a sealed envelope with first-class postage fully prepaid and *(check one):*

   a. [X] deposited the sealed envelope with the United States Postal Service.

   b. [ ] placed the sealed envelope for collection and processing for mailing, following this business's usual practices, with which I am readily familiar. On the same day correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service.

3. The *Notice of Related Case* was mailed:

   a. on *(date):* November 20, 2017

   b. from *(city and state):* El Segundo, CA  90245

4. The envelope was addressed and mailed as follows:

   a. Name of person served: Kurt Ramlo, Esq.
      Levene, Neale, Bender, Yoo & Brill LLP
      Street address: 10250 Constellation Blvd. #1
      City: Los Angeles
      State and zip code: California  90067

   c. Name of person served:

      Street address:
      City:
      State and zip code:

   b. Name of person served: Alan Nesbit, Esq.
      NESBIT LAW GROUP US LLP
      Street address: 8383 Wilshire Blvd. #800
      City: Los Angeles
      State and zip code: California 90211

   d. Name of person served:

      Street address:
      City:
      State and zip code:

   [ ] Names and addresses of additional persons served are attached. *(You may use form POS-030(P).)*

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: November 20, 2017

Diane DeRosa
(TYPE OR PRINT NAME OF DECLARANT)

▶ *Diane DeRosa*
(SIGNATURE OF DECLARANT)

C O P Y

CONFORMED COPY
OF ORIGINAL FILED
Los Angeles Superior Court

DEC 26 2017

Sherri R. Carter, Executive Officer/clerk

By Shaunya Bolden, Deputy

1   ALAN NESBIT, ESQ.
    Attorney-at-Law, SBN 310466
2   8383 Wilshire Boulevard Ste 800
    Beverly Hills, California 90211
3   Tel: (323) 456-8605
    Fax: (323) 456-8601
4   Email: anesbit@nesbitlawgroup.com

5
    Attorney for Plaintiff,
6   NAMDY CONSULTING, INC.

7

8               **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9               **COUNTY OF LOS ANGELES, CENTRAL DISTRICT**

10                                                          **BY FAX**

11                                    Case No.: BC680021

12  NAMDY CONSULTING, INC.,           **NAMDY CONSULTING, INC.'S**
                                      **FIRST AMENDED COMPLAINT**
13              Plaintiff,            **FOR:**

14
                                      1. RECOVERY OF PAYMENT
15          v.                           FOR SERVICES RENDERED;
                                      2. RECOVERY ON OPEN BOOK
16  ANTHEM BLUE CROSS LIFE AND           ACCOUNT;
    HEALTH INSURANCE CO. AND DOES 1 -  3. QUANTUM MERUIT
17  40,                               4. BREACH OF IMPLIED
                                         CONTRACT;
18          Defendants.               5. DECLARATORY RELIEF; and
                                      6. INTERFERENCE WITH
19                                       PROSPECTIVE ECONOMIC
                                         ADVANTAGE
20

21                                    **JURY TRIAL REQUESTED**

22
                                      Damages: UNLIMITED: Over
23                                    $25,000

24

25

26

27  ///
28

                              1
            ─────────────────────────────────
                  FIRST AMENDED COMPLAINT

Plaintiff NAMDY CONSULTING, INC. (hereafter referred to as "NAMDY") complains and alleges:

## GENERAL ALLEGATIONS

1. NAMDY is and at all relevant times was a corporation organized and existing under the laws of the State of California, and was and is a resident of the County of Los Angeles.

2. NAMDY is and at all relevant times was in the business of purchasing and collecting accounts receivable on behalf of various other companies, including without limitation professional business entities engaged in the business of providing patients with medical services, medications, devices, and any other services related to healthcare. As such NAMDY has been assigned these accounts receivable and related claims by certain medical groups, physicians, or health care providers (hereinafter referred to as "Physicians"), who were fully licensed, certified, and in good standing under the laws of the State of California.

3. Physicians provided medical care, services, treatment, and/or procedures and services to members, subscribers and insureds of ANTHEM BLUE CROSS LIFE AND HEALTH INSURANCE CO. ("ANTHEM") AND DOES 1 - 40, California Corporations, (hereafter referred to as ("DEFENDANT" or "DEFENDANTS"). Physicians became entitled to reimbursement, payment and/or indemnification from DEFENDANTS for those services and supplies rendered. Physicians have assigned their right to payment and to collect their fees from DEFENDANTS to NAMDY.

4. Physicians assigned these accounts receivable and related claims with the intention of terminating their ownership in these receivables and claims and transferring full ownership to NAMDY. Physicians no longer have the ability to pursue their collection of these receivables and claims against DEFENDANTS.

5. DEFENDANT is a California corporation licensed to do business in and was doing business in the State of California, as an insurer. NAMDY is informed and believes that DEFENDANT is licensed by the Department of Insurance to transact the business of insurance in the State of California. DEFENDANT is, in fact, transacting the business of

2

1    insurance in the State of California and is thereby subject to the laws and regulations of

2    the State of California.

3    6.  The true names and capacities, whether individual, corporate, associate, or otherwise, of

4        DEFENDANTS are unknown to NAMDY, who therefore sues said DEFENDANTS by

5        such fictitious names. NAMDY is informed and believes and thereon alleges that each of

6        the DEFENDANTS designated herein as a DOE is legally responsible in some manner or

7        to some extent for the events and happenings referred to herein and legally caused injury

8        and damages proximately thereby to NAMDY. NAMDY will seek leave of this Court to

9        amend this Complaint to insert their true names and capacities in place and instead of the

10       fictitious names when they become known to it.

11   7.  At all times herein mentioned, unless otherwise indicated, DEFENDANTS were the

12       agents and/or employees of each of the remaining DEFENDANTS, and were at all times

13       acting within the purpose and scope of said agency and employment, and each

14       DEFENDANT has ratified and approved the acts of his agent. At all times herein

15       mentioned, DEFENDANTS had actual or ostensible authority to act on each other's

16       behalf in certifying or authorizing the provision of medical services; processing and

17       administering the claims and appeals; pricing the claims; approving or denying the

18       claims; directing each other as to whether to pay and/or how to pay claims; issuing

19       remittance advices and explanations of benefits statements; and, making payments to

20       NAMDY and its patients.

21                                    **FACTS**

22   8.  This complaint arises out of the failure of DEFENDANTS to make payments due and

23       owing to Physicians for surgical care, treatment, and procedures provided to numerous

24       patients[1] (hereafter referred to as "Patients"), all of whom were insureds, members,

25       policyholders, certificate-holders, or were otherwise covered for health, hospitalization,

26

27    _____

28    [1] For privacy reasons and to comply with the Health Insurance Portability and Accountability Act of 1996 ("HIPPA"), the full names and identifying information pertaining to the patients has been withheld. This information will be disclosed to DEFENDANTS upon request.

FIRST AMENDED COMPLAINT

1   pharmaceutical expenses, and major medical insurance through policies or certificates of

2   insurance issued and underwritten by DEFENDANTS.

3   9.  None of the claims and/or causes of action in this Complaint are derivative of the

4   contractual rights of the patients. In no way does NAMDY seek to enforce the contractual

5   rights of the patients through the patients' insurance contracts, policies, certificates of

6   coverage, and/or any other written insurance agreements between DEFENDANTS and

7   any patients. The claims and causes of action are based upon the relationship and

8   interactions between the Physicians and DEFENDANTS and upon the fact that the

9   Patients were covered by DEFENDANTS.

10  10. NAMDY is informed and believes that each of the Patients were insured by

11  DEFENDANT either as a subscriber to coverage or a dependent of a subscriber to

12  coverage under a policy or certificate of insurance issued and underwritten by

13  DEFENDANT. NAMDY is informed and believes that each of the Patients entered into a

14  valid insurance agreement with DEFENDANT for the specific purpose of ensuring that

15  the Patients would have access to medically necessary treatments, care, procedures and

16  surgeries by medical practitioners like the Physicians and ensuring that DEFENDANT

17  would pay for the health care expenses incurred by the Patient.

18  11. NAMDY is informed and believes, and on such information and belief alleges, that

19  DEFENDANT received, and continues to receive, valuable premium payments from the

20  Patients and/or other consideration from the Patients under the subject policies applicable

21  to the Patients.

22  12. At all relevant times, the Physicians provided medically necessary and appropriate

23  services, care, treatment, and/or procedures to Patients holding valid insurance policies or

24  certificates issued by DEFENDANT.

25  13. The Physicians have a reputation for providing high quality care, treatment, and

26  procedures. Their charges for services are on par with the charges of other physicians in

27  the same general area for the same procedures and/or services. The Physicians' billed

28  charges are reasonable, usual, and customary.

4

FIRST AMENDED COMPLAINT

14. The Physicians who provided medical services to Patients were "out-of-network providers" who had no preferred provider contracts or other contracts with DEFENDANT at the time that the surgeries or procedures were performed.

15. It is standard practice in the healthcare industry that when a medical provider enters into a written preferred provider contract with a health plan such as DEFENDANT, that medical provider agrees to accept reimbursement that is discounted from the medical provider's total billed charges in exchange for the benefits of being a preferred or contracted provider. Those benefits include an increased volume of business, because the health plan provides financial and other incentives to its members to receive their medical care and treatments from the contracted provider, such as advertising that the provider is "in network," and allowing the members to pay lower co-payments and deductibles to obtain care and treatment from a contracted provider. When health plans such as DEFENDANT receive claims from in-network providers, they adjusts the total charges submitted by the in-network provider and pays an agreed upon contract rate to the in-network provider.

16. Conversely, when a medical provider, such as Physicians, does not have a written contract with a health plan such that it is an out-of-network provider, the medical provider receives no referrals from the health plan, as the health plan discourages its members and subscribers from obtaining their care from the non-contracted providers. The non-contracted provider has no obligation to reduce its charges, and is entitled to receive payment based on its billed or total charges for the services rendered (less any copayments, coinsurance amounts, or deductibles owed by the Patients). The health plan is not entitled to a discount from the medical provider's total billed charges for the services rendered, because it is not providing the medical provider with the benefits of increased patient volume that results from being an in-plan or in-network provider. In such cases, when a health plan such as DEFENDANT receives claims from the out-of-network provider for the total charges billed by the out-of-network provider and then adjusts those claims, paying only those billed charges which are in an amount equivalent

FIRST AMENDED COMPLAINT

to the usual and customary amount charged by similar providers rendering similar treatment in the same or similar geographical location (less copayments, coinsurance, and deductible amounts).

17. The Physicians were legally required to offer and render medical services, care, treatment, and/or procedures to the Patients, who were members, insureds, or subscribers of DEFENDANT, because the services were emergent or authorized or deemed authorized post-stabilization care. For each of the Patient claims at issue here, the Physician did in fact provide such emergency medical services, care, treatment, and/or procedures to the Patients, as required by law. As part of Discovery relevant Explanation of Benefits will be provided showing the patient names and the relevant CPT codes that will show that each of these procedures was either emergent or post-stabilization care that had been authorized or deemed authorized. Due to HIPAA regulations such information can not be provided without protective order.

18. Because the medical services, care, treatment, and/or procedures rendered by the Physicians to the Patients were emergent in nature, DEFENDANT was required by law to compensate the Physicians at usual, customary, and reasonable rates.

19. The claims at issue in this case are comprised of claims for medical services, care, treatment, and/or procedures provided to members, insureds or subscribers of DEFENDANT by the Physicians, for which payments were made to the Physicians based upon a sum unilaterally determined by DEFENDANT to be usual, customary, and reasonable, which sums were not usual, reasonable, or customary and were far less than the Physicians' billed charges.

20. Following performance of medical services, care, treatment, and/or procedures by the Physicians upon the Patients, invoices, bills and claims were submitted to DEFENDANT for adjustment and payment.

21. Medical records pertaining to the Patients medical services, care, treatment, and/or procedures were provided to DEFENDANT by the Physicians. All information requested by DEFENDANT relating to the medical services, care, treatment, and/or procedure

6

FIRST AMENDED COMPLAINT

1   provided by the Physicians to the Patients was supplied to DEFENDANT by the

2   Physicians.

3   22. At all relevant times, the Physicians submitted their claims to DEFENDANT

4   accompanied with lengthy operative reports, chart notes, and other medical records. No

5   matter whether large or small, all of the Physicians' claims are submitted using CPT

6   codes, Healthcare Common Procedure Coding System ("HCPCS"), and modifiers, as

7   necessary.

8   23. At all relevant times, the Physicians expected to be reimbursed by DEFENDANT at the

9   lesser of its billed charges or the then-current usual, customary, and reasonable rate,

10   which is defined by California law as follows:

11   A "usual" charge is the amount that is most consistently charged by an
individual physician for a given service. A "customary" charge is the
12   amount that falls within a specified range of usual charges for a given
13   service billed by most physicians with similar training and experience
within a given geographical area. A "reasonable" charge is a charge that
14   meets the Usual and Customary criteria, or is otherwise reasonable in
15   light of the complexity of treatment of the particular case. Under a UCR
Program, the payment is the lowest of the actual billed charge, the
16   physician's usual charge or the area customary charges for any given
17   covered service.

18

19   24. Rather than simply pay the Physicians the lesser of their billed charges or usual,

20   customary, and reasonable rates, DEFENDANTS instead routinely and deliberately

21   reimbursed the Physicians' claims at below usual, customary, and reasonable levels,

22   forcing Physicians to exhaust time and energy first identifying and then appealing

23   improperly reimbursed claims.

24   25. DEFENDANTS have failed and refused to pay any monies, benefits, insurance proceeds,

25   or make any payment to the Physicians in connection with the medically necessary

26   services, care, treatment, and/or procedures rendered to the Patients by the Physicians, or

27   have substantially underpaid benefits for such services at inappropriately low rates, using

28   illegal and/or flawed databases and systems to calculate reimbursement for non-

7

FIRST AMENDED COMPLAINT

contracted providers and have failed and refused to pay the claims at usual, customary, and reasonable rates.

26. At all relevant times, DEFENDANT has improperly paid the Physicians for medically necessary and appropriate services rendered to DEFENDANT's insured at rates far below the billed rates, even though there was no contractual relationship or preferred provider relationship between the Physicians and DEFENDANTS. For each of the Patient claims at issue in this action, the Physicians provided medical services to members and insureds of DEFENDANT.

27. The rates paid by DEFENDANT were not reasonable, customary or usual, and were arbitrary, capricious and inexplicable. Further, DEFENDANT has never explained how they calculated, justified, rationalized or comprised their pricing and rate schedule for non-contracted, out-of-network providers, such as the Physicians.

28. Often, the rates paid to the Physicians by DEFENDANTS for the exact same procedure, treatment, surgery, or services were paid at different rates during the same year. At other times, the Physicians were paid rates which were below what they would have received had they been a preferred or in-network provider, even though such volume-discounted rates would have been significantly lower than usual, reasonable, and customary rates as defined by California law.

29. The California Department of Managed Health Care has adopted regulations that define the amount that health care service plans such as DEFENDANTS are obligated to pay non-contracted providers such as the Physicians. These regulations provide a methodology for determining the rate to be paid to out-of-network emergency room providers:

> For contracted providers without a written contract and non-contracted providers . . . the payment of the **reasonable and customary value** for the health care services rendered based upon statistically credible information that is updated at least annually and takes into consideration: (i) the provider's training, qualifications and length of time in practice; (ii) the nature of the services provided; (iii) **the fees usually charged by the provider; (iv) prevailing provider rates charged in the general geographic area in which the services**

8

1    **were rendered;** (v) other aspects of the economics of the medical provider's
2    practice that are relevant; and (vi) and unusual circumstances in the case.

3    28 Cal. Code Regs. Section 1300.71(a)(3)(B) (Emphasis added). These definitions are the
4    same criteria used by California Courts to determine the *quantum meruit* amounts that
5    should be paid for services rendered by non-contracted providers by insurers in
6    California.

7    30. Based upon these criteria, the Physicians' charges are reasonable and customary. The
8    Physicians charged DEFENDANT the same fees that they charges all other payers.

9    31. NAMDY is informed and believes that DEFENDANT relied upon and utilized a flawed
10   database to make pricing determinations for the claims submitted by the Physicians on
11   behalf of the Patient. DEFENDANT utilized that flawed database as a primary source of
12   data upon which it based its pricing determinations, even though DEFENDANT knew
13   that the data cannot and should not be used for that purpose. DEFENDANT was fully
14   aware that its database was not properly designed to determine usual, customary and
15   reasonable reimbursement amounts.

16   32. NAMDY is informed and believes and thereon alleges that DEFENDANT's system for
17   paying out-of-network claims is flawed, that DEFENDANT improperly manipulates the
18   data in its systems to underpay out-of-network medical provider claims, and that
19   DEFENDANT'S systems and methods for calculating such rates violate California law.
20   DEFENDANT has used flawed databases and systems to unilaterally determine what
21   amounts it pays to medical providers and has colluded with other insurers to artificially
22   underpay, decrease, limit, and minimize the reimbursement rates paid for services
23   rendered by non-contracted providers. The issue of flawed database has been investigated
24   by the U.S. Congress and New York Attorney General and has been the source of
25   numerous lawsuits and class action suits filed in connection with the databases utilized
26   (known as Ingenix).
27   ///
28   ///

9

FIRST AMENDED COMPLAINT

33. NAMDY is informed and believes that there are a number of inherent flaws in DEFENDANT's database, which make that database invalid and inappropriate for setting usual, customary and reasonable rates. Among other flaws, DEFENDANT's database:

    a. Does not determine the numbers or types of providers in any geographic area;

    b. Does not determine the actual types of procedures performed within a geographic area;

    c. Collects charge data which is not representative of the actual number of procedures performed within a geographic area;

    d. Does not collect sufficient data to enable its users to determine whether the data reflects the charges of providers with any particular degree of expertise or specialization;

    e. Does not collect sufficient provider-specific data to enable its users to determine whether the charges are from one provider, from several providers, or from only a minority subset of the providers in a geographic area;

    f. Fails to compare providers of the same or similar training and experience level and, instead, combines and averages all provider charges by procedure code without separating the charges of physicians and non-physicians;

    g. Does not collect patient specific information such as age or medical history or condition;

    h. Does not ascertain the most common charge for the same service or comparable service or supply;

    i. Does not determine the place of service or type of facility;

    j. Does not collect sufficient data to enable it or its users to determine an appropriate medical market for comparing like charges;

    k. Combines zip codes inappropriately, and uses zip codes instead of appropriate medical markets;

10

FIRST AMENDED COMPLAINT

l.  Fails to compare procedures that use the same or similar resources (and other costs) to the provider but, rather, indiscriminately combines all provider charges by procedure code without regard to such factors;

m.  Fails to compare procedures of the same or similar complexity by, among other things, failing to record or account for CPT code modifiers;

n.  Does not use appropriate statistical methodology;

o.  Does not properly consider charging protocols and billing practices generally accepted by the medical community or specialty groups;

p.  Does not properly consider medical costs in setting geographic areas;

q.  Lacks quality control, such as basic auditing, to ensure the validity, completeness, representativeness, and authenticity of the data submitted;

r.  Is subject to pre-editing by data contributors;

s.  Reports charges that are systematically skewed downward;

t.  Uses relative values and conversion factors to derive inappropriate usual, customary and reasonable amounts;

u.  Uses a methodology that does not comply with DEFENDANT'S contractual definition of usual, customary and reasonable; and

v.  Purports to be confidential and/or proprietary, which prevents access to, and scrutiny of, the data by members of their employers.

34. These and other flaws render DEFENDANT'S use of its data system invalid and unlawful for determining usual, customary and reasonable rates. By systematically and typically making usual, customary, and reasonable rate determinations without compliant and valid data to substantiate its determinations, DEFENDANTS have breached their obligations to reimburse Physicians for out-of-network services. Accordingly, all past usual, customary, and reasonable rate determinations based on DEFENDANT'S data system should be overturned and disregarded.

35. DEFENDANT used other improper pricing methods to reduce reimbursement to out-of-network providers. Accordingly, DEFENDANT violated, and continues to violate, its

11

legal obligations to Physicians to pay usual, customary and reasonable rates of
reimbursement for services rendered to the Patients, insureds, subscribers, and members.

36. DEFENDANT has received claims from the Physicians for a number of years. As such, DEFENDANT knew the rates that the Physicians charged for various services. Moreover, DEFENDANT knew or should have known the amounts charged by other medical providers for medical services, care, and treatment, since it had received, reviewed and processed, numerous claims prior to processing the claims at issue in this litigation. It is standard practice in the healthcare industry for medical providers (whether in-network or not) to submit claims and bills showing the total charges to health plans such as DEFENDANT and for DEFENDANT to price those claims, based either upon the total charges or the contractual rates offered to network providers.

37. The Physicians have also been disparaged by the pervasive under-reimbursement scheme. When a patient refers to his/her evidence of coverage documents promulgated by DEFENDANTS, he/she is led to believe that when he/she seeks out-of-network care their charges will be paid by DEFENDANTS at the "usual and customary rate" of similar physicians for a similar service in a similar area. When a patient obtains out-of-network treatment from providers such as the Physicians and the provider submits the bill to the insurer, a patient learns for the first time that he/she will not be fully reimbursed because the doctor's charges are alleged by DEFENDANT to exceed the usual and customary rate. The physician-patient relationship is undermined, as the physicians have been branded as charlatans whose bills are inflated and unreasonable.

38. At all relevant times, DEFENDANT harmed the physicians by making improper usual, customary, and reasonable rate and pricing determinations that reduced the lawful reimbursement amounts for out-of-network providers without valid or compliant data to support such determinations. DEFENDANT further harmed the Physicians by misapplying in-network policies to out-of-network provider claims, and by delaying payments to out-of-network providers under the pretext of negotiation. As a result of these actions, the Physicians were financially harmed and forced to exhaust significant

12

1    time and resources appealing DEFENDANT's unlawful determination through a process

2    deliberately designed to deny, delay, and impede out-of-network physician providers

3    from obtaining their rightful reimbursement.

4  39. Upon information and belief, DEFENDANT used and continues to use flawed database

5    data, among other sources, to understate the true market rates of medical care performed

6    by out-of-network providers. The improper use of this data has caused both patients and

7    out-of-network providers to experience significant losses. Patients are harmed because

8    payers like DEFENDANT are not reimbursing out-of-network services at appropriate

9    levels, which results in out-of-network providers increasingly billing their patients for

10    amounts charged, which exceed the amounts DEFENDANT covers. Out-of-network

11    providers like Physicians are harmed because they are not always able to collect these

12    balances from patients and are forced to take a loss for their services. Moreover, because

13    out-of-network providers are often unaware of the scheme that results in payers like

14    DEFENDANT failing to pay appropriate usual, customary and reasonable rates, they are

15    either powerless to appeal any such improper determinations or their efforts to appeal

16    these determinations are futile. DEFENDANT, by contrast, benefits from paying out-of-

17    network providers at below market rates. If, for example, out-of-network providers fail to

18    realize that the scheme is the cause of their underpayment, DEFENDANT has unlawfully

19    retained money which otherwise belongs to the Physicians for the services provided.

20    DEFENDANT's ambiguity regarding its method for calculating usual, customary and

21    reasonable rates reflects its participation in this deceptive practice.

22  40. DEFENDANT's explanation of benefit statements are initially uninformative, false, and

23    misleading regarding the use of usual, customary, and reasonable rates. This ambiguity

24    has resulted in the inconsistent application of usual, customary and reasonable rates to

25    deny Physicians their lawful reimbursement. Usual, customary, and reasonable rates

26    should be applied consistently by DEFENDANTS, but instead are selectively used to

27    deny or diminish lawful reimbursement to Physicians and other out-of-network providers.

28

FIRST AMENDED COMPLAINT

41. The Physicians' explanation of benefits and remittance advices received from DEFENDANTS often state that their billed charges purportedly exceed the usual, customary, and reasonable rate for the geographic area where the services were performed. However, nowhere on the explanation of benefit statements, remittance advices, or elsewhere in any other correspondence sent to the Physicians do DEFENDANTS discuss or identify how they actually calculate usual, customary, and reasonable rates. The Explanation of Benefit statements do not even specify whether database data or some other methodology was used in these calculations. Instead, the explanation of benefit statements plainly state that the rates have been determine by DEFENDANTS. With its methods for calculating usual, customary, and reasonable rates shrouded in a veil of secrecy, DEFENDANTS have been able to derive improper rates using faulty data, and apply them to out-of-network providers such as the Physicians.

## **FIRST CAUSE OF ACTION:**
### **FOR RECOVERY OF PAYMENT FOR SERVICES RENDERED**
### **(AS AGAINST ALL DEFENDANTS)**

42. Plaintiff incorporates all allegations set forth in the above paragraphs as though fully set forth herein.

43. At all times herein mentioned, Physicians provided medical services, care, treatment, and/or procedures to Patients as required by law (because the medical services provided were emergency services), thereby benefiting DEFENDANTS and the Patients.

44. At all times herein mentioned, DEFENDANTS were required by law to pay usual, reasonable, and customary rates for the emergency care or authorized or deemed authorized post stabilization care provided by the Physicians to the Patients, who were members or subscribers of DEFENDANT. California Health and Safety Code § 1371.4; *Bell v. Blue Cross*, 131 Cal.App.4th 211. The code and Knox-Keene Act apply to all Health Care Service Plans and the DEFENDANT administered a Health Care Service Plan and is therefore subject to these rules.

14

45. At all relevant times, the Physicians rendered care, treatment, and services to the Patients in good faith and in reliance upon the legal requirement that insurers pay for the emergency medical care or authorized or deemed authorized post stabilization care of those they insure. DEFENDANTS had a duty to pay, reimburse, indemnify, and cover the Physicians for the care, treatment and services rendered by the Physicians to the Patients pursuant to California Health & Safety Code §§ 1371, 1371.35, and 1371.4 following the rendition of services and treatment by the Physicians to the Patients. Further, DEFENDANTS had a duty to pay usual, customary, and reasonable rates for the services rendered by the Physicians in compliance with 28 California Code of Regulations § 1300.71 et seq. For the Patients, DEFENDANTS have failed and refused to comply with 28 California Code of Regulations § 1300.71 et seq.

46. At all relevant times, the Physicians rendered care and treatment to the Patient. DEFENDANT had a duty to pay, reimburse and cover the cost of such treatment and services by payment to the Physicians for the medical services, care, treatment, and/or procedures rendered by the Physicians to the Patients, pursuant to California Health & Safety Code §§ 1371, 1371.35, and 1371.4, and was prohibited from denying or refusing coverage, payment, indemnity, or reimbursement for the cost for treatment and services rendered by the Physicians to the Patients. Further, DEFENDANTS had a duty to pay usual, customary, and reasonable rates for the services rendered by NAMDY's assignor in compliance with 28 California Code of Regulations § 1300.71 et seq. and have failed and refused to pay usual, customary, and reasonable amounts.

47. At all relevant times, 28 California Administrative Code § 1300.71 et seq. required that DEFENDANTS reimburse the Physicians for the claims submitted on behalf of the Patient within 45 days after DEFENDANTS received the Patient's claims from the Physicians. 28 Cal. Admin. Code Tit. 28 Section 1300.71(a)(3) defines the manner and method by which reasonable and customary rates are to be defined by DEFENDANTS, providing:

15

FIRST AMENDED COMPLAINT

(B) For contracted providers without a written contract and non-contracted providers, except those providing services described in paragraph (C) below: the payment of the reasonable and customary value for the health care services rendered based upon statistically credible information that is updated at least annually and takes into consideration: (i) the provider's training, qualifications, and length of time in practice; (ii) the nature of the services provided; (iii) the fees usually charged by the provider; (iv) prevailing provider rates charged in the general geographic area in which the services were rendered; (v) any unusual circumstances in the case; and (C) For non-emergency services provided by non-contracted providers to PPO and POS enrollees: the amount set forth in the enrollee's Evidence of Coverage.

48. As a proximate result of the violation of California Health & Safety Code §§ 1371.8 and 1371, California Insurance Code § 796.04, California Insurance Code § 796.04 and/or 28 C.C.R. § 13700.1 by DEFENDANT, which acts were intentional, willful and knowing, the Physicians have never been paid for any of the medical services, care, treatment, and/or procedures provided to the Patient or have been underpaid for such medical services, care, treatment, and/or procedures. By their acts and omissions, DEFENDANTS have failed and refused to pay the usual, customary, and reasonable value for the services rendered by the Physicians to the Patients.

49. The Physicians are owed reimbursement, compensation, and payment of the cost of the medical services, care, treatment, and/or procedures which they rendered and provided to the Patient at the Physicians' billed rates or at rates equivalent to the usual, customary, and reasonable value for their services, in conformance with the legal requirements that they provide emergency care or authorized or deemed authorized post stabilization care to any patient and that the insurance of any patient who received emergency care or authorized or deemed authorized post stabilization care pay the provider of the care at usual, customary, and reasonable rates.

50. The Physicians have demanded that DEFENDANT pay for the medical treatment provided to the Patient, and has submitted statements to DEFENDANT for the medical services rendered to the Patient.

16

51. DEFENDANTS have failed and refused to pay, and continue to refuse to pay the Physicians for such services rendered at appropriate rates and have underpaid the Physicians by failing and refusing to pay usual, customary and reasonable rates. Accordingly, there is now due and owing an unpaid sum, plus statutory interest thereon.

## SECOND CAUSE OF ACTION:
## FOR RECOVERY OF PAYMENT ON OPEN BOOK ACCOUNT
## (AS AGAINST ALL DEFENDANTS)

52. Plaintiff incorporates all allegations set forth in the above paragraphs as though fully set forth herein.

53. DEFENDANT has become indebted to the Physicians on open book accounts for the Patients, for money due in the sum to be determined at the time of trial for medical services rendered by the Physicians to the Patients.

54. The Physicians have provided medical treatment to the Patient, and have maintained contemporaneous, itemized and detailed records and statements of each medical service provided to the Patients. The Physicians have provided DEFENDANT with statements itemizing the medical treatment provided to the Patients, along with an accounting of the amounts owed by DEFENDANT.

55. DEFENDANT has refused to pay, and continues to refuse to pay, the Physicians the billed charges submitted by the Physicians and/or the usual and customary charges owed to the Physicians for the treatment, surgeries, procedures and medical services provided to the Patients. Accordingly, there is now due and owing an unpaid sum in an amount to be determined at the time of trial, plus statutory interest.

## THIRD CAUSE OF ACTION:
## FOR QUANTUM MERUIT
## (AGAINST ALL DEFENDANTS)

56. Plaintiff incorporates all allegations set forth in the above paragraphs as though fully set forth herein.

17

FIRST AMENDED COMPLAINT

57. As required by law (because the medical services provided were emergency services), the Physicians provided surgeries, procedures, medical treatments, and other medical services to the Patients, thereby benefitting DEFENDANT and the Patients.

58. DEFENDANTS have failed and refused to pay the Physicians the appropriate amounts incurred by the Physicians in rendering medical services, care, treatment, and/or procedures to the Patients, have underpaid those costs and have failed and refused to pay the usual, reasonable, and customary costs of those services.

59. At all times herein mentioned, DEFENDANTS were required by law to pay usual, reasonable, and customary rates for the emergency care provided by the Physicians to the Patients, who were members or subscribers of DEFENDANT. California Health and Safety Code § 1371.4; *Bell v. Blue Cross*, 131 Cal.App.4th 211.

60. DEFENDANT is required to reimburse the Physicians at a *quantum meruit* rate for all services rendered to the enrollees, the Patients. The *quantum meruit* amount owed by DEFENDANT to the Physicians is determined according to the customary charges that would be billed by the Physicians and/or other physicians in the absence of preferred provider or participating provider contractual rates. Based upon Patient or Hospital's request that the Physicians render treatment, surgeries, procedures and medical services to the Patient, and the fact that DEFENDANT was benefitted by the provision of such services by the Physicians, an obligation on the part of DEFENDANT to make restitution to the Physicians arose.

61. In *Regents of the University of California v. Principal Financial Group*, 412 F.Supp.2d. 1037, 1042 (N.D. Cal. 2006), the federal trial court held that California law no longer requires that a defendant be benefitted in order for a *quantum meruit* claim to lie. It found that: In *Earhart v. William Low Company*, 25 Cal.3d. 503, 511, 158 Cal.Rptr. 887, 600 P.2d. 1344 (1979), the California Supreme Court abrogated the common law requirement that there be benefit to the defendant in a *quantum meruit* claim, noting "that performance of services at another's behest may itself constitute 'benefit' such that an obligation to make restitution may arise." Thus, the fact that Mr. Donner was the direct

18

FIRST AMENDED COMPLAINT

1    beneficiary of the medical treatment does not bar plaintiff's claim." Thus the fact that

2    DEFENDANT's neither directly requested the treatment nor were the direct beneficiary

3    of the treatment is not a block to *quantum meruit*.

4    62. The *quantum meruit* rate for the medical treatment the Physicians provided to the Patients

5        is an amount to be determined at trial. This amount represents the usual, customary and

6        reasonable cost or charge for the services rendered by the Physicians. The Physicians

7        have submitted statements to DEFENDANT for these amounts, and have made repeated

8        demands that they be paid for the medical treatment provided to the Patient at usual,

9        customary, and reasonable rates.

10   63. DEFENDANT has refused to pay, and continues to refuse to pay, the Physicians for the

11       whole or any part of the sums owed to the Physicians for the treatment, surgeries,

12       procedures and medical services provided to the Patient, at usual, customary and

13       reasonable rates. Accordingly, there is now due and owing an unpaid sum, plus statutory

14       interest.

15                              **FOURTH CAUSE OF ACTION:**

16                         **FOR BREACH OF IMPLIED CONTRACT**

17                           **(AS AGAINST ALL DEFENDANTS)**

18   64. Plaintiff incorporates all allegations set forth in the above paragraphs as though fully set

19       forth herein.

20   65. NAMDY is informed and believes and thereon alleges that, at all relevant times herein,

21       the Patients had valid policies with DEFENDANT or were members, subscribers,

22       insureds, or were otherwise entitled to coverage, indemnification and payment as

23       policyholders or certificate-holders of insurance policies and certificates issued and

24       underwritten by DEFENDANT.

25   66. NAMDY is informed and believes that the Patients obtained such policies from

26       DEFENDANT for the specific purposes of (1) ensuring that the patients would have

27       access to medically necessary treatments at healthcare facilities, and (2) ensuring that

28       DEFENDANT would pay for the healthcare expenses incurred by the patients.

FIRST AMENDED COMPLAINT

67. DEFENDANTS knew or reasonably should have known that its insureds would seek medical treatment from the Physicians.

68. NAMDY is informed and believes that DEFENDANT received and continues to receive valuable premium payments from the Patients under the relevant insurance policies.

69. Since Physicians were required by law to treat the Patients in emergency situations, they agreed by implication to treat the Patients. DEFENDANTS, by law, were required to pay Physicians at the usual, customary, and reasonable rate for emergency services and therefore agreed by implication to pay usual, customary, and reasonable rates to Physicians. California Health and Safety Code § 1371.4; *Bell v. Blue Cross*, 131 Cal.App.4th 211.

70. In consideration for the Physicians' implied agreement to treat the Patients, DEFENDANT implicitly agreed to reimburse the Physicians for the expenses incurred by the Patients in the course of being treated and undergoing surgeries or procedures rendered by the Physicians and agreed to pay the Physicians a usual and customary rate for those services.

71. The Physicians provided medical treatment to the Patient. DEFENDANT has refused to pay, and continues to refuse to pay, the Physicians for the whole or a part of the sums owed to the Physicians at appropriate rates for the treatment services provided to the Patients.

72. As a result of the foregoing breach, the Physicians have been damaged by DEFENDANT in an amount to be determined at trial. Accordingly, there is now due and owing an unpaid sum, plus statutory interest thereon.

73. The implied contract is implied by statute, namely the Knox-Keene Act, rather than any specific words spoken by the DEFENDANT.

/ / /

/ / /

/ /

/ / /

FIRST AMENDED COMPLAINT

**FIFTH CAUSE OF ACTION:**

**FOR DECLARATORY RELIEF**

**(AS AGAINST ALL DEFENDANTS)**

74. Plaintiffs incorporate all allegations set forth in the above paragraphs as though fully set forth herein.

75. A dispute has arisen between the Physicians and DEFENDANT as to the amount that DEFENDANT is required to pay the Physicians for the medically necessary services provided by the Physicians to the Patients. DEFENDANT contends that it owes the Physicians nothing in connection with the services, surgeries, and procedures provided to the Patients. The Physicians contend that they are entitled to receive payment in an amount to be determined at trial, plus statutory interest, for the medical services provided to the Patients during the course of their treatment.

76. NAMDY seeks and desires a judicial determination by the Court that DEFENDANT is required to pay the Physicians for the specific services, surgeries, procedures, and other medical treatments provided to the Patients during the course of their treatment by the Physicians at the billed or total rates charged by the Physicians, carried out under the same CPT codes as in these cases at the same rate as decided in this litigation.

77. Such a declaration is necessary and appropriate at this time so that the Physicians and DEFENDANT may ascertain their rights, duties, and obligations concerning the medical services the Physicians provided to the Patients. This will save further court time, as the same CPT code carried out by the same Provider in the same geographical area should be the same rate subject to any rule change to the contrary and no further Court action should be required to decide the same issue.

**/SIXTH CAUSE OF ACTION:**

**FOR INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE**

**(AS AGAINST ALL DEFENDANTS)**

78. Plaintiff incorporates by reference all previous paragraphs as though fully set forth herein.

21

79. For each service provided by the Physicians to each Patient, the Patient was required to pay some portion of that bill as part of their deductible, as their coinsurance amount, and/or as their co-pay.

80. The explanation of benefit forms provided by DEFENDANT to both the Patients and the Physicians lists an "allowed amount" for each medical service to each Patient. It is the monetary amount that DEFENDANT unilaterally determined the services would be reimbursed at.

81. The allowed amount was significantly lower than the billed amount for each service for each Patient.

82. The Patients, rather than paying their portions (deductible, coinsurance, and/or co-pay) of the billed amounts, only paid their portions of the allowable amount.

83. As a result, the Physicians received less money from the Patients than they would have if the patients had not been, in effect, told by DEFENDANT to pay at amounts lower than the billed amount.

84. DEFENDANT acted wrongfully by unilaterally determining the rates to be paid for each service, by determining rates that were below usual, customary, and reasonable rates, and by convincing the Patients to pay at the lower "allowed" amounts via their explanation of benefits forms.

85. DEFENDANT was aware of the economic relationship between the Physicians and the Patients because DEFENDANT knew that the Physicians treated the patients and knew that the Patients would have to pay some portion of the bills for the medical services provided by the Physicians.

/ / /
/ / /
/ / /
/ / /
/ / /

22

FIRST AMENDED COMPLAINT

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff NAMDY CONSULTING, INC. prays for judgment against DEFENDANT as follows:

1. For compensatory damages in an amount to be determined, plus statutory interest;

2. For restitution in an amount to be determined, plus statutory interest;

3. For a declaration that ANTHEM is obligated to pay plaintiff all monies owed for medical services rendered to the Patient; and

4. For such other further relief the Court deems just and appropriate.

DATED:  December  22, 2017                              Respectfully submitted,

                              By:  A. Nesbit

                              ALAN NESBIT
                              Attorney for Plaintiff
                              NAMDY CONSULTING, INC.

23

FIRST AMENDED COMPLAINT

1

### <u>DEMAND FOR JURY TRIAL</u>

2   Plaintiff, NAMDY CONSULTNG, INC. hereby demands a jury trial as provided by law.

3

4   DATED:  December  22, 2017                    Respectfully submitted,

5

6                                                By:  _____

7

8                                                ALAN NESBIT
                                                 Attorney for Plaintiff
9                                                NAMDY CONSULTING, INC.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

24

**COMPLAINT**

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

DATE: 03/07/18                           **DEPT.** 14

HONORABLE TERRY A. GREEN    JUDGE | M. VENTURA      DEPUTY CLERK

HONORABLE          JUDGE PRO TEM           ELECTRONIC RECORDING MONITOR

     P. CORTEZ, C.A.    Deputy Sheriff | NONE           Reporter

---

8:45 am | BC680021

NAMDY CONSULTING INC
VS
ANTHEM BLUE CROSS LIFE AND HEAL
  INS CO ET AL
NRC: BC646326, BC680020 AND
     16K14770 FILE 11-21-17

Plaintiff
Counsel

Defendant
Counsel

NO APPEARANCES

---

**NATURE OF PROCEEDINGS:**

NON APPEARANCE CASE REVIEW

The Court has received and reviewed the Joint
Stipulation and Proposed Order for leave to file
Second Amended Complaint, submitted on
February 22, 2018.

The Order is signed, filed and incorporated herein
with reference to the Court file on March 2, 2018.

It is hereby ordered that Plaintiff file its Second
Amended Complaint.

Clerk is to give notice.


        CLERKS CERTIFICATE OF MAILING


I, the below-named Executive Officer/Clerk of the
above-entitled court, do hereby certify that I am
not a party to the cause herein, and that on this
date I served the minute order dated
March 7, 2018,
upon each party or counsel named below by placing
the document for collection and mailing so as to
cause it to be deposited in the United States mail

              Page    1 of    2    DEPT. 14

MINUTES ENTERED
03/07/18
COUNTY CLERK

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

| DATE: 03/07/18 | | | DEPT. 14 |
|---|---|---|---|
| HONORABLE TERRY A. GREEN | JUDGE | M. VENTURA | DEPUTY CLERK |
| HONORABLE | JUDGE PRO TEM | | ELECTRONIC RECORDING MONITOR |
| P. CORTEZ, C.A. | Deputy Sheriff | NONE | Reporter |

| 8:45 am | BC680021 | Plaintiff Counsel | |
|---|---|---|---|
| | NAMDY CONSULTING INC | | NO APPEARANCES |
| | VS | Defendant | |
| | ANTHEM BLUE CROSS LIFE AND HEAL | Counsel | |
| | INS CO ET AL | | |
| | NRC: BC646326, BC680020 AND | | |
| | 16K14770 FILE 11-21-17 | | |

**NATURE OF PROCEEDINGS:**

at the courthouse in Los Angeles,
California, one copy of the original filed/entered
herein in a separate sealed envelope to each address
as shown below with the postage thereon fully
pre-paid in accordance with standard court practices.

Dated: March 12, 2018

Sherri R. Carter, Executive Officer/Clerk

By: _____
        M. Ventura

NESBIT, ALAN, ESQ.
8383 WILSHIRE BLVD., SUITE 800
BEVERLY HILLS, CA  90211

Von Behren, William E., Esq.
Von Behren & Hunter
2041 Rosecrans Avenue, 367
El Segundo, CA  90245

Page   2 of   2   DEPT. 14

MINUTES ENTERED
03/07/18
COUNTY CLERK

1   ALAN NESBIT, ESQ.
    Attorney-at-Law, SBN 310466
2   8383 Wilshire Boulevard Ste 800
    Beverly Hills, California 90211
3   Tel:   (323) 456-8605
    Fax:   (323) 456-8601
4   Email: anesbit@nesbitlawgroup.com

5
    Attorney for Plaintiff,
6   NAMDY CONSULTING, INC.

7

8              **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9              **COUNTY OF LOS ANGELES, CENTRAL DISTRICT**

10

11  NAMDY CONSULTING, INC.,            |  Case No.:  BC680021

12              Plaintiff,             |  **NAMDY CONSULTING, INC.'S**
                                          **SECOND AMENDED**
13              v.                     |  **COMPLAINT FOR:**

14
                                          1.  RECOVERY OF PAYMENT
15  ANTHEM BLUE CROSS LIFE AND                FOR SERVICES RENDERED;
    HEALTH INSURANCE CO. AND DOES 1 -     2.  RECOVERY ON OPEN BOOK
16  40,                                       ACCOUNT;
                                          3.  QUANTUM MERUIT
17              Defendants.             |  4.  BREACH OF IMPLIED
                                              CONTRACT; and
18                                        5.  DECLARATORY RELIEF

19
                                          **JURY TRIAL REQUESTED**
20

21                                        Damages: UNLIMITED: Over
                                          $25,000
22

23

24

25  ///

26  ///

27  ///

28  ///

                                        1
_____
        NAMDY CONSULTING, INC.'S SECOND AMENDED COMPLAINT

Plaintiff NAMDY CONSULTING, INC. (hereafter referred to as "NAMDY") complains and alleges:

### GENERAL ALLEGATIONS

1. NAMDY is and at all relevant times was a corporation organized and existing under the laws of the State of California, and was and is a resident of the County of Los Angeles.

2. NAMDY is and at all relevant times was in the business of purchasing and collecting accounts receivable on behalf of various other companies, including without limitation professional business entities engaged in the business of providing patients with medical services, medications, devices, and any other services related to healthcare. As such NAMDY has been assigned these accounts receivable and related claims by certain medical groups, physicians, or health care providers (hereinafter referred to as "Physicians"), who were fully licensed, certified, and in good standing under the laws of the State of California.

3. Physicians provided medical care, services, treatment, and/or procedures and services to members, subscribers and insureds of ANTHEM BLUE CROSS LIFE AND HEALTH INSURANCE CO. ("ANTHEM") AND DOES 1 - 40, California Corporations, (hereafter referred to as ("DEFENDANT" or "DEFENDANTS"). Physicians became entitled to reimbursement, payment and/or indemnification from DEFENDANTS for those services and supplies rendered. Physicians have assigned their right to payment and to collect their fees from DEFENDANTS to NAMDY.

4. Physicians assigned these accounts receivable and related claims with the intention of terminating their ownership in these receivables and claims and transferring full ownership to NAMDY. Physicians no longer have the ability to pursue their collection of these receivables and claims against DEFENDANTS.

5. DEFENDANT is a California corporation licensed to do business in and was doing business in the State of California, as an insurer. NAMDY is informed and believes that DEFENDANT is licensed by the Department of Insurance to transact the business of insurance in the State of California. DEFENDANT is, in fact, transacting the business of

insurance in the State of California and is thereby subject to the laws and regulations of the State of California.

6. The true names and capacities, whether individual, corporate, associate, or otherwise, of DEFENDANTS are unknown to NAMDY, who therefore sues said DEFENDANTS by such fictitious names. NAMDY is informed and believes and thereon alleges that each of the DEFENDANTS designated herein as a DOE is legally responsible in some manner or to some extent for the events and happenings referred to herein and legally caused injury and damages proximately thereby to NAMDY. NAMDY will seek leave of this Court to amend this Complaint to insert their true names and capacities in place and instead of the fictitious names when they become known to it.

7. At all times herein mentioned, unless otherwise indicated, DEFENDANTS were the agents and/or employees of each of the remaining DEFENDANTS, and were at all times acting within the purpose and scope of said agency and employment, and each DEFENDANT has ratified and approved the acts of his agent. At all times herein mentioned, DEFENDANTS had actual or ostensible authority to act on each other's behalf in certifying or authorizing the provision of medical services; processing and administering the claims and appeals; pricing the claims; approving or denying the claims; directing each other as to whether to pay and/or how to pay claims; issuing remittance advices and explanations of benefits statements; and, making payments to NAMDY and its patients.

## FACTS

8. This complaint arises out of the failure of DEFENDANTS to make payments due and owing to Physicians for surgical care, treatment, and procedures provided to numerous patients[1] (hereafter referred to as "Patients"), all of whom were insureds, members, policyholders, certificate-holders, or were otherwise covered for health, hospitalization, pharmaceutical expenses, and major medical insurance through policies or certificates of insurance issued and underwritten by DEFENDANTS.

---

[1] For privacy reasons and to comply with the Health Insurance Portability and Accountability Act of 1996 ("HIPPA"), the full names and identifying information pertaining to the patients has been withheld. This information will be disclosed to DEFENDANTS upon request.

3

9. None of the claims and/or causes of action in this Complaint are derivative of the contractual rights of the patients. In no way does NAMDY seek to enforce the contractual rights of the patients through the patients' insurance contracts, policies, certificates of coverage, and/or any other written insurance agreements between DEFENDANTS and any patients. The claims and causes of action are based upon the relationship and interactions between the Physicians and DEFENDANTS and upon the fact that the Patients were covered by DEFENDANTS.

10. NAMDY is informed and believes that each of the Patients were insured by DEFENDANT either as a subscriber to coverage or a dependent of a subscriber to coverage under a policy or certificate of insurance issued and underwritten by DEFENDANT. NAMDY is informed and believes that each of the Patients entered into a valid insurance agreement with DEFENDANT for the specific purpose of ensuring that the Patients would have access to medically necessary treatments, care, procedures and surgeries by medical practitioners like the Physicians and ensuring that DEFENDANT would pay for the health care expenses incurred by the Patient.

11. NAMDY is informed and believes, and on such information and belief alleges, that DEFENDANT received, and continues to receive, valuable premium payments from the Patients and/or other consideration from the Patients under the subject policies applicable to the Patients.

12. At all relevant times, the Physicians provided medically necessary and appropriate services, care, treatment, and/or procedures to Patients holding valid insurance policies or certificates issued by DEFENDANT.

13. The Physicians have a reputation for providing high quality care, treatment, and procedures. Their charges for services are on par with the charges of other physicians in the same general area for the same procedures and/or services. The Physicians' billed charges are reasonable, usual, and customary.

14. The Physicians who provided medical services to Patients were "out-of-network providers" who had no preferred provider contracts or other contracts with

4

DEFENDANT at the time that the surgeries or procedures were performed.

15. It is standard practice in the healthcare industry that when a medical provider enters into a written preferred provider contract with a health plan such as DEFENDANT, that medical provider agrees to accept reimbursement that is discounted from the medical provider's total billed charges in exchange for the benefits of being a preferred or contracted provider. Those benefits include an increased volume of business, because the health plan provides financial and other incentives to its members to receive their medical care and treatments from the contracted provider, such as advertising that the provider is "in network," and allowing the members to pay lower co-payments and deductibles to obtain care and treatment from a contracted provider. When health plans such as DEFENDANT receive claims from in-network providers, they adjusts the total charges submitted by the in-network provider and pays an agreed upon contract rate to the in-network provider.

16. Conversely, when a medical provider, such as Physicians, does not have a written contract with a health plan such that it is an out-of-network provider, the medical provider receives no referrals from the health plan, as the health plan discourages its members and subscribers from obtaining their care from the non-contracted providers. The non-contracted provider has no obligation to reduce its charges, and is entitled to receive payment based on its billed or total charges for the services rendered (less any copayments, coinsurance amounts, or deductibles owed by the Patients). The health plan is not entitled to a discount from the medical provider's total billed charges for the services rendered, because it is not providing the medical provider with the benefits of increased patient volume that results from being an in-plan or in-network provider. In such cases, when a health plan such as DEFENDANT receives claims from the out-of-network provider for the total charges billed by the out-of-network provider and then adjusts those claims, paying only those billed charges which are in an amount equivalent to the usual and customary amount charged by similar providers rendering similar treatment in the same or similar geographical location (less copayments, coinsurance,

1        and deductible amounts).

2   17. The Physicians were legally required to offer and render medical services, care,

3        treatment, and/or procedures to the Patients, who were members, insureds, or

4        subscribers of DEFENDANT, because the services were emergent or authorized or

5        deemed authorized post-stabilization care. For each of the Patient claims at issue here,

6        the Physician did in fact provide such emergency medical services, care, treatment,

7        and/or procedures to the Patients, as required by law. As part of Discovery relevant

8        Explanation of Benefits will be provided showing the patient names and the relevant

9        CPT codes that will show that each  of these procedures was either emergent or post-

10       stabilization care that had been authorized or deemed authorized. Due to HIPAA

11       regulations such information can not be provided without protective order.

12  18. Because the medical services, care, treatment, and/or procedures rendered by the

13       Physicians to the Patients were emergent in nature, DEFENDANT was required by law

14       and/or by their own contract to compensate the Physicians at usual, customary, and

15       reasonable rates.

16  19. The claims at issue in this case are comprised of claims for medical services, care,

17       treatment, and/or procedures provided to members, insureds or subscribers of

18       DEFENDANT by the Physicians, for which payments were made to the Physicians

19       based upon a sum unilaterally determined by DEFENDANT to be usual, customary, and

20       reasonable, which sums were not usual, reasonable, or customary and were far less than

21       the Physicians' billed charges.

22  20. Following performance of medical services, care, treatment, and/or procedures by the

23       Physicians upon the Patients, invoices, bills and claims were submitted to

24       DEFENDANT for adjustment and payment.

25  21. Medical records pertaining to the Patients medical services, care, treatment, and/or

26       procedures were provided to DEFENDANT by the Physicians. All information

27       requested by DEFENDANT relating to the medical services, care, treatment, and/or

28       procedure provided by the Physicians to the Patients was supplied to DEFENDANT by

6

the Physicians.

22. At all relevant times, the Physicians submitted their claims to DEFENDANT accompanied with lengthy operative reports, chart notes, and other medical records. No matter whether large or small, all of the Physicians' claims are submitted using CPT codes, Healthcare Common Procedure Coding System ("HCPCS"), and modifiers, as necessary.

23. At all relevant times, the Physicians expected to be reimbursed by DEFENDANT at the lesser of its billed charges or the then-current usual, customary, and reasonable rate, which is defined by California law as follows:

> A "usual" charge is the amount that is most consistently charged by an individual physician for a given service. A "customary" charge is the amount that falls within a specified range of usual charges for a given service billed by most physicians with similar training and experience within a given geographical area. A "reasonable" charge is a charge that meets the Usual and Customary criteria, or is otherwise reasonable in light of the complexity of treatment of the particular case. Under a UCR Program, the payment is the lowest of the actual billed charge, the physician's usual charge or the area customary charges for any given covered service.

24. Rather than simply pay the Physicians the lesser of their billed charges or usual, customary, and reasonable rates, DEFENDANTS instead routinely and deliberately reimbursed the Physicians' claims at below usual, customary, and reasonable levels, forcing Physicians to exhaust time and energy first identifying and then appealing improperly reimbursed claims.

25. DEFENDANTS have failed and refused to pay any monies, benefits, insurance proceeds, or make any payment to the Physicians in connection with the medically necessary services, care, treatment, and/or procedures rendered to the Patients by the Physicians, or have substantially underpaid benefits for such services at inappropriately low rates, using illegal and/or flawed databases and systems to calculate reimbursement for non-contracted providers and have failed and refused to pay the claims at usual, customary, and reasonable rates.

7

26. At all relevant times, DEFENDANT has improperly paid the Physicians for medically necessary and appropriate services rendered to DEFENDANT's insured at rates far below the billed rates, even though there was no contractual relationship or preferred provider relationship between the Physicians and DEFENDANTS. For each of the Patient claims at issue in this action, the Physicians provided medical services to members and insureds of DEFENDANT.

27. The rates paid by DEFENDANT were not reasonable, customary or usual, and were arbitrary, capricious and inexplicable. Further, DEFENDANT has never explained how they calculated, justified, rationalized or comprised their pricing and rate schedule for non-contracted, out-of-network providers, such as the Physicians.

28. Often, the rates paid to the Physicians by DEFENDANTS for the exact same procedure, treatment, surgery, or services were paid at different rates during the same year. At other times, the Physicians were paid rates which were below what they would have received had they been a preferred or in-network provider, even though such volume-discounted rates would have been significantly lower than usual, reasonable, and customary rates as defined by California law.

29. The California Department of Managed Health Care has adopted regulations that define the amount that health care service plans such as DEFENDANTS are obligated to pay non-contracted providers such as the Physicians. These regulations provide a methodology for determining the rate to be paid to out-of-network emergency room providers:

> For contracted providers without a written contract and non-contracted providers . . . the payment of the **reasonable and customary value** for the health care services rendered based upon statistically credible information that is updated at least annually and takes into consideration: (i) the provider's training, qualifications and length of time in practice; (ii) the nature of the services provided; (iii) **the fees usually charged by the provider; (iv) prevailing provider rates charged in the general geographic area in which the services were rendered;** (v) other aspects of the economics of the medical provider's practice that are relevant; and (vi) and unusual circumstances in the case.

8

28 Cal. Code Regs. Section 1300.71(a)(3)(B) (Emphasis added). These definitions are the same criteria used by California Courts to determine the *quantum meruit* amounts that should be paid for services rendered by non-contracted providers by insurers in California.

30. Based upon these criteria, the Physicians' charges are reasonable and customary. The Physicians charged DEFENDANT the same fees that they charges all other payers.

31. NAMDY is informed and believes that DEFENDANT relied upon and utilized a flawed database to make pricing determinations for the claims submitted by the Physicians on behalf of the Patient. DEFENDANT utilized that flawed database as a primary source of data upon which it based its pricing determinations, even though DEFENDANT knew that the data cannot and should not be used for that purpose. DEFENDANT was fully aware that its database was not properly designed to determine usual, customary and reasonable reimbursement amounts.

32. NAMDY is informed and believes and thereon alleges that DEFENDANT's system for paying out-of-network claims is flawed, that DEFENDANT improperly manipulates the data in its systems to underpay out-of-network medical provider claims, and that DEFENDANT'S systems and methods for calculating such rates violate California law. DEFENDANT has used flawed databases and systems to unilaterally determine what amounts it pays to medical providers and has colluded with other insurers to artificially underpay, decrease, limit, and minimize the reimbursement rates paid for services rendered by non-contracted providers. The issue of flawed database has been investigated by the U.S. Congress and New York Attorney General and has been the source of numerous lawsuits and class action suits filed in connection with the databases utilized (known as Ingenix).

33. NAMDY is informed and believes that there are a number of inherent flaws in DEFENDANT's database, which make that database invalid and inappropriate for setting usual, customary and reasonable rates. Among other flaws, DEFENDANT's database:

9

a.   Does not determine the numbers or types of providers in any geographic area;

b.   Does not determine the actual types of procedures performed within a geographic area;

c.   Collects charge data which is not representative of the actual number of procedures performed within a geographic area;

d.   Does not collect sufficient data to enable its users to determine whether the data reflects the charges of providers with any particular degree of expertise or specialization;

e.   Does not collect sufficient provider-specific data to enable its users to determine whether the charges are from one provider, from several providers, or from only a minority subset of the providers in a geographic area;

f.   Fails to compare providers of the same or similar training and experience level and, instead, combines and averages all provider charges by procedure code without separating the charges of physicians and non-physicians;

g.   Does not collect patient specific information such as age or medical history or condition;

h.   Does not ascertain the most common charge for the same service or comparable service or supply;

i.   Does not determine the place of service or type of facility;

j.   Does not collect sufficient data to enable it or its users to determine an appropriate medical market for comparing like charges;

k.   Combines zip codes inappropriately, and uses zip codes instead of appropriate medical markets;

l.   Fails to compare procedures that use the same or similar resources (and other costs) to the provider but, rather, indiscriminately combines all provider charges by procedure code without regard to such factors;

10

    m.  Fails to compare procedures of the same or similar complexity by, among other things, failing to record or account for CPT code modifiers;

    n.  Does not use appropriate statistical methodology;

    o.  Does not properly consider charging protocols and billing practices generally accepted by the medical community or specialty groups;

    p.  Does not properly consider medical costs in setting geographic areas;

    q.  Lacks quality control, such as basic auditing, to ensure the validity;

    r.  completeness, representativeness, and authenticity of the data submitted;

    s.  Is subject to pre-editing by data contributors;

    t.  Reports charges that are systematically skewed downward;

    u.  Uses relative values and conversion factors to derive inappropriate usual, customary and reasonable amounts;

    v.  Uses a methodology that does not comply with DEFENDANT'S contractual definition of usual, customary and reasonable; and;

    w.  Purports to be confidential and/or proprietary, which prevents access to, and scrutiny of, the data by members of their employers.

34. These and other flaws render DEFENDANT'S use of its data system invalid and unlawful for determining usual, customary and reasonable rates. By systematically and typically making usual, customary, and reasonable rate determinations without compliant and valid data to substantiate its determinations, DEFENDANTS have breached their obligations to reimburse Physicians for out-of-network services. Accordingly, all past usual, customary, and reasonable rate determinations based on DEFENDANT'S data system should be overturned and disregarded.

35. DEFENDANT used other improper pricing methods to reduce reimbursement to out-of-network providers. Accordingly, DEFENDANT violated, and continues to violate, its legal obligations to Physicians to pay usual, customary and reasonable rates of reimbursement for services rendered to the Patients, insureds, subscribers, and members.

36. DEFENDANT has received claims from the Physicians for a number of years. As such,

DEFENDANT knew the rates that the Physicians charged for various services. Moreover, DEFENDANT knew or should have known the amounts charged by other medical providers for medical services, care, and treatment, since it had received, reviewed and processed, numerous claims prior to processing the claims at issue in this litigation. It is standard practice in the healthcare industry for medical providers (whether in-network or not) to submit claims and bills showing the total charges to health plans such as DEFENDANT and for DEFENDANT to price those claims, based either upon the total charges or the contractual rates offered to network providers.

37. The Physicians have also been disparaged by the pervasive under-reimbursement scheme. When a patient refers to his/her evidence of coverage documents promulgated by DEFENDANTS, he/she is led to believe that when he/she seeks out-of-network care their charges will be paid by DEFENDANTS at the "usual and customary rate" of similar physicians for a similar service in a similar area. When a patient obtains out-of-network treatment from providers such as the Physicians and the provider submits the bill to the insurer, a patient learns for the first time that he/she will not be fully reimbursed because the doctor's charges are alleged by DEFENDANT to exceed the usual and customary rate. The physician-patient relationship is undermined, as the physicians have been branded as charlatans whose bills are inflated and unreasonable.

38. At all relevant times, DEFENDANT harmed the physicians by making improper usual, customary, and reasonable rate and pricing determinations that reduced the lawful reimbursement amounts for out-of-network providers without valid or compliant data to support such determinations. DEFENDANT further harmed the Physicians by misapplying in-network policies to out-of-network provider claims, and by delaying payments to out-of-network providers under the pretext of negotiation. As a result of these actions, the Physicians were financially harmed and forced to exhaust significant time and resources appealing DEFENDANT's unlawful determination through a process deliberately designed to deny, delay, and impede out-of-network physician providers from obtaining their rightful reimbursement.

12

39. Upon information and belief, DEFENDANT used and continues to use flawed database data, among other sources, to understate the true market rates of medical care performed by out-of-network providers. The improper use of this data has caused both patients and out-of-network providers to experience significant losses. Patients are harmed because payers like DEFENDANT are not reimbursing out-of-network services at appropriate levels, which results in out-of-network providers increasingly billing their patients for amounts charged, which exceed the amounts DEFENDANT covers. Out-of-network providers like Physicians are harmed because they are not always able to collect these balances from patients and are forced to take a loss for their services. Moreover, because out-of-network providers are often unaware of the scheme that results in payers like DEFENDANT failing to pay appropriate usual, customary and reasonable rates, they are either powerless to appeal any such improper determinations or their efforts to appeal these determinations are futile. DEFENDANT, by contrast, benefits from paying out-of-network providers at below market rates. If, for example, out-of-network providers fail to realize that the scheme is the cause of their underpayment, DEFENDANT has unlawfully retained money which otherwise belongs to the Physicians for the services provided. DEFENDANT's ambiguity regarding its method for calculating usual, customary and reasonable rates reflects its participation in this deceptive practice.

40. DEFENDANT's explanation of benefit statements are initially uninformative, false, and misleading regarding the use of usual, customary, and reasonable rates. This ambiguity has resulted in the inconsistent application of usual, customary and reasonable rates to deny Physicians their lawful reimbursement. Usual, customary, and reasonable rates should be applied consistently by DEFENDANTS, but instead are selectively used to deny or diminish lawful reimbursement to Physicians and other out-of-network providers.

41. The Physicians' explanation of benefits and remittance advices received from DEFENDANTS often state that their billed charges purportedly exceed the usual, customary, and reasonable rate for the geographic area where the services were

performed. However, nowhere on the explanation of benefit statements, remittance advices, or elsewhere in any other correspondence sent to the Physicians do DEFENDANTS discuss or identify how they actually calculate usual, customary, and reasonable rates. The Explanation of Benefit statements do not even specify whether database data or some other methodology was used in these calculations. Instead, the explanation of benefit statements plainly state that the rates have been determine by DEFENDANTS. With its methods for calculating usual, customary, and reasonable rates shrouded in a veil of secrecy, DEFENDANTS have been able to derive improper rates using faulty data, and apply them to out-of-network providers such as the Physicians.

## **FIRST CAUSE OF ACTION:**
## **FOR RECOVERY OF PAYMENT FOR SERVICES RENDERED**
## **(AS AGAINST ALL DEFENDANTS)**

42. Plaintiff incorporates all allegations set forth in the above paragraphs as though fully set forth herein.

43. At all times herein mentioned, Physicians provided medical services, care, treatment, and/or procedures to Patients as required by law (because the medical services provided were emergency services), thereby benefiting DEFENDANTS and the Patients.

44. At all times herein mentioned, DEFENDANTS were required by law to pay usual, reasonable, and customary rates for the emergency care or authorized or deemed authorized post stabilization care provided by the Physicians to the Patients, who were members or subscribers of DEFENDANT. California Health and Safety Code § 1371.4; *Bell v. Blue Cross*, 131 Cal.App.4th 211. The code and Knox-Keene Act apply to all Health Care Service Plans and the DEFENDANT administered a Health Care Service Plan and is therefore subject to these rules. Also under Bell where an Insurance company runs an indemnity insurance product that is in essence run like a Health Plan product then these rules also come into play.

45. At all relevant times, the Physicians rendered care, treatment, and services to the

NAMDY CONSULTING, INC.'S SECOND AMENDED COMPLAINT

Patients in good faith and in reliance upon the legal requirement that insurers pay for the emergency medical care or authorized or deemed authorized post stabilization care of those they insure. DEFENDANTS had a duty to pay, reimburse, indemnify, and cover the Physicians for the care, treatment and services rendered by the Physicians to the Patients pursuant to California Health & Safety Code §§ 1371, 1371.35, and 1371.4 following the rendition of services and treatment by the Physicians to the Patients. Further, DEFENDANTS had a duty to pay usual, customary, and reasonable rates for the services rendered by the Physicians in compliance with 28 California Code of Regulations § 1300.71 et seq. For the Patients, DEFENDANTS have failed and refused to comply with 28 California Code of Regulations § 1300.71 et seq.

46. At all relevant times, the Physicians rendered care and treatment to the Patient. DEFENDANT had a duty to pay, reimburse and cover the cost of such treatment and services by payment to the Physicians for the medical services, care, treatment, and/or procedures rendered by the Physicians to the Patients, pursuant to California Health & Safety Code §§ 1371, 1371.35, and 1371.4, and was prohibited from denying or refusing coverage, payment, indemnity, or reimbursement for the cost for treatment and services rendered by the Physicians to the Patients. Further, DEFENDANTS had a duty to pay usual, customary, and reasonable rates for the services rendered by NAMDY's assignor in compliance with 28 California Code of Regulations § 1300.71 et seq. and have failed and refused to pay usual, customary, and reasonable amounts.

47. At all relevant times, 28 California Administrative Code § 1300.71 et seq. required that DEFENDANTS reimburse the Physicians for the claims submitted on behalf of the Patient within 45 days after DEFENDANTS received the Patient's claims from the Physicians. 28 Cal. Admin. Code Tit. 28 Section 1300.71(a)(3) defines the manner and method by which reasonable and customary rates are to be defined by DEFENDANTS, providing:

> (B) For contracted providers without a written contract and non-contracted providers, except those providing services described in paragraph (C) below: the payment of the reasonable and customary

15

value for the health care services rendered based upon statistically credible information that is updated at least annually and takes into consideration: (i) the provider's training, qualifications, and length of time in practice; (ii) the nature of the services provided; (iii) the fees usually charged by the provider; (iv) prevailing provider rates charged in the general geographic area in which the services were rendered; (v) any unusual circumstances in the case; and (C) For non-emergency services provided by non-contracted providers to PPO and POS enrollees: the amount set forth in the enrollee's Evidence of Coverage.

48. As a proximate result of the violation of California Health & Safety Code §§ 1371.8 and 1371, California Insurance Code § 796.04, California Insurance Code § 796.04 and/or 28 C.C.R. § 13700.1 by DEFENDANT, which acts were intentional, willful and knowing, the Physicians have never been paid for any of the medical services, care, treatment, and/or procedures provided to the Patient or have been underpaid for such medical services, care, treatment, and/or procedures. By their acts and omissions, DEFENDANTS have failed and refused to pay the usual, customary, and reasonable value for the services rendered by the Physicians to the Patients.

49. The Physicians are owed reimbursement, compensation, and payment of the cost of the medical services, care, treatment, and/or procedures which they rendered and provided to the Patient at the Physicians' billed rates or at rates equivalent to the usual, customary, and reasonable value for their services, in conformance with the legal requirements that they provide emergency care or authorized or deemed authorized post stabilization care to any patient and that the insurance of any patient who received emergency care or authorized or deemed authorized post stabilization care pay the provider of the care at usual, customary, and reasonable rates.

50. The Physicians have demanded that DEFENDANT pay for the medical treatment provided to the Patient, and has submitted statements to DEFENDANT for the medical services rendered to the Patient.

51. DEFENDANTS have failed and refused to pay, and continue to refuse to pay the Physicians for such services rendered at appropriate rates and have underpaid the Physicians by failing and refusing to pay usual, customary and reasonable rates.

1   Accordingly, there is now due and owing an unpaid sum, plus statutory interest thereon.

2   52. The Patient Protection and Affordable Care Act (PPACA) §1302 mandates that certain

3   "Essential Health Benefits" must be covered by all health plans, and emergency services

4   is one of them. *PPACA § 1302(b)(1)(B).*  The law states that "a qualified health plan

5   will not be treated as providing coverage for the essential health benefits... unless the

6   plan provides that… (ii) if such services are provided out-of-network, the cost-sharing

7   requirement (expressed as a copayment amount or coinsurance rate) is the same

8   requirement that would apply if such services were provided in-network." *PPACA §*

9   *3102(b)(4)(E).* Prudent practices will note that the cost-sharing requirement imposed

10   upon an enrollee for emergency services provided in-network is 0%. Thus, federal law

11   requires the health plan to reimburse an out-of-network provider at 100% of billed

12   charges for emergency services in order to ensure the same cost sharing requirement of

13   0% for out-of-network services.

14   53. It is therefore clear that the Defendants own Contract/Plan with the Patient requires that

15   the Defendant must pay Physicians for Emergency Care at a rate equivalent to the

16   Copayment or Coinsurance rate with the in Network rates within that Contract/Plan. The

17   Patient has had such Emergency care and the Physician who has provided that care has

18   been denied payment in breach of that same said contract.

19   54. In any event, the Defendant must be bound by the terms of the Contract/Plan that they

20   have between them and the patient which covers scenarios where the Patient requires

21   emergency care. It is understood and expected that the wording will include reference to

22   Usual, Customary and Reasonable Rates in respect of the payment for those emergency

23   services. In the event that usual, customary and reasonable rates is not specifically

24   defined in the Contract/Plan then the Definition as described in the Health and Safety

25   Code.

26   55. In the event that this Court does not accept that the Defendant is bound by the Knox-

27   Keene Act, and only the contract itself should apply, any restriction that would normally

28   apply to the Physicians on balance billing the Patients for emergency services must

17

therefore also not apply and the Court is asked to confirm this position.

## SECOND CAUSE OF ACTION:

## FOR RECOVERY OF PAYMENT ON OPEN BOOK ACCOUNT

## (AS AGAINST ALL DEFENDANTS)

56. Plaintiff incorporates all allegations set forth in the above paragraphs as though fully set forth herein.

57. DEFENDANT has become indebted to the Physicians on open book accounts for the Patients, for money due in the sum to be determined at the time of trial for medical services rendered by the Physicians to the Patients.

58. The Physicians have provided medical treatment to the Patient, and have maintained contemporaneous, itemized and detailed records and statements of each medical service provided to the Patients. The Physicians have provided DEFENDANT with statements itemizing the medical treatment provided to the Patients, along with an accounting of the amounts owed by DEFENDANT.

59. DEFENDANT has refused to pay, and continues to refuse to pay, the Physicians the billed charges submitted by the Physicians and/or the usual and customary charges owed to the Physicians for the treatment, surgeries, procedures and medical services provided to the Patients. Accordingly, there is now due and owing an unpaid sum in an amount to be determined at the time of trial, plus statutory interest.

## THIRD CAUSE OF ACTION

## FOR QUANTUM MERUIT

## (AGAINST ALL DEFENDANTS)

60. Plaintiff incorporates all allegations set forth in the above paragraphs as though fully set forth herein.

61. As required by law (because the medical services provided were emergency services), the Physicians provided surgeries, procedures, medical treatments, and other medical services to the Patients, thereby benefitting DEFENDANT and the Patients.

62. DEFENDANTS have failed and refused to pay the Physicians the appropriate amounts

18

incurred by the Physicians in rendering medical services, care, treatment, and/or procedures to the Patients, have underpaid those costs and have failed and refused to pay the usual, reasonable, and customary costs of those services.

63. At all times herein mentioned, DEFENDANTS were required by law to pay usual, reasonable, and customary rates for the emergency care provided by the Physicians to the Patients, who were members or subscribers of DEFENDANT. California Health and Safety Code § 1371.4; *Bell v. Blue Cross*, 131 Cal.App.4th 211.  Alternatively, Plaintiff is informed and believes and thereon alleges that, at all times herein mentioned, and based on the circumstances of the parties' relationship to one another, the services furnished by Physicians were furnished at the implied request and/or insistence of the DEFENDANT on behalf of the Patients.

64. DEFENDANT is required to reimburse the Physicians at a *quantum meruit* rate for all services rendered to the enrollees, the Patients. The *quantum meruit* amount owed by DEFENDANT to the Physicians is determined according to the customary charges that would be billed by the Physicians and/or other physicians in the absence of preferred provider or participating provider contractual rates. Based upon Patient or Hospital's request that the Physicians render treatment, surgeries, procedures and medical services to the Patient, and the fact that DEFENDANT was benefitted by the provision of such services by the Physicians, an obligation on the part of DEFENDANT to make restitution to the Physicians arose.

65. In *Regents of the University of California v. Principal Financial Group*, 412 F.Supp.2d. 1037, 1042 (N.D. Cal. 2006), the federal trial court held that California law no longer requires that a defendant be benefitted in order for a *quantum meruit* claim to lie.  It found that: In *Earhart v. William Low Company*, 25 Cal.3d. 503, 511, 158 Cal.Rptr. 887, 600 P.2d. 1344 (1979), the California Supreme Court abrogated the common law requirement that there be benefit to the defendant in a *quantum meruit* claim, noting "that performance of services at another's behest may itself constitute 'benefit' such that an obligation to make restitution may arise."  Thus, the fact that

19

Mr. Donner was the direct beneficiary of the medical treatment does not bar plaintiff's claim." Thus the fact that DEFENDANT's neither directly requested the treatment nor were the direct beneficiary of the treatment is not a block to *quantum meruit*.

66. The *quantum meruit* rate for the medical treatment the Physicians provided to the Patients is an amount to be determined at trial. This amount represents the usual, customary and reasonable cost or charge for the services rendered by the Physicians. The Physicians have submitted statements to DEFENDANT for these amounts, and have made repeated demands that they be paid for the medical treatment provided to the Patient at usual, customary, and reasonable rates.

67. DEFENDANT has refused to pay, and continues to refuse to pay, the Physicians for the whole or any part of the sums owed to the Physicians for the treatment, surgeries, procedures and medical services provided to the Patient, at usual, customary and reasonable rates. Accordingly, there is now due and owing an unpaid sum, plus statutory interest.

**FOURTH CAUSE OF ACTION**

**FOR BREACH OF IMPLIED CONTRACT**

**(AS AGAINST ALL DEFENDANTS)**

68. Plaintiff incorporates all allegations set forth in the above paragraphs as though fully set forth herein.

69. NAMDY is informed and believes and thereon alleges that, at all relevant times herein, the Patients had valid policies with DEFENDANT or were members, subscribers, insureds, or were otherwise entitled to coverage, indemnification and payment as policyholders or certificate-holders of insurance policies and certificates issued and underwritten by DEFENDANT.

70. NAMDY is informed and believes that the Patients obtained such policies from DEFENDANT for the specific purposes of (1) ensuring that the patients would have access to medically necessary treatments at healthcare facilities, and (2) ensuring that DEFENDANT would pay for the healthcare expenses incurred by the patients.

20

71. DEFENDANTS knew or reasonably should have known that its insureds would seek medical treatment from the Physicians.

72. NAMDY is informed and believes that DEFENDANT received and continues to receive valuable premium payments from the Patients under the relevant insurance policies.

73. Since Physicians were required by law to treat the Patients in emergency situations, they agreed by implication to treat the Patients.  DEFENDANTS, by law, were required to pay Physicians at the usual, customary, and reasonable rate for emergency services and therefore agreed by implication to pay usual, customary, and reasonable rates to Physicians.  California Health and Safety Code § 1371.4; *Bell v. Blue Cross*, 131 Cal.App.4th 211.

74. In consideration for the Physicians' implied agreement to treat the Patients, DEFENDANT implicitly agreed to reimburse the Physicians for the expenses incurred by the Patients in the course of being treated and undergoing surgeries or procedures rendered by the Physicians and agreed to pay the Physicians a usual and customary rate for those services.

75. The Physicians provided medical treatment to the Patient. DEFENDANT has refused to pay, and continues to refuse to pay, the Physicians for the whole or a part of the sums owed to the Physicians at appropriate rates for the treatment services provided to the Patients.

76. As a result of the foregoing breach, the Physicians have been damaged by DEFENDANT in an amount to be determined at trial. Accordingly, there is now due and owing an unpaid sum, plus statutory interest thereon.

77. The implied contract is implied by statute, namely the Knox-Keene Act, rather than any specific words spoken by the DEFENDANT.

///
///
///
///

21

**FIFTH CAUSE OF ACTION**

**FOR DECLARATORY RELIEF**

**(AS AGAINST ALL DEFENDANTS)**

78. Plaintiffs incorporate all allegations set forth in the above paragraphs as though fully set forth herein.

79. A dispute has arisen between the Physicians and DEFENDANT as to the amount that DEFENDANT is required to pay the Physicians for the medically necessary services provided by the Physicians to the Patients. DEFENDANT contends that it owes the Physicians nothing in connection with the services, surgeries, and procedures provided to the Patients. The Physicians contend that they are entitled to receive payment in an amount to be determined at trial, plus statutory interest, for the medical services provided to the Patients during the course of their treatment.

80. NAMDY seeks and desires a judicial determination by the Court that DEFENDANT is required to pay the Physicians for the specific services, surgeries, procedures, and other medical treatments provided to the Patients during the course of their treatment by the Physicians at the billed or total rates charged by the Physicians, carried out under the same CPT codes, in the same geographical areas as in these cases at the same rate as decided in this litigation.

81. Such a declaration is necessary and appropriate at this time so that the Physicians and DEFENDANT may ascertain their rights, duties, and obligations concerning the medical services the Physicians provided to the Patients. This will save further court time, as the same CPT code carried out by the same Provider in the same geographical area should be the same rate subject to any rule change to the contrary and no further Court action should be required to decide the same issue.

/ / /
/ / /
/ / /

NAMDY CONSULTING, INC.'S SECOND AMENDED COMPLAINT

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff NAMDY CONSULTING, INC. prays for judgment against DEFENDANT as follows:

1. For compensatory damages in an amount to be determined, plus statutory interest;

2. For restitution in an amount to be determined, plus statutory interest;

3. For a declaration that ANTHEM is obligated to pay plaintiff all monies owed for medical services rendered to the Patient; and

4. For such other further relief the Court deems just and appropriate.

DATED:  February 19, 2018                              Respectfully submitted,

By:  _____

ALAN NESBIT
Attorney for Plaintiff
NAMDY CONSULTING, INC.

NAMDY CONSULTING, INC.'S SECOND AMENDED COMPLAINT

## **DEMAND FOR JURY TRIAL**

Plaintiff, NAMDY CONSULTNG, INC. hereby demands a jury trial as provided by law.

DATED:  February 19, 2018                                        Respectfully submitted,


By:  _____

ALAN NESBIT
Attorney for Plaintiff
NAMDY CONSULTING, INC.

24

DEMAND FOR JURY TRIAL

**<u>PROOF OF SERVICE</u>**

I am employed in the County of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action; my business address is 8383 Wilshire Boulevard, Ste. 800, Beverly Hills, CA  90211.

On February 19, 2018, I served the foregoing documents described as:

**NAMDY CONSULTING, INC.'S SECOND AMENDED COMPLAINT**

on the interested parties to this action by placing a copy thereof enclosed in a sealed envelope addressed as follows:

See Service List - Next Page

__X__ (BY MAIL)  I am readily familiar with the business practice for collection and processing of  correspondence for mailing with the United States Postal Service.  This correspondence shall be deposited with the United States Postal Service this same day in the ordinary course of business at our Firm's office address in Los Angeles, California.  Service made pursuant to this paragraph, upon motion of a party served, shall be presumed invalid if the postal cancellation date of postage meter date on the envelope is more than one day after the date of deposit for mailing contained in this affidavit.

____ (BY PERSONAL SERVICE)  I caused such envelope to be delivered by hand to the offices of the above-named addressee(s).

_X__ (BY ELECTRONIC MAIL)  I caused such documents to be delivered via e-mail to the offices of the addressee(s) at their respective e-mail addresses:

Executed this 20th day of February 2018, at Beverly Hills, California.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

/s/Linda P. Lavallee
Linda P. Lavallee

25

DEMAND FOR JURY TRIAL

1

<u>SERVICE LIST</u>

2

<u>Counsel for Defendant Anthem Blue Cross</u>

3

4   Carol Burney Lewis, Esq.                    Email:  <u>CLewis@vbhlaw.com</u>
    VON BEHREN & HUNTER LLP
5   2041 Rosecrans Avenue, Suite 367
    El Segundo, CA  90245
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

26

<u>DEMAND FOR JURY TRIAL</u>